1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| STEPHANIE M. DUPUIS and SOUND MUSIC I INC., individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>ZILLOW GROUP, INC., ZILLOW, INC., ZILLOW HOME LOANS, LLC, ZILLOW HOMES, INC., ZILLOW LISTING SERVICES, INC.<br><br>                              Defendants. | No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs Stephanie M. Dupuis ("Dupuis") and Sound Music I, Inc. ("Sound Music"), by and through their undersigned attorneys of record, for their Complaint against Defendant Zillow Group, Inc. ("Zillow"), upon personal knowledge as to their actions and upon information and belief as to Defendant's actions, allege as follows:

## I.    INTRODUCTION

1. Zillow, the nation's largest real estate app, is not satisfied with its monopoly power in that market. Instead, Zillow abuses its monopoly to (a) extract supracompetitive rents from the real estate agents[1] who, due to Zillow's dominance in the market, use its services; and (b) tie its less popular products in a new market, mortgage lending services, to its more popular services. In its quest to do so, Zillow is illegally tying its lending services to the client referral services it offers real estate agents. But it is also flexing its monopoly power to overcharge for those services in the first place. As a result, Zillow is able to extract outsized commissions and steer agents and consumers alike to inferior financial products, distorting both the real estate and lending markets.

2. Plaintiff Stephanie M. Dupuis owns a real estate team in Kitsap County, WA, the Dupuis Team. Her team has been recognized with "Best of Kitsap: Bremerton and Central Kitsap" awards from the Central Kitsap Reporter. Ms. Dupuis prides herself in providing the highest quality service for her clients and wants to give them the best advice possible.

3. In today's real estate market, it is impossible to do business without working with Zillow to at least some degree, because of their monopoly power.

4. As such, Ms. Dupuis and her team entered an agreement to become a Preferred Agent, a program run by Zillow in conjunction with its Premier Agent program. The premise is

---

[1] In nearly every state, a real estate "agent" means someone who is licensed to assist with real estate transactions, and a real estate "broker" has additional responsibilities including overseeing a firm. *See e.g.,* Victoria Araj, *Real Estate Broker vs. Agent : Differences Explained*, Rocket Mortgage (Jan. 13, 2025), https://www.rocketmortgage.com/learn/real-estate-broker-vs-agent. But in Washington, the term "broker" means a professional akin to an "agent" elsewhere, and the terms "designated broker" and "managing broker" mean professionals who own and oversee real estate firms. *See* Wash. Rev. Code 18.85.011. Brokers, managing brokers, and designated brokers are each separately licensed or registered. *See* Wash. Rev. Code 18.85.101; 18.85.111; 18.85.121. This complaint uses the term "agent" in a manner consistent with national standards, and as used here the term "agent" encompasses "brokers" in Washington.

CLASS ACTION COMPLAINT - 2

simple: when a user on the Zillow app requests to tour a property, Zillow connects them with a Premier (or Preferred) agent. Premier agents pay up front for each client referral or lead (which Zillow collectively refers to as a "connection"), while Preferred agents pay Zillow a hefty cut if the referral leads to a sale: 40% of their commission on the sale. Although the cost is substantial, because of Zillow's monopoly power—an enormous proportion of prospective home buyers begin or largely conduct their search for properties using Zillow's app—the referrals are an essential source of business for agents like Ms. Dupuis.

5.     Even still, Zillow attempts to extract even more profit from these transactions. Zillow now runs a mortgage lending service, called Zillow Home Loans ("ZHL"). Zillow represents to Premier and Preferred agents that they are not *required* to refer clients to ZHL for lending services. But the reality is different. Zillow tracks the performance of its Premier and Preferred agents in a proprietary customer relationship management ("CRM") system, called Follow Up Boss ("FUB"). An agent's rating in FUB is tied to the number of loan pre-approvals they secure through ZHL. The higher an agent's rating, the more connections Zillow sends their way; conversely, the lowest rating agents risk getting cut from the program. In other words, a Premier agent who fails to direct their clients to ZHL will see their business slow to a trickle, because Zillow will restrict their access to connections.

6.     Ms. Dupuis, like many other agents, is opposed to steering clients to ZHL. Ms. Dupuis owes a duty to act in her clients' best interest, and for that reason she will not pressure clients to choose any particular lender over another. But Zillow designs its Premier and Preferred agent programs such that a failure by agents to steer clients towards ZHL means demotion in rating, fewer connections, and thus, fewer completed sales.

7.     This is not just unfair to agents like Ms. Dupuis and to homebuying consumers, it is also an illegal tying arrangement. Ms. Dupuis brings this action on behalf of herself and similarly situated real estate agents to hold Zillow accountable for its abuse of its monopoly to charge supracompetitive commissions and its illegal tying of its lending business to its services to agents,

CLASS ACTION COMPLAINT - 3

and in the hope of restoring her ability to serve clients without being subject to these anticompetitive pressures.

## II.     JURISDICTION AND VENUE

8.     This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*, and the Clayton Antitrust Act, 15 U.S.C. § 12 *et seq*,. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because there are at least one hundred class members, there is minimal diversity, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(b), because Defendants reside in this District, transact substantial business here, and a substantial part of the events or omissions giving rise to the claims occurred here.

## III.     PARTIES

10.     Plaintiff Stephanie M. Dupuis is a resident and citizen of Washington, and a real estate agent who operates the Dupuis Team, a Kitsap County real-estate team.

11.     Plaintiff Sound Music I, Inc. is a Washington corporation owned by Stephanie Dupuis, with its principal place of business at 3888 NW Randall Way, Silverdale, WA 98383. The real estate agents who make up the Dupuis Team are employees or independent contractors of Sound Music I.

12.     Defendant Zillow Group, Inc. ("Zillow Group") is a Delaware corporation with its principal executive offices located at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. Zillow Group is the publicly traded parent company (NASDAQ: "Z") that controls a range of related businesses and services. Zillow Group includes several other brands that Zillow has acquired, including Trulia, Hotpads, and StreetEasy.[2]

---

[2] *About Zillow*, Zillow, https://www.zillow.com/z/corp/about/ (last visited Jan. 16, 2026).

CLASS ACTION COMPLAINT - 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

13.     Zillow, Inc. is a Washington Corporation with its principal offices at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. It maintains real estate licenses in every state.

14.     Defendant Zillow Home Loans, LLC ("ZHL") is a Kansas corporation wholly owned by Zillow, with its principal offices at 2600 Michaelson Drive, Suite 1201, Irving, CA 92612.  ZHL is engaged in the business of originating mortgages loans.

15.     Zillow Homes, Inc. is a Delaware corporation with its principal offices at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. Zillow Homes maintains a real estate license in four states.

16.     Zillow Listing Services, Inc. is a Washington corporation with its principal offices at 1301 Second Avenue, Floor 31, Seattle, Washington 98101, offering various real estate services.

17.     Collectively, the Zillow entity Defendants (Zillow Group, Zillow Inc, Zillow Home Loans, Zillow Homes, and Zillow Listing Services) are referred to as "Zillow."

## IV.     FACTUAL ALLEGATIONS

### A.     Zillow Ties Its Zillow Home Loans Product to Its Real Estate Marketplace Monopoly Via Its Premier Agent Program

18.     Zillow is the most widely used real estate website in the United States.[3] Zillow describes itself as "the housing super app — an ecosystem of products and services designed to provide a seamless, end-to-end transaction experience for renters, shoppers, buyers and sellers, as well as the real estate professionals who serve them."[4]

19.     One need not look hard for evidence of Zillow's monopoly power, because Zillow proudly touts it in its public facing materials. According to Zillow, Zillow Group sites account for two-thirds of all monthly unique visits among real estate sites.[5] Of daily active users of real estate marketplace apps, 64% are on Zillow Group apps, compared to 15% for the next largest

---

[3] *Average Monthly Visits to the Five Most Popular Real Estate Websites in the United States From 2020 to 2024,* Statista Research Dept., https://www.statista.com/statistics/381468/most-popular-real-estate-websites-by-monthly-visits-usa/?srsltid=AfmBOooNehfV1MwNm8yrMaB_7OHAoDR2-rt05dJwOSIkUrAGOHckXdoL (last visited Dec. 24, 2025).

[4] Zillow, *supra* note 2

[5] *Id.*

CLASS ACTION COMPLAINT - 5

competitor—accounting for more than 3.5 million daily users.[6] Google search trends show that "Zillow" is a more common search term than "real estate."[7] Zillow Group sites had an average of 250 million monthly unique users in Q3 2025, and there were 165 million homes in its database.[8] Through 2024, Zillow had $2.2 billion in revenues, up 15% from the year prior—outpacing the 6% growth in the housing market.[9]

20.    Over the years, Zillow has amassed its monopoly by buying up competitors one after another. In 2011, Zillow acquired Postlets, an online real estate listing and distribution platform.[10] In 2012, Zillow acquired Mortech, a service to connect borrowers to home lenders and provide quotes.[11] The same year, Zillow acquired Hotpads, an online marketplace for rental listings.[12] In 2013 Zillow acquired StreetEasy, then the largest real estate website in New York City, in order to achieve "market leadership" in that market.[13] In 2014, Zillow announced a $3.5 billion dollar acquisition of Trulia, its then-largest competitor.[14]

---

[6] *Id.*

[7] *Id.*

[8] *Investors: Overview- Reimagining Real Estate,* Zillow Group, https://investors.zillowgroup.com/investors/overview/default.aspx (last visited Dec. 24, 2025).

[9] Zillow, *2025 Letter to Shareholders* at 1, Zillow Group (April 16, 2025), https://s24.q4cdn.com/723050407/files/doc_financials/2024/ar/2025-Letter-to-Shareholders.pdf.

[10] *Zillow Acquires Postlets,* Zillow Group (April 11, 2011), https://zillow.mediaroom.com/2011-04-11-Zillow-Acquires-Postlets-an-Online-Listing-Creation-and-Distribution-Platform.

[11] *Zillow Completes Acquisition of Mortech,* Zillow Group (Nov. 30, 2012), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2012/Zillow-Completes-Acquisition-of-Mortech/.

[12] *Zillow to Acquire Hot Pads to Accelerate Growth of Rental Marketplace,* Zillow Group (Nov. 26, 2012), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2012/Zillow-to-Acquire-HotPads-To-Accelerate-Growth-of-Rental-Marketplace/default.aspx.

[13] *Zillow Completes Acquisition of StreetEasy*, Zillow Group (Aug. 28, 2013), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2013/Zillow-Completes-Acquisition-of-StreetEasy/.

[14] *Zillow Announces Acquisition of Trulia for $3.5 Billion in Stock,* Zillow Group (July 28, 2014), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2014/Zillow-Announces-Acquisition-of-Trulia-for-35-Billion-in-Stock/default.aspx; Geoff Weiss, *Zillow to Acquire Chief Competitor Trulia in $3.5 Billion Deal*, NBC News (July 28, 2014), https://www.nbcnews.com/id/wbna55741290.

CLASS ACTION COMPLAINT - 6

1
2
3
4
5
6
7
8
9
10





Source: data.ai data for January 2023 – December 2024. Zillow Group includes Zillow, Trulia, Hotpads, and StreetEasy brands. Other includes four other real estate apps listed by data.ai.

11

**Figure 1: Zillow Metrics Touting Market Power**

12

13    21.    Zillow has also expanded into other markets through acquisitions. ZHL was created

14    through Zillow's acquisition of another lender, Mortgage Lenders of America, in 2018.[15]  In 2021,

15    Zillow acquired ShowingTime, a platform for scheduling home showings.[16]  In 2023, Zillow

16    acquired the CRM system, FUB.[17] This has fulfilled Zillow's goal of creating an all-encompassing

17    real estate "ecosystem," as tours through ShowingTime and loans through ZHL all flow directly

18    into FUB.[18]

19

20    [15] *Zillow Group Launches Zillow Home Loans to Support Zillow Offers*, Zillow Group (April 2, 2019), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2019/Zillow-Group-launches-Zillow-Home-Loans-to-Support-Zillow-Offers/default.aspx.

21    [16] *Zillow Group Closes Acquisition of ShowingTime, the Industry Leader in Home Touring Technology*, Zillow Group (Oct. 1, 2021), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2021/Zillow-Group-Closes-Acquisition-of-ShowingTime-the-Industry-Leader-in-Home-Touring-Technology/default.aspx.

22

23    [17] *Zillow Group to Acquire Follow Up Boss, An Industry Leader In Customer Relationship Management,* Zillow Group (Nov. 1, 2023), https://investors.zillowgroup.com/investors/news-and-events/news-details/2023/Zillow-Group-to-acquire-Follow-Up-Boss-an-industry-leader-in-customer-relationship-management/default.aspx.

24

25    [18] *Managing Real-Time Touring and My Agent Tour Appointments*, Follow Up Boss (last visited Jan. 12, 2026), https://help.followupboss.com/hc/en-us/articles/29070989469591-Managing-Real-Time-Touring-and-My-Agent-Tour-Appointments; *Customize & Download ZHL Pre-Approval Letters,* Follow Up Boss, https://help.followupboss.com/hc/en-us/articles/34273538945303-Customize-Download-ZHL-Pre-Approval-Letters (last visited Dec. 24, 2025).

26

CLASS ACTION COMPLAINT - 7

22.      Zillow leverages its monopoly power in the online real estate market to extract fees from real estate agents. To do this, Zillow has launched what it calls its "Premier" and "Preferred" agent programs. When a user on Zillow's website or app sees a listing, they are prompted to click "contact agent" or "request a tour." Zillow then connects that potential buyer to one of its Premier or Preferred agents. But Zillow does not give out those leads for free. According to Zillow, Premier Agents pay, on average, $223 per lead in major metro areas and $139 per lead elsewhere.[19]



**Figure 2: Zillow's Explanation of the Premier Agent Program**

23.      Closely related to Zillow Premier is Zillow Preferred, formerly known as Zillow Flex, which is an invite-only program for agents and teams.[20] Instead of paying an upfront fee for leads, in the Preferred program, once a sale closes, agents pay Zillow a percentage of their commission as a referral fee. Zillow publishes a schedule of rates that are connected to the price of the sale and the metro location.[21] The rates run as high as 40% of the agent's commission on the sale.

24.      The Seattle metro area is categorized by Zillow as "Group 4", meaning that an agent

---

[19] *Become a Premier Agent Partner,* Zillow, https://www.zillow.com/premier-agent/ (last visited Jan. 26, 2026).
[20] *Zillow Preferred, Frequently Asked Questions,* Zillow, https://www.zillow.com/preferred/faq/ (last visited Dec. 24, 2025).
[21] *Zillow Preferred, Pricing,* Zillow, https://www.zillow.com/preferred/pricing/ (last visited Dec. 24, 2025).

CLASS ACTION COMPLAINT - 8

would owe 40% of their commission on a sale of $700,000 or greater. The Bremerton-Silverdale area is in Group 3.[22]

**Pricing Chart**

|  | Group 1 | Group 2 | Group 3 | Group 4 | Group 5 |
|---|---|---|---|---|---|
| 40% | $300,000.00+ | $400,000.00+ | $500,000.00+ | $700,000.00+ | $900,000.00+ |
| 35% | $225,000.00 - $299,999.99 | $300,000.00 - $399,999.99 | $375,000.00 - $499,999.99 | $525,000.00 - $699,999.99 | $675,000.00 - $899,999.99 |
| 30% | $150,000.00 - $224,999.99 | $200,000.00 - $299,999.99 | $250,000.00 - $374,999.99 | $350,000.00 - $524,999.99 | $450,000.00 - $674,999.99 |
| 25% | $75,000.00 - $149,999.99 | $100,000.00 - $199,999.99 | $125,000.00 - $249,999.99 | $175,000.00 - $349,999.99 | $225,000.00 - $449,999.99 |
| 15% | $0.00 - $74,999.99 | $0.00 - $99,999.99 | $0.00 - $124,999.99 | $0.00 - $174,999.99 | $0.00 - $224,999.99 |

Figure 3: Zillow Preferred Pricing Chart

25.    Routinely charging referral fees of 35-40% is substantially in excess of real estate industry norms, where "[b]y far, 25% is the most common rate."[23]

26.    Another Zillow program available to real estate agents is Zillow Showcase, in which agents can pay to have their listings boosted on the platform. Zillow boasts that Showcase listings get greater views and sell for higher prices than non-Showcase listings.[24] Similar to the Preferred/Premier program, leads from Showcase are funneled directly into Follow Up Boss.

27.    Zillow makes plain to agents why they should pay Zillow these exorbitant rates for leads and referrals: because Zillow controls the online real estate marketplace. According to Zillow, "81% [o]f all home buyers in the U.S. used Zillow as part of their homebuying journey" and "1 in 3 [o]f all homebuyers in the U.S. sought a Zillow Premier Agent partner in 2023."[25] Moreover, "Zillow's data shows that agents using Premier Agent close 60% more transactions than those who don't."[26]

---

[22] *Id.*

[23] Ashley Harwood, *Real Estate Referral Fees: The Ultimate Guide for 2026*, Housingwire Vetted (Sept. 18, 2024), https://www.housingwire.com/articles/real-estate-referral-fees/

[24] *Win More Listings with Showcase*, Zillow, https://www.zillow.com/agents/showcase/ (last visited Dec. 24, 2025).

[25] Zillow, *supra* note 19.

[26] *Id.*

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

28.     Zillow has registered itself as a real estate brokerage. Zillow, Inc. has a real estate brokerage license in all 50 states and the District of Columbia, while Zillow Homes, Inc. has a real estate brokerage license in four states.[27]

29.     Zillow also offers lending products through ZHL. ZHL operates in every state except New York, and serves borrowers with a 620 credit score or higher.[28] Third-party reviews of ZHL note several shortcomings, including higher than average origination fees,[29] lack of sample rates, and limited loan types.[30] A review by Yahoo! Finance scored ZHL 2 out of 5 stars on mortgage rates and 2 out of 5 stars on total loan costs, estimating that a ZHL loan costs $6,714.82 more than alternatives for the median borrower.[31]

30.     To manage the leads that Zillow sells to agents and to connect these various programs, it uses FUB. Previously, Zillow managed connections through a different CRM, the Zillow Premier App, which was available to Premier/Preferred agents free of charge. But in 2025 Zillow began requiring agents to use FUB, at significant cost.

31.     FUB is key to Zillow's tying scheme because of the integration it provides between its marketplace, brokerage, and ZHL services. FUB allows lenders direct access to buyer contact information and allows agents to access client financial information in ways that are not typical for the industry. FUB encourages agents to assign lenders to their leads, giving the lenders access to client contact information.[32] Moreover, FUB allows agents to learn when their clients are pre-

---

[27] *Zillow, Real Estate Licenses*, Zillow, https://www.zillow.com/c/info/real-estate-licenses/ (last visited Dec. 24, 2025).

[28] *Zillow Home Loans FAQs*, Zillow, https://www.zillow.com/homeloans/zillow-home-loans-faqs/ (last visited Dec. 24, 2025).

[29] *Zillow Home Loans Review for 2026: Rates, Loan Options and Customer Feedback,* The Mortgage Reports, https://themortgagereports.com/78844/zillow-home-loans-review-rates-loans-credit-score (last visited Dec. 24, 2025).

[30] Molly Grace, *Zillow Home Loans Review 2025: No-Frills Online Lender,* BUSINESS INSIDER (Jan. 23, 2025), https://www.businessinsider.com/personal-finance/mortgages/zillow-home-loans-review.

[31] Hal Bundrick, *Zillow Home Loans Review 2025: No-Frills Online Lender*, Yahoo! Finance (Feb. 11, 2025), https://tinyurl.com/muh6xxs4.

[32] *Working with Lenders in Follow Up Boss,* Follow Up Boss, https://help.followupboss.com/hc/en-us/articles/360014656273-Working-with-Lenders-in-Follow-Up-Boss (last visited Dec. 24, 2025).

CLASS ACTION COMPLAINT - 10

approved by ZHL and then view and download ZHL pre-approval letters—giving agents direct knowledge of a buyer's financials in a manner that is irregular for the industry:[33]

Becca
2 months ago · Updated



Agents can customize* and download their clients' Zillow Home Loan pre-approval letters directly within Follow Up Boss. This streamlines the offer submission process by providing agents with fast, self-serve access to pre-approval letters, eliminating the need to contact a loan officer for retrieval. By accessing and downloading your clients' pre-approval letters directly in Follow Up Boss, you can:

- **Submit offers on your schedule** - Customize* the purchase price and download your client's pre-approval letter at a moment's notice, so you can submit offers at the right time to win more deals.
- **Know your buyer's pre-approved status as soon as possible** - never miss one of the most critical moments in your client's home buying: their pre-approval. You'll receive automatic notifications with an easy way to take the next steps to make strong offers.

**Figure 4: FUB Help Center Description of ZHL Pre-Approval Letter Functionality**

32.     Unlike Zillow's control of the real estate marketplace, ZHL does not yet have a monopoly in the mortgage lending market, and it is not currently among the top 10 mortgage lenders in the US by volume.[34]

33.     But Zillow freely admits that it is trying to tie its dominance in the real estate marketplace with its lending business, via its Premier and Preferred agent programs, in order to drive revenue growth for the less desirable and less dominant lending arm:

> Buyers transact through Zillow at an 80% higher rate after connecting with both Zillow Home Loans and a Zillow Premier Agent partner, vs. with a Zillow Premier Agent partner only. **By driving adoption of the two offerings together, we've seen purchase loan origination volume increase by 2.6x over the past two years, accelerating growth in our Mortgages revenue.**[35]

---

[33] *Customize & Download ZHL Pre-Approval Letters, supra* note 18.

[34] Jeff Ostrowski, *10 Largest Mortgage lenders In the US*, Bankrate (April 14, 2025), https://www.bankrate.com/mortgages/largest-mortgage-lenders/.

[35] Zillow Group, *supra* note 9 at 3 (footnote omitted, emphasis added).

CLASS ACTION COMPLAINT - 11

34.     To that end, Zillow expressly incorporates ZHL pre-approvals in its "performance metrics" for Zillow Preferred Agents:[36]

## Team Lead Performance Standards

Zillow Preferred is a team effort. These metrics reflect how well your team is collectively converting connections into successful transactions and ensuring buyers are prepared with pre-approval information upfront to support their home shopping journey.

**Performance to Transaction Target**:
- **Definition:** Every month, your Zillow Preferred team receives a transaction target, which serves as your team's monthly sales goal. This metric represents your attainment of your transaction target over the last six (6) months.
- **Standard:** 100% or greater over the last six (6) months.

**Zillow Home Loans Pre-Approval Target:**
- **Definition:** Number of agent's customers who get pre-approved with Zillow Home Loans. This empowers consumers to navigate affordability during their home search by equipping them with Zillow Home Loans pre-approvals.
- **How this target is calculated:** Approximately 10% of your team's eligible Zillow Preferred delivered connections that reached or surpassed "met with" status in the last 90 days. The pre-approvals do not need to solely be with Zillow Preferred connections.
- **Standard:** 100% of target over the last three (3) month(s). ⍰

> **Did you know?** Zillow connections who work with a Zillow Preferred agent partner transact 1.9x more often when they have also connected with Zillow Home Loans. ⍰

**Figure 5: Zillow Preferred Agent Program Standards**

35.     Zillow's strategy has worked: Zillow has reported a 57% increase in loan origination year over year in Q3 2025, increasing revenues by 36%—even as Zillow estimates that Q3 mortgage origination was flat year over year for the rest of the industry.[37]

---

[36] *Zillow Preferred, Program Standards*, Zillow, https://www.zillow.com/preferred/program-standards/ (last visited Dec. 24, 2025).

[37] *Zillow Group Reports Third-Quarter 2025 Financial Results,* Zillow Group (Oct. 30, 2025), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2025/Zillow-Group-Reports-Third-Quarter-2025-Financial-Results/default.aspx

CLASS ACTION COMPLAINT - 12

36.     Zillow's anticompetitive conduct is not limited to this tying arrangement and has not gone unnoticed. The Federal Trade Commission and a coalition of state attorneys general have sued Zillow over an unlawful agreement with its competitor Redfin, in which Zillow paid Redfin $100 million to exit the market for rental listing advertisements.[38] Zillow is also facing an antitrust conspiracy lawsuit from competitor Compass over a "Zillow Ban," in which Zillow permanently bans any listing that has been on the market for more than 24 hours but is not available to be listed on Zillow.[39]

**B.     Plaintiff Stephanie M. Dupuis Joins Zillow Preferred Agent, and Is Iced Out for Refusing to Steer Clients to Zillow Home Loans**

37.     Seeking to avoid missing out on business generated through Zillow's dominant platform, Ms. Dupuis and her team joined the Premier Agent program in September 2014, which she participated in through January 2022, and then switched to the Preferred (then known as Flex) program beginning in February 2022, through the present.

38.     Zillow has recognized the Dupuis Team for their outstanding work. Zillow ranked the Dupuis Team #4 nationally for using their "ALM" (appointment, location, motivation) framework for calls with connections. In April 2023, a Zillow representative congratulated the Dupuis Team for achieving a 100% ALM rate and exceeding transaction targets. As of December 2025, the Dupuis Team continues to exceed Zillow targets for answering connections and scheduling appointments and showings, earning them the "Best of Zillow" status.

39.     But the Dupuis Team noticed a shift in the Zillow program around May 2025, when Zillow announced an expansion of its "enhanced markets" program, an "integrated home buying experience" for select metro areas, including Seattle and Bremerton-Silverdale, in which Zillow

---

[38] *FTC Sues Zillow and Redfin Over Illegal Agreement to Suppress Rental Advertising Competition*, Federal Trade Commission (Sept. 30, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-sues-zillow-redfin-over-illegal-agreement-suppress-rental-advertising-competition; *Washington and Four Other States File Housing-Related Antitrust Violation Lawsuit*, Wash. Att'y Gen. (Oct. 1, 2025), https://www.atg.wa.gov/news/news-releases/washington-and-four-other-states-file-housing-related-antitrust-violation.

[39] Debra Kamin, *Compass Sues to Stop 'Zillow Ban'*, N.Y. Times (June 23, 2025), https://www.nytimes.com/2025/04/25/realestate/brokerages-compass-lawsuit.html (subscription required).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Premier and Zillow Home Loan programs are heavily tied.[40] Not long after, Ms. Dupuis experienced increased pressure to steer clients to ZHL. Whereas her performance in the program had previously been evaluated on statistics measuring conversations with clients, the evaluation criteria changed to measurements of ZHL pre-approvals.

40.    Also around May 2025, Zillow ramped up its pressure on agents to use and purchase the FUB system. Ms. Dupuis was told that she had to sign up for Follow Up Boss, or she would be kicked out of the Preferred program:



**Figure 6: Email From Zillow Preferred Agent Advisor Stating that FUB Use is Mandatory**

41.    Additionally, as participants in the Preferred/Premier program, Ms. Dupuis and her team were required to complete training modules on Zillow's policies and practices, which was a significant expense of staff time. She became concerned that Zillow's directives to Preferred/Premier Agents to push clients to ZHL would compromise her duties to clients by divulging confidential information. Screenshots from those training modules illustrate how Zillow directs agents to share client information with lenders, and vice versa:

---

[40] *Zillow Expands Integrated Home Buying Experience to Additional Markets,* Zillow Group (May 22, 2025), https://www.zillowgroup.com/news/zillow-expands-integrated-home-buying-experience-to-additional-markets/.

CLASS ACTION COMPLAINT - 14

1

2

3

4

5

6

7

8

9

10

11

12



13  **Figures 7 & 8: Zillow Training Modules Directing Agents to Provide Loan Officers with Detailed Information About their Clients**

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 15

42.     Based on Ms. Dupuis's concerns with Zillow's practices and respect for her duties to clients, she and her team refused to steer clients towards ZHL. But Zillow used the FUB system to track her ZHL pre-approvals, and Ms. Dupuis could see in FUB that Zillow was penalizing her team for low ZHL pre-approval rates. Her team members were rated only "fair" or "low" in FUB, with comments indicating that the ratings were due to only "fair" or "low" ZHL pre-approvals:



**Figure 9: FUB Dashboard Showing Fair or Low Agent Ratings Due to ZHL Pre-Approvals**

43.     Zillow also made explicit to Ms. Dupuis' agents that it was capping the number of connections they would get per month on the basis of their low ZHL pre-approvals:

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**Figure 10: Zillow Performance Ranking Indicating Leads Cap for Low ZHL Pre-Approvals**

44.     Zillow and its representatives also encouraged Ms. Dupuis and her team to give false or misleading information to prospective clients. A member of the Dupuis Team expressed to a Zillow representative that callers to their agency would hang up after being told that her agents were not the listing agents for properties the callers viewed on Zillow. On more than one occasion, the representative encouraged Dupuis Team members to mislead callers as to their role in the transaction, so they would stay on the phone. Ms. Dupuis and her team did not heed this advice.

45.     In a call on August 27, 2025, the Zillow representative called Ms. Dupuis and gave her a stern warning about her performance. He said that Zillow "only cares about ZHL. Not Flex," according to her contemporaneous notes of the call, and that failing to refer clients to ZHL would have negative consequences for her team. He gave Ms. Dupuis statistics that agents are "1.8 times

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

more likely to convert a lead [with] ZHL" and conveyed the expectation that the Dupuis Team would convert 1 in 5 connections to ZHL.

46.    Further, after a "coaching" call, another Zillow representative sent Ms. Dupuis the below email confirming that her team's ratings in the Preferred Agent program and number of connections were in fact tied to ZHL pre-approvals, and that they were expected to improve their ZHL metrics:

From [REDACTED] zillowgroup.com>
Date Thu 12/4/2025 3:06 PM
To    Dupuis Team <stephanie@dupuisteam.com>

Hi Stephanie & Team,

Thank you for taking the time to meet today to discuss your team's Zillow Flex operations and performance. It was great getting to know you all a little bit and I'm excited to partner with you going forward.

Here are the key points we discussed:

- We clarified how Zillow's performance metrics, particularly eligible met-with connections and ZHL pre-approvals, directly impact individual and team connection targets.
- We addressed the team's challenges with agent recruitment and managing fluctuating connection volume, which has sometimes overwhelmed newer agents.
- We emphasized the critical role of ZHL pre-approvals in improving the team's overall performance ratings and subsequently increasing connection volume.

Regarding our next steps, here is what we agreed upon:

- Our next call is Friday December 12th at 10AM PST
- You will focus on increasing ZHL pre-approvals within your team to improve performance ratings and connection volume.
- Please send the name of the connection that went through ZHL on their own so we can ensure you get credit.

Thank you again for your time today; please reach out if you have any questions.

**Figure 11: Email from Zillow Representative Confirming ZHL Pre-Approval and Zillow Connection Tie-In**

47.    The representative canceled future consultation sessions that she had scheduled with Ms. Dupuis.

48.    Additionally, Ms. Dupuis has participated in the Zillow Showcase program. But as of December 24, 2025, Zillow terminated her Showcase account.

CLASS ACTION COMPLAINT - 18

49.     Zillow's punitive measures had a direct and measurable adverse impact on Ms. Dupuis' business. Zillow began reducing her connections around October 2025 as it escalated its pressure on the Dupuis Team to steer clients to ZHL. Each withheld connection represents a lost opportunity to close a sale and earn income.



**Figure 12: Dupuis Team Zillow Connections Month-to-Month 2025**

50.     In the instances where Ms. Dupuis' team has closed sales through the Preferred Agent program, they have paid fees equal to 35-40% of their commission to Zillow.

## V.     CLASS ALLEGATIONS

51.     Plaintiffs re-allege and incorporate by reference all of the above allegations.

52.     The Class Period is defined as January 16, 2022, to the present.

53.     **Class Definition:** Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following class:

CLASS ACTION COMPLAINT - 19

All persons or entities domiciled in the United States who are or were enrolled in Zillow Group's Premier, Preferred, or Flex Agent programs.

54. Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and Members of their staff, as well as Members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

55. Plaintiffs reserve the right to modify or refine any of the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

56. **Ascertainability**. The proposed Class is readily ascertainable because they are defined using objective criteria so as to allow Class Members to determine if they are part of a Class. Further, the Class can be identified through records maintained by Defendant.

57. **Numerosity (Rule 23(a)(1)).** The Class is so numerous that joinder of individual Members herein is impracticable. The exact number of Class Members, as herein identified and described, is not known, but on information and belief, there are many thousands of agents enrolled in Zillow's Premier Agent, Preferred, or Flex programs.

58. **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members, including the following:

A. Whether Zillow's practices of tying its Premier/Preferred Agent and Zillow Home Loans programs violate antitrust law, including the Sherman Antitrust Act and Clayton Act, and state antitrust law under the Washington Consumer Protection Act;

CLASS ACTION COMPLAINT - 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

B.    Whether Zillow maintains a monopoly in the real estate marketplace and is attempting to monopolize the home loans market via illegal tying;

C.    Whether Zillow's supracompetitive referral fees violate the Sherman Antitrust Act, the Clayton Act, or the state antitrust laws under the Washington Consumer Protection Act;

D.    Whether Plaintiffs and the Class are entitled to monetary damages, and if so what are the measure of those damages;

E.    Whether Plaintiffs and the Class are entitled to non-restitutionary disgorgement based on Zillow's unjust enrichment; and

F.    Whether Plaintiffs and the Class are entitled to injunctive or other equitable relief.

59.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and Class Members (as applicable) suffered anticompetitive harms and other injuries as a result of Zillow's wrongful conduct that is uniform across the Class.

60.    **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class, and Zillow has no defenses unique to individual Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other Class Members.

61.    **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose heavy burdens upon the Courts and Defendants,

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

would create a risk of inconsistent or varying adjudications of the questions of law and fact common to Class Members, and would be dispositive of the interests of the other Class Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

62.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

63.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Class as a whole.

64.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE — SHERMAN ACT SECTION 1, 15 U.S.C. § 1

**(Agreement in restraint of trade, per se unlawful and/or unreasonable, tying)**

**(Against all Defendants, on behalf of the Class)**

65.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

66.    Zillow's core product, its online real estate marketplace and the client referral services that are part of that marketplace, is a separate product sold in a separate market from the

CLASS ACTION COMPLAINT - 22

market home mortgage loans. The relevant geographic area for both markets is the United States, because Zillow operates its real estate marketplace and offers home loans throughout the United States, and likewise attempts to tie the products throughout the United States.

67.    Zillow has tied its home lending product, ZHL, to its market-dominant real estate marketplace platform, via its Premier/Preferred Agent referral program, effectively forcing buyers of referrals in the real estate marketplace to steer clients to ZHL and utilize ZHL services. This agreement is a contract, combination, or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

68.    Zillow has market power in the real estate search market, wherein it connects prospective buyers to real estate agents who subscribe to its referral service, and has used this power to condition the sale of leads to those subscriber agents on the approval for of lending services through ZHL.

69.    The tying arrangement pressures agents to push a specific lender on clients that may not be in their best interest, distorting both the real estate and lending markets.

70.    The tying arrangement causes significant anticompetitive harms. Agents are effectively forced to do business with Zillow because of its vast market power, paying supracompetitive rates for Zillow leads and referrals. Agents are likewise forced to steer business to ZHL regardless of whether it is in their own or clients' best interests to purchase or utilize ZHL products or services. As a result of Zillow's monopoly power and tying arrangement, competition is lessened in the real estate marketplace and the home lending market.

71.    Plaintiffs were injured by the tying arrangement. They suffered economic loss and retaliation, in the form of reduced referrals and consequently reduced sales or lost opportunity for sales, by refusing to steer clients toward the tied product.

72.    Zillow's conduct has a substantial effect on interstate commerce in these markets.

### COUNT TWO — SHERMAN ACT SECTION 2, 15 U.S.C. § 2

### (Monopolization of the real estate marketing platform marketplace)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**(Against all Defendants, on behalf of the Class)**

73.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

74.     Zillow possesses monopoly power in the online real estate marketplace. As Zillow itself states, its platforms have two-thirds of the unique monthly visits to online real estate marketplaces, and more than four times the number of daily active users as its next competitor. By Zillow's estimate, 81% of all U.S. homebuyers interact with Zillow in some manner. Zillow has become so ubiquitous that searches of "Zillow" outpace searches for "real estate" itself on major search engines.

75.     Zillow willfully acquired and maintains its market power by systemically purchasing competitors, expanding vertically into other markets through acquisitions, and tying its products together. Zillow also maintains its monopoly through unlawful conspiracies to stifle competition.

76.     Through its anticompetitive conduct and monopoly power, Zillow is able to charge excessive and supracompetitive referral fees to subscribers to its Premier and Preferred Agent. Those real estate agents are effectively forced to purchase access to Zillow's store of potential homebuyers due to Zillow's monopoly in the real estate marketing platform market. As such, Zillow has willfully acquired, maintained, abused, and profited from its monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

77.     Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by 15 U.S.C. §§ 15, 26.

**COUNT THREE — SHERMAN ACT SECTION 2, 15 U.S.C. § 2**

**(Attempted Monopolization of the Home Lending Market)**

**(Against all Defendants, on behalf of the Class)**

78.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

79.    Zillow has engaged in the anticompetitive conduct described herein, namely tying its home mortgage lending services to its real estate marketplace platform.

80.    Zillow acted with specific intent to monopolize and cause harm in these markets and engages in predatory or anticompetitive conduct to achieve that purpose. Zillow freely admits that its goal is to drive revenue growth by converting visitors to its real estate marketplace platform—potential homebuyers—where it holds monopoly power, into ZHL mortgage borrowers, via the aspect of its platform by which it connects those visitors to its Premier/Preferred Agents. Zillow is able to drive growth in its ZHL loan origination, even if its loan terms are less favorable to borrowers than competitors, due to this tying arrangement and its monopoly power in the real estate marketplace. Ultimately, Zillow's goal is to leverage its real estate marketplace monopoly to become a monopolist in the lending market, controlling every aspect of the real estate ecosystem.

81.    There is a dangerous probability that Zillow will succeed in obtaining a monopoly and harming competition in the lending market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. As Zillow states, growth in its mortgage origination volume and revenue significantly outpaces national mortgage market growth, and Zillow is only able to achieve these results by tying ZHL lending services to its real estate marketplace through its Premier/Preferred Agents. Zillow's unprecedented market power in the online real estate marketplace and vertical integration through acquisitions allows it to exert power in all other aspects of the real estate ecosystem, raising the probability that Zillow will be successful in obtaining a monopoly in the mortgage lending market.

82.    Plaintiffs suffered harm as a result of Zillow's attempted monopolization of the mortgage lending market. Plaintiffs lost business and faced retaliation due to their refusal to steer clients to ZHL. Zillow's tying of its real estate marketplace to ZHL through its Premier/Preferred Agent programs, and the resulting pressure Plaintiffs faced, is the centerpiece of its effort to expand market power in and ultimately monopolize the mortgage lending market.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

83.     Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by 15 U.S.C. §§ 15, 26.

## COUNT FOUR — CLAYTON ACT SECTION 3, 15 U.S.C. § 14
### (Per se unlawful and/or unreasonable, tying)
### (Against all Defendants, on behalf of the Class)

84.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

85.     Zillow's core product, its online real estate marketplace, is a separate product from home mortgage lending services, each of which are sold in separate markets.

86.     Zillow has tied its home lending product, ZHL, to its real estate marketing platform, via its referral service—Premier/Preferred Agents—on the Zillow website and app, which is a condition, agreement, or understanding in violation of Section 3 of the Clayton Act 15 U.S.C. § 14.

87.     Zillow has market power in the real estate marketplace market and has used this power to condition the sale of marketplace referrals to agents on utilizing ZHL services and steering clients to ZHL products.

88.     The tying arrangement pressures agents to push a specific lender on consumers that may not be in the consumer's best interest, distorting both the real estate and lending markets. The relevant geographic area for both markets is the United States, because Zillow operates its real estate marketplace and offers home loans throughout the United States, and likewise attempts to tie the products throughout the United States.

89.     The tying arrangement causes significant anticompetitive harms. Agents are effectively forced to do business with Zillow because of its vast market power, paying supracompetitive rates for Zillow leads and referrals. Agents are likewise forced to steer business to ZHL regardless of whether it is in their own or clients' best interests to purchase or utilize ZHL products or services. As a result of Zillow's monopoly power and tying arrangement, competition is lessened in the real estate marketplace and the home lending market.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

90.     Plaintiffs were injured by the tying arrangement. They suffered economic loss and retaliation, in the form of reduced referrals and consequently reduced sales or lost opportunity for sales, by refusing to steer clients toward the tied product.

91.     Zillow's conduct has a substantial effect on interstate commerce.

92.     Plaintiffs seek actual damages, treble damages, costs, attorneys' fees, and injunctive relief as permitted by 15 U.S.C. §§ 15, 26.

**COUNT FIVE — WASHINGTON CONSUMER PROTECTION ACT, WASH. REV.**

**CODE § 19.86.010 *ET SEQ.***

**(State antitrust law)**

**(Against all Defendants, on behalf of the Class)**

93.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

94.     The Washington Consumer Protection Act "WCPA" protects consumers from unfair and anticompetitive business practices. Among its prohibitions, the WCPA states that "[i]t shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." Wash. Rev. Code § 19.86.040.

95.     The WCPA's antitrust provisions mirror those of federal antitrust law. Similar to Section 1 of the Sherman Act, the WCPA provides that "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful." Wash. Rev. Code Ann. § 19.86.030. And similar to Section 3 of the Clayton Act, the WCPA makes it unlawful to condition the sale of any goods or services on an agreement that the purchaser will not deal in the goods or services of another, when doing so lessens competition or tends to create a monopoly.  Wash. Rev. Code Ann. § 19.86.050.

96.     Accordingly, Zillow has violated the antitrust provisions of the WCPA through its illegal tying arrangement, in the same manner that it violated federal antitrust law.

CLASS ACTION COMPLAINT - 27

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

97. Plaintiffs suffered actual damages as a result of Zillow's illegal tying arrangement, such as lost business when they were penalized for failing to make ZHL referrals.

98. Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by Wash. Rev. Code § 19.86.090.

**COUNT SIX — WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE § 19.86.010 *ET SEQ.***
**(Unfair practices — encouraging breach of broker duties)**
**(Against all Defendants, on behalf of the Class)**

99. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

100. The WCPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

101. Washington law also specifies the duties that a real estate broker owes to a client, which includes duties to "exercise reasonable skill and care," to "deal honestly and in good faith," to "disclose all existing material facts known by the broker and not apparent or readily ascertainable to a party," and to disclose terms of compensation in writing. Wash. Rev. Code § 18.86.030. Moreover, buyers,' sellers,' and dual agents each owe duties of confidentiality to their clients, and are required to disclose any conflicts of interest. Wash. Rev. Code §§ 18.86.040-060.

102. Zillow, by pressuring real estate agents to refer clients to ZHL regardless of whether they believe that lending with ZHL is in their clients' best interest, compromise agents' abilities to adhere to their statutory duties. In so doing, Zillow engages in unfair methods of competition.

103. Zillow also engages in unfair methods of competition by pressuring real estate agents to divulge detailed and identifying client contact information to ZHL lenders, by allowing agents to view confidential or otherwise unavailable client financial information regarding ZHL

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

pre-approvals, and by advising agents to give false or misleading information to clients or prospective clients.

104.    Plaintiffs suffered actual damages as a result of Zillow's unfair methods of competition, such as lost business and terminated participation in lucrative Zillow programs when they were penalized or retaliated against for failing to make ZHL referrals or refusing to adhere to Zillow's unlawful policies and practices.

105.    Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by Wash. Rev. Code § 19.86.090.

### COUNT SEVEN — UNJUST ENRICHMENT
### (Against all Defendants, on behalf of the Class)

106.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

107.    Plaintiffs assert a claim for unjust enrichment under the laws of Washington.

108.    By virtue of the unfair and unlawful conduct alleged herein, Zillow has realized millions of dollars in revenue from (1) tying its mortgage lending products to the referral services it offers in its real estate marketplace, where it has monopoly power; and (2) by abusing that monopoly power to extract supracompetitive referral rates and fees from Preferred and Premier Agents who use Zillow's referral services.

109.    Zillow's ill-gotten gains were monetary benefits conferred upon Zillow by Plaintiffs and Class Members. It would be inequitable and unjust to permit Zillow to retain the economic benefits it obtained through its illegal monopolization and other unlawful practices. Zillow will be unjustly enriched it if were permitted to retain these economic benefits.

110.    Plaintiffs and Class members are therefore entitled to recover the amounts realized by Zillow at their expense.

111.    Zillow knew and appreciated that it was receiving monetary benefits from Plaintiffs and Class Members through its unlawful tying and referral fee practices.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

112.     Zillow deliberately engineered its marketplace platform and lending programs to maximize its revenues from the illegal tying arrangement. Zillow also deliberately charges supracompetitive referral fees to Premier and Preferred agents.

113.     Plaintiffs and Class Members have no adequate remedy at law to divest Zillow of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

114.     To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, Plaintiffs and Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy, and/or the imposition of a constructive trust to recover the amount of Zillow's ill-gotten gains.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek that this matter be certified as a class action, that

their attorneys be appointed Class Counsel, and that they be appointed Class Representatives.

Plaintiff and Class Members seek the following relief against Defendants:

A.     Actual damages and other compensatory relief in an amount to be determined at trial;

B.     Statutory and treble damages as authorized by law, including under 15 U.S.C. § 15, 12 U.S.C. § 2607(d), and RCW 19.86.090.

C.     Restitution and disgorgement of profits and other unjust gains obtained through the conduct alleged herein;

D.     Injunctive and equitable relief to prevent Defendants from continuing the unlawful, unfair, and deceptive practices described in this Complaint;

E.     Reasonable attorneys' fees, costs, and expenses as permitted by law;

F.     Pre- and post-judgment interest as allowed by law; and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1        G.    Such other and further relief as the Court deems just and proper under the

2    circumstances.

3    **VIII.**   **JURY DEMAND**

4        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

5    jury trial for all claims so triable.

6        DATED this 16th day of January, 2026.

7                                KELLER ROHRBACK L.L.P.

8                          By: *s/ Ryan McDevitt*

9                              Ryan McDevitt, WSBA #43305

                          Samuel L. Rubinstein, WSBA #64605

10                              1201 Third Avenue, Suite 3400

11                              Seattle, WA 98101-3268

                          Telephone: (206) 623-1900

12                              Facsimile: (206) 623-3384

13                              rmcdevitt@kellerrohrback.com

                          srubinstein@kellerrohrback.com

14                              *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26