THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE M. DUPUIS and SOUND MUSIC I INC., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZILLOW GROUP, INC., ZILLOW, INC., ZILLOW HOME LOANS, LLC, ZILLOW HOMES, INC., ZILLOW LISTING SERVICES, INC.,<br><br>Defendants. | CASE NO.: 3:26-cv-05049-JHC<br><br>**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>April 20, 2026<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

SUMMARY OF ALLEGATIONS ............................................................................. 2

    I.    Zillow Offers Innovative Partnership Opportunities for Real Estate Professionals ..................................................................................................... 2

    II.    Zillow Streamlines Home Buying with Zillow Home Loans ............................... 3

    III.    Plaintiffs are Dissatisfied with Zillow Preferred Despite Benefiting from It ......... 4

    IV.    Plaintiffs' Claims ............................................................................................... 5

LEGAL STANDARD................................................................................................. 6

ARGUMENT .............................................................................................................. 6

    I.    Plaintiffs Fail to Allege Relevant Markets for All Antitrust Claims ..................... 6

        A.    Plaintiffs Do Not Plead Relevant Product Markets ................................... 7

        B.    Plaintiffs Do Not Plead Relevant Geographic Markets ............................. 8

        C.    Plaintiffs Fail to Allege Products Rather than Services Markets................ 9

    II.    Plaintiffs Fail to State Any Tying Claim ............................................................ 9

        A.    Plaintiffs Lack Antitrust Standing to Assert Their Tying Claims............. 10

        B.    Plaintiffs Fail to State a Claim for Tying................................................. 11

            1.    Plaintiffs Do Not Plead the Existence of a Tie ............................ 11

            2.    Plaintiffs Fail to Allege Any Impact on Home Lending............... 13

    III.    Plaintiffs Fail to State Any Section 2 Claim........................................................ 14

        A.    Plaintiffs Do Not Plead Any Unlawful Anticompetitive Conduct............ 15

        B.    Plaintiffs Do Not Plead Monopoly Power in Any Market........................ 16

        C.    Plaintiffs Do Not Plead a Dangerous Probability of Monopoly in Home Lending ....................................................................................... 18

        D.    Plaintiffs Do Not Plead Specific Intent to Monopolize Home Lending ................................................................................................. 19

    IV.    Plaintiffs Fail to State Any Claim Under WCPA ................................................ 20

        A.    Plaintiffs Do Not Plead Any Unfair or Deceptive Act ........................... 20

DEFENDANTS' MOTION TO DISMISS COMPLAINT    -i-    **WILSON SONSINI GOODRICH & ROSATI**
CASE NO. 3:26-CV-05049-JHC    701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

B.    Plaintiffs' Alleged Breaches of Professional Duties Do Not Occur in Trade or Commerce ................................................................................... 22

C.    Plaintiffs Do Not Plead Public Interest Impact ........................................ 22

D.    Plaintiffs Do Not Plead Compensable Injury and Proximate Cause ......... 23

V.    Plaintiffs Fail to State a Claim for Unjust Enrichment ........................................ 23

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3M Co. v. AIME LLC*,
  2021 WL 5824376 (W.D. Wash. Dec. 8, 2021) .................................................................18

*49er Chevrolet, Inc. v. Gen. Motors Corp.*,
  803 F.2d 1463 (9th Cir. 1986) ...............................................................................12, 13

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) .......................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................6

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
  241 F.3d 696 (9th Cir. 2001) ...........................................................................................9

*Blough v. Holland Realty, Inc.*,
  574 F.3d 1084 (9th Cir. 2009) ...............................................................................13, 14

*CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC*,
  2009 WL 10676075 (W.D. Wash. Sept. 28, 2009)........................................................8, 22

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986)...........................................................................................................9

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) ...............................................................................13, 15

*Chandler v. Wash. Toll Bridge Auth.*,
  137 P.2d 97 (Wash. 1943)...............................................................................................23

*Chelson v. Oregonian Publ'g Co.*,
  715 F.2d 1368 (9th Cir. 1983) .........................................................................................9

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) .........................................................................................10

*Compass, Inc. v. Zillow, Inc.*,
  2026 WL 321084 (S.D.N.Y. Feb. 6, 2026)................................................................15, 17

*Coronavirus Rep. v. Apple Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ...............................................................7

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) .........................................................................................15

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
  520 F. Supp. 2d 1199 (C.D. Cal. 2007) ......................................................................10

DEFENDANTS' MOTION TO DISMISS COMPLAINT        -iii-
CASE NO. 3:26-CV-05049-JHC

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ........................................................................................17

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996) ............................................................................................11

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ...............................................................................11, 13

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) .......................................................................................6

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) .......................................................................................10

*Gamboa v. Apple Inc.*,
    808 F. Supp. 3d 951 (N.D. Cal. 2025) ...................................................................13, 18

*Giesecke v. Movement Mortg. LLC*,
    2025 WL 3049627 (W.D. Wash. Oct. 31, 2025) ...........................................................22

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. 2011) ..................................................................................8

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
    935 P.2d 628 (Wash. Ct. App. 1997) ...........................................................................22

*Greenberg v. Amazon.com, Inc.*,
    553 P.3d 626 (Wash. 2024) ..........................................................................................20

*Group14 Techs., Inc. v. Nexeon Ltd.*,
    2023 WL 7183584 (W.D. Wash. Nov. 1, 2023) ............................................................19

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ...............................................................................6, 7, 8

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    485 F. Supp. 3d 1137 (N.D. Cal. 2020) ........................................................................11

*Hogan v. Amazon.com, Inc.*,
    2024 WL 1091671 (W.D. Wash. Mar. 13, 2024) ..........................................................10

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006) .......................................................................................................11

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .......................................................................................6

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
    764 F. Supp. 3d 1026 (W.D. Wash. 2025) ....................................................................24

*In re Tableware Antitrust Litig.*,
    363 F. Supp. 2d 1203 (N.D. Cal. 2005) ........................................................................16

DEFENDANTS' MOTION TO DISMISS COMPLAINT    -iv-
CASE NO. 3:26-CV-05049-JHC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*,
   170 P.3d 10 (Wash. 2007)............................................................................................22

*Intel Corp. v. Fortress Inv. Grp. LLC*,
   511 F. Supp. 3d 1006 (N.D. Cal. 2021) ......................................................................16

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984)........................................................................................................12

*Joseph v. Amazon.com, Inc.*,
   46 F. Supp. 3d 1095 (W.D. Wash. 2014)...............................................................12, 13

*L&J Crew Station, LLC v. Banco Popular de P.R.*,
   278 F. Supp. 2d 547 (D.V.I. 2003) ...............................................................................9

*Lubic v. Fid. Nat'l Fin., Inc.*,
   2009 WL 2160777 (W.D. Wash. July 20, 2009) .........................................................24

*LyricFind, Inc. v. Musixmatch, S.p.A.*,
   798 F. Supp. 3d 1040 (N.D. Cal. 2025) ......................................................................19

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
   164 F.4th 710 (9th Cir. 2026) ...............................................................................14, 18

*May Dep't Store v. Graphic Process Co.*,
   637 F.2d 1211 (9th Cir. 1980) ......................................................................................9

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*,
   2008 WL 2437739 (D. Haw. June 17, 2008) ................................................................7

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
   924 F.2d 1484 (9th Cir. 1991) ......................................................................................8

*Mundle v. Doxo, Inc.*,
   2025 WL 1126646 (W.D. Wash. Apr. 16, 2025).........................................................22

*New York v. Facebook, Inc.*,
   549 F. Supp. 3d 6 (D.D.C. 2021) ................................................................................15

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ......................................................................................7

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ....................................................................................15

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
   268 F. Supp. 3d 1071 (C.D. Cal. 2017) ........................................................................7

*Panag v. Farmers Ins. Co. of Wash.*,
   204 P.3d 885 (Wash. 2009).........................................................................................20

*Parisien v. Eighty S. Jackson Condo. Ass'n*,
   34 Wash. App. 2d 1041, 2025 WL 1341658 (May 8, 2025),
   *as amended on denial of reconsideration* (July 17, 2025)..............................................21

DEFENDANTS' MOTION TO DISMISS COMPLAINT   -v-
CASE NO. 3:26-CV-05049-JHC

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Patrick v. Ramsey*,
2023 WL 6680913 (W.D. Wash. Oct. 12, 2023) ..............................................................23

*PBTM LLC v. Football Nw., LLC*,
511 F. Supp. 3d 1158 (W.D. Wash. 2021).................................................................6, 12, 14

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022) ........................................................................................16

*Prencipe v. Spokane Bd. of Realtors*,
2006 WL 1310402 (E.D. Wash. May 12, 2006) ...............................................................14

*Reading Hosp. v. Anglepoint Grp., Inc.*,
2015 WL 13145347 (W.D. Wash. May 26, 2015)..............................................................23

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) .............................................................................17, 18, 19

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
532 F.3d 963 (9th Cir. 2008) .....................................................................................16, 17

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ........................................................................................19

*Safeway Inc. v. Abbott Lab'ys*,
761 F. Supp. 2d 874 (N.D. Cal. 2011) ...........................................................................16

*Shields v. Fred Meyer Stores Inc.*,
741 F. Supp. 3d 915 (W.D. Wash. 2024),
*amended by* 796 F. Supp. 3d 740 (W.D. Wash. 2025) .......................................................20

*Sidibe v. Sutter Health*,
4 F. Supp. 3d 1160 (N.D. Cal. 2013) .............................................................................6, 8

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)....................................................................................................14, 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....................................................................................................21

*State v. Black*,
676 P.2d 963 (Wash. 1984)..........................................................................................14

*Stone v. Aspen Dental Mgmt., Inc.*,
2019 WL 13207544 (E.D. Wash. Sept. 13, 2019)............................................................22

*Synopsys, Inc. v. ATopTech, Inc.*,
2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) ..................................................................13

*Tele Atlas N.V. v. Navteq Corp.*,
397 F. Supp. 2d 1184 (N.D. Cal. 2005) ...........................................................................9

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
536 F. Supp. 2d 1191 (C.D. Cal. 2008) ...........................................................................7

*Truck-Rail Handling Inc. v. BNSF Ry. Co.*,
    2005 WL 8178364 (N.D. Cal. Mar. 8, 2005) ....................................................................12

*U.S. Philips Corp. v. KXD Tech., Inc.*,
    2006 WL 8421895 (C.D. Cal. Sept. 14, 2006) .................................................................15

*Young v. Young*,
    164 Wash. 2d 477 (2008) ................................................................................................23

*Zulily, LLC v. Amazon.com, Inc.*,
    761 F. Supp. 3d 1368 (W.D. Wash. 2024) ................................................................20, 21

*Zunum Aero, Inc. v. Boeing Co.*,
    2022 WL 2116678 (W.D. Wash. June 13, 2022) ..............................................................8

**STATUTES**

15 U.S.C. § 1 ............................................................................................................ *passim*

15 U.S.C. § 2 ............................................................................................................ *passim*

15 U.S.C. § 14 ..................................................................................................................5, 9

RCW § 19.86.020 .......................................................................................................19, 21

**MISCELLANEOUS**

Areeda & Hovenkamp, *Antitrust Law* (5th ed. 2024) ...................................10, 12, 13, 21

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC
-vii-
WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

**INTRODUCTION**

In a time when housing affordability is a challenge for millions of consumers, Zillow is attempting to simplify the homebuying process and help buyers understand the homes they can afford and shop with confidence. Indeed, Zillow encourages potential homebuyers to learn about their buying power by obtaining a free, no-obligation pre-approval letter from Zillow Home Loans ("ZHL"). As the Complaint makes clear, no homebuyer or agent is *ever* required to buy anything from ZHL. Nor does receiving a ZHL pre-approval prevent buyers from working with other lenders (which allegedly hold *over 90%* market share in a market Plaintiffs never define). Rather, a buyer who obtains a pre-approval letter merely becomes a more informed shopper.

Plaintiffs attempt to spin Zillow's efforts to assist buyers into violations of antitrust laws, claiming that Zillow has illegally "tied" unspecified "real estate search" services with ZHL. That claim fails basic antitrust law because Plaintiffs do not plausibly allege the elements of an unlawful tie: a coerced purchase of two or more distinct products *by a single buyer*. Plaintiffs are real estate agents who advertise through Zillow's platform—but notably, they do not allege that they purchase any ZHL products. Plaintiffs thus have no basis (or standing) to bring the tying claims.

Perhaps recognizing that there is indeed no tie, Plaintiffs assert a laundry list of other antitrust and state law claims with vague allegations that ignore essential elements and do not come close to plausibility. Accordingly, the Court should dismiss the entire Complaint for failure to state any claim.

First, even if Plaintiffs had a viable tying theory (they do not), all of their antitrust claims (Counts 1–5) should be dismissed for failure to allege a relevant market. The Complaint refers to at least *six* different markets but never defines any of them, and fails to plausibly allege what products, services, and geographic regions they encompass. That is fatal to all antitrust claims.

Second, Plaintiffs' monopolization and attempt claims (Counts 2 and 3) are deficient because the Complaint fails to plausibly plead either unlawful, anticompetitive conduct or

DEFENDANTS' MOTION TO DISMISS COMPLAINT                    -1-
CASE NO. 3:26-CV-05049-JHC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

Zillow's purported monopoly power. Indeed, the challenged ZHL pre-approvals cost nothing, require nothing, and are not exclusive. The Complaint concedes that ZHL is not even among the top ten national mortgage lenders, so there is no plausible threat of monopolization in any home lending market.

Third, Plaintiffs fail to state a Washington Consumer Protection Act ("WCPA") claim for deceptive practices (Count 6). Plaintiffs admit they have refused to connect clients to ZHL, so they cannot plead that Zillow's standards are unfair or deceptive, nor had a negative impact on anyone. Likewise, Plaintiffs' alleged injuries—fewer connections from Zillow—are not caused by any unlawful conduct but rather Plaintiffs' refusal to meet Zillow's Preferred agent performance standards.

Finally, Plaintiffs cannot state a claim for unjust enrichment (Count 7) because any remedy must sound in the contract Plaintiffs have with Zillow, they have not conferred any benefit on Zillow by refusing to connect clients to ZHL, and their underlying antitrust claims all fail.

The Court should thus dismiss the entire Complaint because all claims fail as a matter of law.

SUMMARY OF ALLEGATIONS

I.    **Zillow Offers Innovative Partnership Opportunities for Real Estate Professionals**

Zillow's mission is to provide high quality experiences that help consumers make home a reality. Zillow thus offers "an ecosystem of products and services designed to provide a seamless, end-to-end transaction experience for renters, shoppers, buyers and sellers, as well as the real estate professionals who serve them." Compl. ¶18. Consumers have responded positively to Zillow's products, and its websites and apps attract hundreds of millions of visitors. *Id.* ¶19.

Zillow offers services to connect homebuyers with real estate agents via "connect[ions]," *id*. ¶68, thus helping those agents grow their businesses. Zillow offers two primary advertising programs to agents: Zillow Premier and Zillow Preferred. *Id*. ¶¶22–23.

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Agents who participate in the Premier program pay Zillow an upfront fee for connections, and in return, receive connections to high-intent buyers from Zillow. *See id*. ¶22 (Fig.2). Participation in the Premier program significantly boosts agents' business: "Zillow's data shows that agents using Premier Agent close 60% more transactions than those who don't." *Id*. ¶27.

In the separate Preferred program (formerly called Flex), agents ("Preferred Agents") receive connections from Zillow for no upfront cost and only pay Zillow a referral fee after they close a sale and earn their own commission on that sale. *Id*. ¶23. In other words, Zillow only gets paid when the Preferred Agent closes a transaction. In light of this revenue sharing model, Preferred is a "team effort" and currently an invite-only program where agents are expected to comply with certain "Program Standards." *Id*. ¶¶23, 34. Such compliance ensures the Preferred program is mutually beneficial for all parties, including consumers, Preferred Agents, and Zillow. For instance, Preferred Agents receive a monthly buyer transaction target from Zillow. *Id*. ¶34. To ensure accurate tracking of connections, transactions, and standards performance, Preferred Agents use Zillow's proprietary customer relationship management system, Follow Up Boss ("FUB"). *Id*. ¶40. FUB integrates Zillow's marketplace, brokerage, and ZHL services, so Zillow can easily manage leads provided to agents, while agents can access needed information in one convenient location. *See id*. ¶¶30–31.

## II.    Zillow Streamlines Home Buying with Zillow Home Loans

Zillow launched ZHL in 2018 to create a streamlined and "integrated home buying experience" by allowing homebuyers working with Zillow to get financing directly from ZHL. *See id*. ¶¶21, 39. Homebuyers "transact through Zillow at an 80% higher rate after connecting with both Zillow Home Loans and a Zillow Premier Agent partner," as opposed to working only with a Zillow Premier Agent and then seeking financing options elsewhere. *Id*. ¶33. Offering mortgages through ZHL is also a key part of Zillow's "enhanced markets," program, which it launched in the Seattle and Bremerton-Silverdale regions of Washington State in May 2025. *Id*.

Mortgage pre-approvals help provide homebuyers the information they need to "navigate affordability during their home search." *Id.* ¶34 (Fig.5).

To help create an "integrated home buying experience," Preferred Agents are expected to achieve a target number of free, no-obligation ZHL pre-approvals. *Id*. ¶39. The target is provided to the Preferred Agent's "team" and set at "[a]pproximately 10% of [the] team's eligible Zillow Preferred delivered connections … in the last 90 days," though agents may connect clients to ZHL who were not Zillow Preferred leads. *Id*. ¶34 (Fig.5).

Plaintiffs concede that ZHL "is not currently among the top 10 mortgage lenders in the US by volume." *Id*. ¶32.

**III.     Plaintiffs are Dissatisfied with Zillow Preferred Despite Benefiting from It**

Plaintiffs are Stephanie M. Dupuis and her real estate business, Sound Music I, Inc.[1] Compl. ¶¶10–11. In February 2022, Plaintiffs entered an agreement with Zillow to become Preferred Agents after participating in the Premier program for almost ten years. *See id*. ¶¶4, 37. Since then, Plaintiffs have received from 75 to over 130 connections from Zillow per month. *See id*. ¶49 (Fig.12). As a result, Plaintiffs successfully "closed sales through the Preferred Agent program." *Id*. ¶50. And, in exchange for these connections, Plaintiffs paid Zillow referral fees "equal to 35–40% of their [buyers' agent] commission" on the home sale transactions. *Id*.

Nevertheless, Plaintiffs have a variety of "concern[s]" with the Preferred program. *Id*. ¶41. They allege that Zillow's performance standards related to ZHL pre-approvals pressure Plaintiffs to recommend ZHL even when it might not be in their clients' best interest, which gives rise to a "conflict of interest" that they must disclose to their clients. *Id*. ¶¶101–02. Plaintiffs do not allege that they were required to direct every connection to ZHL, nor that they were forbidden from disclosing their relationship to the Preferred Agent program and ZHL. To the contrary, Plaintiffs allege they have "refused to steer clients towards ZHL." *Id.* ¶42. Plaintiffs

---

[1] Sound Music I, Inc. contracts with real estate agents. Compl. ¶¶10–11.

DEFENDANTS' MOTION TO DISMISS COMPLAINT        -4-
CASE NO. 3:26-CV-05049-JHC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

claim this refusal has led to "economic loss and retaliation" in the form of "reduced referrals" and "reduced sales or lost opportunity for sales" from Zillow. *Id*. ¶71; *see also id.* ¶¶42–43, 49.

Plaintiffs also allege Zillow pressures agents to "divulg[e] confidential information" about the connected clients. *Id*. ¶41. Plaintiffs further assert Zillow "advis[ed] agents to give false or misleading information to clients or prospective clients." *Id*. ¶103. However, Plaintiffs concede they "did not heed this advice." *Id*. ¶44.

## IV.    Plaintiffs' Claims

Plaintiffs assert federal and state antitrust claims against Zillow based on an alleged "tie" between its "online real estate marketplace" and its "home lending product, ZHL," and allegedly "supracompetitive referral fees to subscribers to its Premier and Preferred Agent" programs. Plaintiffs allege violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, Section 3 of the Clayton Act, 15 U.S.C. § 14, and the Washington Consumer Protection Act ("WCPA"), RCW § 19.86.040. *Id*. ¶¶66–67, 76, 80.

Plaintiffs allege Zillow has "monopoly power" because it is "the most widely used real estate website in the United States." *Id*. ¶18. Specifically, Plaintiffs claim 64% of "daily active users of real estate marketplace apps" are "on Zillow Group apps," and that "Zillow Group sites had an average of 250 million monthly unique users in Q3 2025, and there were 165 million homes in its database." *Id*. ¶19. Plaintiffs reference various Zillow acquisitions, some over a decade old, to demonstrate Zillow's purported "monopoly power." *See id*. ¶20. The Complaint does not explain what markets these statistics relate to and inconsistently refers to at least six different "markets":

- "real estate app" market, *id*. ¶1;
- "online real estate marketplace," *id*. ¶¶66, 74, 85;
- "real estate search market," *id*. ¶68;
- "real estate marketplace," *id*. ¶¶70, 81–82, 89;
- "real estate marketplace platform," *id*. ¶79;

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

- "home lending" market, *id.* ¶67.

Plaintiffs also claim that Zillow is engaging in "unfair or deceptive acts or practices" in violation of the WCPA. *Id*. ¶¶99–103. Finally, Plaintiffs allege that Zillow has been unjustly enriched by these alleged violations. *Id*. ¶107.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). Nor do courts accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

## ARGUMENT

### I. Plaintiffs Fail to Allege Relevant Markets for All Antitrust Claims

Every antitrust claim (Counts 1–5) should be dismissed for failure to sufficiently plead relevant markets. "Under the rule of reason, plaintiffs must plead a relevant market to state an antitrust claim under Sections 1 or 2 of the Sherman Act." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1179 (W.D. Wash. 2021) (citing *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018)). The same is true for analogous claims under the WCPA. *Id.* at 1178. Likewise, for both *per se* and rule-of-reason tying claims, the complaint must define the relevant market for both the "tying" and "tied" products. *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1176, 1179 (N.D. Cal. 2013).

A relevant market must include both a product market, "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and

substitutes for it," and a geographic market, meaning "the area where the competition in the relevant product market takes place." *Id.* at 1174 (citations omitted).

The Complaint fails to allege facially plausible product or geographic markets.

### A.       Plaintiffs Do Not Plead Relevant Product Markets

The Complaint fails to plausibly allege any relevant product market. Courts dismiss a complaint when its "'relevant market' definition is facially unsustainable." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). A product market is "facially unsustainable" when plaintiffs fail to explain what "reasonably interchangeable" products are included. *Hicks*, 897 F.3d at 1123 (citation modified); *see Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1084 (C.D. Cal. 2017) (rejecting market definition where it is "unclear what products [definition] might encompass").

Plaintiffs fail to clearly name, let alone define, the tying market. The Complaint inconsistently refers to the tying market as the "real estate app" market (Compl. ¶1); the "online real estate marketplace and the client referral services that are part of that marketplace" (*id*. ¶66); "real estate search market" (*id*. ¶68); "real estate marketplace" (*id*. ¶70); and "real estate marketplace platform" (*id*. ¶79). It is unclear whether these five different labels describe the same or different markets. That, alone, warrants dismissal. *See Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1196 (C.D. Cal. 2008) (dismissing antitrust claims where "any number of markets might be intended" from plaintiffs' allegations). Further, Plaintiffs provide no facts about what these products entail, with whom Zillow competes, or whether the markets are single or multi-sided. *See McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, 2008 WL 2437739, at *7 (D. Haw. June 17, 2008) (dismissing complaint with "no facts indicating that the identified market bears any relation to the methodology necessary in defining the relevant market"); *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *13 (N.D. Cal. Nov. 30, 2021) (dismissing complaint for failure to plausibly define market), *aff'd*, 85 F.4th 948 (9th Cir. 2023). The Complaint is thus insufficient to provide even a general understanding of

what reasonably interchangeable products are included in any of the six markets. For example, it does not explain why the tying market should be limited to online referrals, excluding the myriad interchangeable ways in which real estate agents obtain clients, such as through advertising, social media, and word-of-mouth. Compl. ¶66.

The alleged tied market fails for similar reasons. Plaintiffs completely fail to allege any defining features of a "home lending market," including its parameters, competitors, or substitutable products. *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (affirming dismissal of complaint without "*any* facts" supporting "a product market consisting of reasonably interchangeable goods").

### B.    Plaintiffs Do Not Plead Relevant Geographic Markets

Plaintiffs' geographic market allegations are similarly deficient. A geographic market must be defined with reference to the "area of effective competition where buyers can turn for alternate sources of supply." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (citation modified). In other words, "[w]here [a defendant] competes does not define the market"—it is the area in which customers look for reasonable alternative providers. *Id.* Courts dismiss complaints with unexplained or conclusory geographic markets that are inconsistent with "judicial experience and common sense." *See Hicks*, 897 F.3d at 1121 (citation omitted) (affirming dismissal); *see also Sutter Health*, 4 F. Supp. 3d at 1175; *CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC*, 2009 WL 10676075, at *5 (W.D. Wash. Sept. 28, 2009) (Robart, J.) (dismissing antitrust claim where plaintiff "failed to plead *any* geographic market").

Here, Plaintiffs claim the tying and tied markets are national because Zillow operates across the United States and so does its alleged tie. Compl. ¶66. However, no facts in the Complaint support a national geographic market for either product. *See Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *8 (W.D. Wash. June 13, 2022) (Robart, J.) (pleading geographic market requires describing scope of markets "in more than vague and conclusory

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

terms."). To the contrary, Plaintiffs acknowledge that Zillow Preferred utilizes regional pricing and Zillow's "enhanced markets" offering is launched in "select metro areas," confirming there is no single national market. Compl. ¶¶23–24, 39. Plaintiffs' allegations of national geographic markets are thus implausible and unsupported.

All of Plaintiffs' antitrust claims should be dismissed for failure to plead any markets.

**C.      Plaintiffs Fail to Allege Products Rather than Services Markets**

Plaintiffs' Clayton Act § 3 claim (Count 4) fails for the additional reason that the Complaint does not allege the requisite *product* markets for the tying and tied markets. *See Chelson v. Oregonian Publ'g Co.*, 715 F.2d 1368, 1372 (9th Cir. 1983) ("Section 3 does not apply to services."); 15 U.S.C. § 14 (Section 3 claim limited to "goods, wares, merchandise, machinery, supplies, or other commodities").

Under the "dominant nature" standard, Plaintiffs' allegations fail to demonstrate that the tying and tied markets are "products" rather than non-actionable services. *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1215 (9th Cir. 1980). Plaintiffs allege that, in the tying market, Zillow "connects prospective buyers to real estate agents who subscribe to its referral service." Compl. ¶68. These connections are "purely ethereal consideration[s]" which are "services" for purposes of Section 3. *See Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp. 2d 1184, 1192 (N.D. Cal. 2005). Plaintiffs also repeatedly describe the tied market as "lending services," Compl. ¶¶1, 5, 68, 79; no aspect of that market is physical in nature. *See L&J Crew Station, LLC v. Banco Popular de P.R.*, 278 F. Supp. 2d 547, 554 (D.V.I. 2003) ("banking services do not constitute a sale of commodities and are not within the coverage of the Clayton Act").

The Section 3 claim must be dismissed because neither alleged market is for "products."

**II.      Plaintiffs Fail to State Any Tying Claim**

Each tying claim (Counts 1 & 3–5) must be dismissed because Plaintiffs fail to plead antitrust injury, that Zillow imposed a tie at all, or that Zillow's conduct caused any effect on the tied market.

DEFENDANTS' MOTION TO DISMISS COMPLAINT          -9-          WILSON SONSINI GOODRICH & ROSATI
CASE NO. 3:26-CV-05049-JHC                                      701 Fifth Avenue, Suite 5100
                                                                Seattle, WA 98104-7036
                                                                Tel: (206) 883-2500

A.    **Plaintiffs Lack Antitrust Standing to Assert Their Tying Claims**

The Complaint fails to plausibly allege that Plaintiffs have antitrust standing. Plaintiffs must show "antitrust injury … to establish standing" to assert federal antitrust claims. *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986); *see also Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) (WCPA must be interpreted "in light of federal court decisions interpreting federal antitrust law"). Antitrust injury requires "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) (citation omitted). "[I]n assessing alleged antitrust injuries, courts must focus on anticompetitive effects in the market where competition is allegedly being restrained," and "[p]arties whose injuries … are experienced in another market do not suffer antitrust injury." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citation modified). Accordingly, "[t]wo types of plaintiffs have standing to challenge illegal tying arrangements—[1] purchasers who are forced to buy the tied product to obtain [] the tying product, and [2] competitors who are restrained from entering the market for the tied product." *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1210 (C.D. Cal. 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009). The Complaint fails to allege antitrust injury for three reasons.

First, Plaintiffs do not allege they are either purchasers or competitors in the allegedly tied market for home lending and thus lack standing for that reason alone. *See id.*

Second, Plaintiffs' alleged injuries in the form of "reduced referrals" and "consequently reduced sales" of their agent services fall outside the allegedly tied market for home lending. Compl. ¶71. Indeed, the Complaint concedes "client referral services" are within the *separate* "online real estate marketplace [sic]," but not the tied market for home lending. *Id.* ¶66. Thus, their injuries are "experienced in another market" and cannot confer antitrust standing. *Qualcomm*, 969 F.3d at 992; *see Hogan v. Amazon.com, Inc.*, 2024 WL 1091671 (W.D. Wash.

-10-

Mar. 13, 2024) (Chun, J.) (dismissing claims for lack of antitrust standing where plaintiffs alleged harm outside tied market), *aff'd*, 2025 WL 869202 (9th Cir. Mar. 20, 2025).

Third, Plaintiffs lack standing because no tie was imposed on consumers in the home lending market. "[I]ntermediaries lack standing to challenge tying arrangements … when the tie itself is imposed on the intermediary but not on its very own customers." Areeda & Hovenkamp, *Antitrust Law* ¶358b (5th ed. 2024)*.* "For example, the pizza franchisor might require its franchisee to sell its own brand of ice cream as well as its own brand of pizza; however, consumers are not required to purchase ice cream as a condition of obtaining pizza. They can purchase the franchisee's pizza and then purchase ice cream from a rival." *Id.* Just as the franchisee lacks standing in this example, Plaintiffs lack standing because there is no allegation consumers are required to use ZHL for any reason.

## B.     Plaintiffs Fail to State a Claim for Tying

The Complaint fails to plausibly allege either required element of a tying claim. "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023) (citation omitted). Plaintiffs must prove both (1) "the existence of a tie" and (2) that it is "unlawful pursuant to either a modified *per se* rule or the Rule of Reason." *Id.* at 995–97.

### 1.     Plaintiffs Do Not Plead the Existence of a Tie

The Complaint fails to demonstrate that two separate products were tied. Two showings are required: "First, the arrangement must, of course, involve two (or more) separate products." *Id.* at 995. "Second, … the seller must also '*force* the buyer into the purchase of a tied product ….'" *Id.* (citation omitted). The Complaint fails to plead either element.

Two Separate Products Purchased by Same Buyer. The Complaint fails to show that Plaintiffs purchased two separate products. There must be some "tying of products directed at the same consumer group." *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1154 (N.D. Cal.

2020); *see also Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34–35 (2006) (the "essential characteristic of an invalid tying arrangement" is a single "buyer" of two separate products); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 71 (2d Cir. 1996) ("tying arrangement requires that at least two products … be purchased by the same individual"). The Ninth Circuit has flatly "decline[d] to stretch the tying construct" to cover "a tie with respect to a separate buyer." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178, 1180 (9th Cir. 2016).

Here, Plaintiffs do not plead that they purchase both real estate referrals and mortgages, dooming their tying claim. *See id.* Plaintiffs only allegedly purchase connections to homebuyers from Zillow. Plaintiffs do not allege Zillow requires them to buy mortgages or other lending products. *See* Compl. ¶88 ("tying arrangement pressures *agents* to push a specific lender on *consumers*" (emphasis added)). They therefore fail the single buyer requirement.

This Circuit rejects such strained tying claims. Addressing allegations that "[General Motors] unlawfully required dealers who wished to sell GM vehicles, the tying product, to perform warranty services compensated at precise amounts, the tied product," this Circuit affirmed dismissal because such arrangements "fail to meet existing definitions of an unlawful tie-in." *49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1469 (9th Cir. 1986). Indeed, plaintiffs were "not buyers of an allegedly tied product at all, but [] sellers" of them. *Id.*; *Truck-Rail Handling Inc. v. BNSF Ry. Co.*, 2005 WL 8178364, at *11 (N.D. Cal. Mar. 8, 2005) (dismissing tying claim where plaintiffs "were allegedly coerced to *sell* services to the [d]efendant, whether they wanted to or not"). Since *selling* a tied product is insufficient to state a claim, Plaintiffs' allegations that they are merely asked to *advise* clients to obtain ZHL pre-approval letters necessarily fail.

Coercion. The Complaint also fails to plausibly allege coercion to purchase any tied product. "Actual coercion by the seller that in fact forces the buyer to purchase the tied product is an indispensable element of a tying violation." *PBTM*, 511 F. Supp. 3d at1183 (citation omitted);

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

*see also Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984) (seller must "force a purchaser to do something that he would not do in a competitive market").

Plaintiffs allege no coercion because they admit they *refuse* to "steer" consumers to ZHL while still receiving connections from Zillow. Compl. ¶42. Thus, Plaintiffs were not coerced into any purchase (or sale). *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1104 (W.D. Wash. 2014) (plaintiff who refused to purchase tied product cannot plead tying claim). Plaintiffs allege a reduction in their Preferred connections based on a failure to "steer" consumers to ZHL, Compl. ¶¶42–43, 49, but even the full "termination or rejection of a dealer or customer who refuses to comply with a tie is neither a tying agreement nor a conditioned sale." *Antitrust Law*, ¶1753f[2]; *see Joseph*, 46 F. Supp. 3d at 1104.

### 2. Plaintiffs Fail to Allege Any Impact on Home Lending

The Complaint also fails to plead any plausible impact on any market for home lending caused by the alleged tie.

Preliminarily, the alleged tie does not merit *per se* treatment. The Ninth Circuit has cautioned against applying *per se* treatment to ties that "differ[] markedly" from historical ties. *Id.* at 997. As discussed above, Plaintiffs' claims fail to even "meet existing definitions of an unlawful tie-in." *49er Chevrolet*, 803 F.2d at 1469.

Plaintiffs' tying claims fail because even under the *per se* standard, tying arrangements must affect a "not insubstantial volume of commerce" in the tied market. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008) (citation omitted). The question is "whether a total amount of business, substantial enough … so as not to be merely *de minimis*, is foreclosed to competitors by the tie." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009) (citation omitted). Here, Plaintiffs admit the home lending market is fiercely competitive, with at

---

[2] Indeed, the Section 1 tying claim must be dismissed for the additional reason that Plaintiffs did not form an agreement with Zillow because they refused to steer consumers to ZHL. *See Gamboa v. Apple Inc.*, 808 F. Supp. 3d 951, 963 (N.D. Cal. 2025) (dismissing Section 1 claim where there was no "agreement, however reluctant, of a buyer") (citation omitted).

least ten competitors doing more business than Zillow. Compl. ¶32. While they point to Zillow's statements that "growth in its mortgage origination volume and revenue significantly outpaces national mortgage market growth," and allege that the tie "distort[s]" home lending, *id*. ¶¶69, 81, these are not allegations of market-wide harm *to competition* in home lending, such as reduced output or increased prices in that market. *See Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *8 (N.D. Cal. Aug. 7, 2015) (dismissing *per se* tying claim where plaintiff failed to allege how competition was harmed in tied market).

The tying claims also fail because Plaintiffs allege they do not want to promote *any* home lending service. "Zero foreclosure exists where the tied product is completely unwanted by the buyer." *Blough*, 574 F.3d at 1089 (emphasis omitted). Here, even if Plaintiffs were "buyers" of the allegedly tied product (they are not), they "have failed to show" they "would have purchased such product from another 'seller.'" *See Prencipe v. Spokane Bd. of Realtors*, 2006 WL 1310402, at *2 (E.D. Wash. May 12, 2006) (granting dismissal). Just the opposite, Plaintiffs allege here they "will not pressure clients to choose any particular lender over another." Compl. ¶6. Because Plaintiffs are neither buyers of the tied product, nor would have promoted any other lender absent the alleged tie, the Complaint fails to plausibly allege that other lenders were foreclosed from competing.

Plaintiffs' failure to state any tying claim requires dismissal of Counts 1, 3, 4 and 5.

## III.    **Plaintiffs Fail to State Any Section 2 Claim**

Counts 2 and 3 should be dismissed because Plaintiffs have not plausibly alleged any actual or attempted monopolization claim under Section 2 of the Sherman Act. To plead monopolization, Plaintiffs must allege (1) "the possession of monopoly power in the relevant market"; (2) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"; and (3) "causal antitrust injury." *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 724 (9th Cir. 2026) (citations omitted). Attempted monopolization requires pleading (1)

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC                          -14-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

"predatory or anticompetitive conduct," (2) "a specific intent to monopolize," (3) "a dangerous probability of achieving monopoly power," and (4) causal antitrust injury. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).[3] The Complaint fails to plead any of these mandatory elements.

### A.    Plaintiffs Do Not Plead Any Unlawful Anticompetitive Conduct

Plaintiffs fail to plead that Zillow's conduct is anticompetitive or exclusionary as opposed to legitimate and competitive. Monopolization and attempt claims both require pleading "anticompetitive conduct that harms the competitive process as a whole, rather than the success or failure of individual competitors." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954–55 (9th Cir. 2023) (citation omitted); *U.S. Philips Corp. v. KXD Tech., Inc.*, 2006 WL 8421895, at *2 (C.D. Cal. Sept. 14, 2006) (dismissing monopolization and attempt claims where plaintiff failed to allege anticompetitive conduct). Anticompetitive conduct is conduct that "tends to impair the opportunities of rivals" and "does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health*, 515 F.3d at 894 (citation omitted). None of the conduct alleged in the Complaint suffices to state a claim.

First, Plaintiffs cannot rely on their tying allegations to plead Section 2 claims because Plaintiffs have failed to plead an unlawful tie. *See supra* Section II.B; Compl. ¶¶75, 79.

Second, Plaintiffs' conclusory allegations of long-ago acquisitions by Zillow are barred by the doctrine of laches, Compl. ¶¶20–21, 75, and they allege no cognizable anticompetitive conduct. *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1085–86 (9th Cir. 2014) (Clayton Act's "four-year statute of limitation" on damages actions should be "used as a 'guideline'" for "computing the laches period."); *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 45 (D.D.C. 2021) (rejecting acquisitions completed six years or more as basis for Section 2 claims), *aff'd sub nom. New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023). The Court should not

---

[3] Plaintiffs' WCPA antitrust claim rises and falls with their federal claims. *See PBTM*, 511 F. Supp. 3d at 1178 (WCPA interpretation guided by federal law (citing *State v. Black*, 676 P.2d 963, 967 (Wash. 1984))).

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

consider allegations regarding transactions that were completed years ago. In any event, Plaintiffs allege no facts explaining *how* any of the transactions were anticompetitive or relevant to Zillow's purported power in any market.

Third, the Complaint's passing references to unrelated litigation do not demonstrate anticompetitive conduct. One court has already denied the plaintiff's motion to preliminarily enjoin Zillow because the plaintiff failed to show likelihood of success, *Compass, Inc. v. Zillow, Inc.*, 2026 WL 321084, at *10 (S.D.N.Y. Feb. 6, 2026),[4] and "[s]imply saying 'me too' after a governmental investigation does not state a claim," *In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005). Plaintiffs also do not explain how the conduct at issue in those lawsuits is relevant to any market alleged in the Complaint. *See* Compl. ¶36.

Plaintiffs' failure to plausibly allege anticompetitive conduct requires dismissal of Counts 2 and 3.

**B.    Plaintiffs Do Not Plead Monopoly Power in Any Market**

Plaintiffs' monopolization claim (Count 2) must also be dismissed because the Complaint fails to plausibly allege that Zillow has market power in any market. *See Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 971 (9th Cir. 2008). Monopoly power is "the power to control prices or exclude competition," which can be "shown through direct or circumstantial evidence." *Safeway Inc. v. Abbott Lab'ys*, 761 F. Supp. 2d 874, 886 (N.D. Cal. 2011) (citations omitted). Plaintiffs fail to allege either.

No Direct Evidence. Direct proof of market power may be alleged by pleading restricted output or supracompetitive prices. *See PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022). The Complaint alleges neither. First, the Complaint is completely devoid of allegations that Zillow has restricted output in any market, such as by pleading market-wide reduction in home loans or real estate referrals. Second, Plaintiffs' conclusory allegations of

---

[4] Compass subsequently voluntarily dismissed this lawsuit. *See* Order re. Notice of Voluntary Dismissal, *Compass, Inc. v. Zillow, Inc.*, No. 1:25-cv-05201 (S.D.N.Y. Mar. 20, 2026), ECF No. 193.

DEFENDANTS' MOTION TO DISMISS COMPLAINT            -16-
CASE NO. 3:26-CV-05049-JHC

supracompetitive prices are also deficient. They claim to have paid fees of "35–40% of their commission," which allegedly exceeds "industry norms" and a "most common rate" of 25%. Compl. ¶¶25, 50. But allegations that a defendant charged more for their service than others are "immaterial absent some indication that those other [services] are fair comparators for the [services] at issue." *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1028 (N.D. Cal. 2021). The Complaint nowhere pleads why a "most common rate" of 25% is a fair comparator for the fees paid by Plaintiffs. Nor is that allegation plausible, as the article relied on by Plaintiffs explains that rates vary based on "the market … anywhere from 25% to 40%" and agents "may see higher referral fees offered on properties at higher price points." Request for Judicial Notice, Ex. A at 1; *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts are not "required to accept as true allegations that contradict … matters properly subject to judicial notice"). Indeed, Figure 3 shows that the fees Plaintiffs allegedly paid are for transactions with higher home sale prices and in a specific geographic region. *See* Compl. ¶24 (Fig.3). Plaintiffs nowhere explain why a "most common" fee sets the ceiling for competitive pricing across all home sales, regardless of price or region.

No Indirect Evidence. Plaintiffs also fail to adequately allege indirect evidence of monopoly power. Alleging indirect evidence requires plaintiffs to "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and [] that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) (citations omitted). The Complaint falls short on all three.

First, Plaintiffs have not alleged a plausible tying market, *see supra* Sections I.A-B, II.B, and "[w]ithout a definition of the relevant market, it is impossible to determine market share." *Rebel Oil Co.*, 51 F.3d at 1434.

Second, even if Plaintiffs had properly defined a tying market, Plaintiffs nowhere allege in the Complaint what Zillow's market share is in that market. At most, the Complaint alleges a

DEFENDANTS' MOTION TO DISMISS COMPLAINT    -17-
CASE NO. 3:26-CV-05049-JHC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

laundry list of metrics related to the quantity of *consumer* interactions with Zillow's services, Compl. ¶¶19, 74, which a federal district court recently found to be "flawed proxies for Zillow's market share in the online home search market." *Compass*, 2026 WL 321084, at *18–20. And Plaintiffs' allegation that "Zillow Group sites account for two-thirds of all monthly unique visits among real estate sites" does not suffice for market share, as the Complaint does not plead any facts demonstrating that mere visits to Zillow's websites reflect market share. Compl. ¶19; *see Rick-Mik Enters.*, 532 F.3d at 973 (affirming dismissal where plaintiff could not explain statistics' relevance to market share); *Gamboa*, 808 F. Supp. 3d at 970 (share of "consumers served" not equivalent to market share).

Third, regardless of Zillow's market share of the tying market, Plaintiffs completely fail to allege any barriers to entry or expansion by competitors in any market. That defect alone warrants dismissal. *See Malheur*, 164 F.4th 710, 728–29 (affirming dismissal where plaintiffs alleged 95% market share but failed to plead barriers to entry or expansion).

### C.    Plaintiffs Do Not Plead a Dangerous Probability of Monopoly in Home Lending

Plaintiffs' attempted monopolization claim (Count 3) also fails because the Complaint fails to demonstrate a dangerous probability of monopoly in a market for home lending. A "dangerous probability" of achieving monopoly power "requires the threshold step of defining the relevant market and consideration of the same monopoly power principles" applied to monopolization claims—market share, barriers to entry, barriers to expansion. *Gamboa*, 808 F. Supp. 3d at 971 (citations omitted). A 30% market share is "presumptively insufficient," and plaintiffs must plausibly allege barriers to entry and expansion. *Rebel Oil Co.*, 51 F.3d at 1438. The Complaint again falls short.

First, as with the monopolization claim, the Complaint fails to plausibly allege a national market for home lending. *See supra* Section I; *3M Co. v. AIME LLC*, 2021 WL 5824376, at *9 (W.D. Wash. Dec. 8, 2021) ("failure to adequately plead the relevant market dooms [plaintiff's] ability to allege … dangerous probability of achieving market power").

DEFENDANTS' MOTION TO DISMISS COMPLAINT          -18-          **WILSON SONSINI GOODRICH & ROSATI**
CASE NO. 3:26-CV-05049-JHC                                                701 Fifth Avenue, Suite 5100
                                                                          Seattle, WA  98104-7036
                                                                          Tel: (206) 883-2500

Second, the Complaint fails to plead Zillow's market power in any market for home lending that could plausibly demonstrate a dangerous probability of success. Here, the Complaint admits that Zillow is "not currently among the top 10 mortgage lenders in the US by volume." Compl. ¶32. Thus, even if the Court assumed that Zillow is the 11th largest lender (which Plaintiffs do not allege), as a matter of basic arithmetic Zillow's market share in home lending cannot possibly exceed 9.1% (*i.e.*, 100% ÷ 11, charitably assuming that the top 10 lenders' shares are equal). That is both presumptively insufficient and far below market shares at which courts dismiss attempted monopolization claims. *See, e.g.*, *Rebel Oil Co.*, 51 F.3d at 1438 (rejecting 44% share as too low); *Group14 Techs., Inc. v. Nexeon Ltd.*, 2023 WL 7183584, at *6 (W.D. Wash. Nov. 1, 2023) (rejecting 46% share).

Third, the Complaint does not allege any facts whatsoever "that new rivals are barred from entering the market and … that existing competitors lack the capacity to expand their output." *Rebel Oil Co.*, 51 F.3d at 1439. There are no allegations that Zillow requires agents to exclusively connect customers to ZHL or that customers may only obtain a mortgage from ZHL.

In short, Plaintiffs' attempted monopolization claim should be dismissed for failure to plead a dangerous probability of success.

### D.    Plaintiffs Do Not Plead Specific Intent to Monopolize Home Lending

Plaintiffs' attempted monopolization claim fails for the additional reason that the Complaint fails to plausibly allege "specific intent to control prices or destroy competition." *Id.* at 1433. Specific intent is "something more than willing, voluntary, and knowing participation" in the alleged conduct and requires plaintiffs to plead facts showing that the defendant's conduct was for "the specific … purpose" of monopolization. *LyricFind, Inc. v. Musixmatch, S.p.A.*, 798 F. Supp. 3d 1040, 1075 (N.D. Cal. 2025) (citation omitted). Here, all Plaintiffs allege is that Zillow's "goal is to drive revenue growth by converting visitors to its real estate marketplace platform." Compl. ¶80. But that only shows "intent to compete vigorously." *Spectrum Sports*,

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC                    -19-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

506 U.S. at 459. The Complaint does not plead any other facts demonstrating any intent to destroy competition in home lending, and the attempted monopolization claim thus fails.[5]

## IV.    Plaintiffs Fail to State Any Claim Under WCPA

The Complaint fails to plead a claim for "unfair or deceptive acts or practices" in violation of WCPA (Count 6). RCW § 19.86.020. To state a claim, the plaintiff must plead "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009); *see also Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 930 (W.D. Wash. 2024) ("Private WCPA plaintiffs must establish all five elements"), *amended by* 796 F. Supp. 3d 740 (W.D. Wash. 2025). Plaintiffs fail to plausibly allege any element.

### A.    Plaintiffs Do Not Plead Any Unfair or Deceptive Act

The allegations in the Complaint fall short of pleading any unfair or deceptive practice. "A practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits'" to consumers or to competition. *Shields*, 741 F. Supp. 3d at 930–31 (citation omitted). A deceptive act is "'a representation, omission or practice that is likely to mislead' a reasonable consumer." *Zulily, LLC v. Amazon.com, Inc.*, 761 F. Supp. 3d 1368, 1393–94 (W.D. Wash. 2024) (Chun, J.) (citation omitted). Where the facts are undisputed, such as on a motion to dismiss, whether an act is unfair or deceptive may be decided as a matter of law. *See Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 648 (Wash. 2024). Plaintiffs allege that Zillow "pressure[es]" agents to (1) "compromise [their] abilities to adhere to their statutory duties" by "refer[ring] clients to ZHL"; (2) "divulge" and "view confidential" client information; and (3)

---

[5] Plaintiffs' failure to plead anticompetitive conduct, as discussed in Section III.A, *supra*, means they also cannot plead specific intent to monopolize. "[I]n the absence of anticompetitive conduct from which … specific intent may be inferred," any "allegation of specific intent … is conclusory." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987).

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

"give false or misleading information to clients or prospective clients." Compl. ¶¶101–03. None of these allegations establish an unfair or deceptive practice as a matter of law.

First, the Complaint nowhere alleges that encouraging a subset of consumers to obtain free and non-binding ZHL pre-approval letters causes any "substantial injury" to Plaintiffs or consumers, let alone an injury that cannot be avoided. *Shields*, 741 F. Supp. 3d at 931. Indeed, Zillow only asks Preferred Agents to achieve a "target" pre-approval rate of 10% of their connections from Zillow. Compl. ¶34 (Fig.5). Nor does the Complaint allege that a pre-approval letter adds any costs or obligates consumers to use ZHL's services. To the contrary, helping consumers learn more about their buying power is more plausibly beneficial than injurious to competition. *See, e.g.*, *Antitrust Law* ¶1423 ("rationality and efficiency are served by maximizing the relevant information available to parties contemplating dealing with each other").

Second, Plaintiffs offer no factual allegations as to why any information agents allegedly "divulge" or "view" is confidential vis-à-vis Zillow or ZHL, let alone how that alleged conduct causes substantial injury to anyone. Compl. ¶103. And to the extent Plaintiffs assert that the confidential information is that of their clients, Plaintiffs lack Article III standing because they have no legally protected interest in, and have not been injured by, any disclosure of third parties' information. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (plaintiff must show injury-in-fact from an invasion of a "legally protected interest" that is "concrete and particularized" (citation omitted)).

Third, the Complaint does not plead any specific representations or practices by Zillow that are "likely to mislead a reasonable consumer." *Zulily, LLC*, 761 F. Supp. 3d at 1393–94 (citation modified) (plaintiff must point to specific representations made by defendant). Plaintiffs vaguely reference "advice" by Zillow to "give false or misleading information to clients" but fail to allege any misinformation was actually conveyed to consumers because "Ms. Dupuis and her team did not heed" that advice. Compl. ¶¶44, 103. The Complaint thus fails to plead an unfair or deceptive practice.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC

-21-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

**B.    Plaintiffs' Alleged Breaches of Professional Duties Do Not Occur in Trade or Commerce**

Plaintiffs' WCPA claim is also defective because the alleged conduct does not occur in "trade or commerce." RCW § 19.86.020. Claims directed at "the substantive quality of services provided" by licensed professionals fall "outside the confines of 'trade and commerce'" under WCPA. *Parisien v. Eighty S. Jackson Condo. Ass'n*, 34 Wash. App. 2d 1041, 2025 WL 1341658, at \*31, \*34 (May 8, 2025), *as amended on denial of reconsideration* (July 17, 2025) (unpublished) (affirming summary judgment of WCPA claim directed at real estate broker for failure to disclose plumbing leak). Here, Plaintiffs allege that Zillow is "encouraging breach of broker duties" in how licensed agents deliver their services to consumers, namely whether to refer a client to any particular lender (or no lender). Compl. at 28:7; *see also id.* ¶¶101–03. That is insufficient to state a WCPA claim as a matter of law.

**C.    Plaintiffs Do Not Plead Public Interest Impact**

The Complaint insufficiently alleges a public interest impact. "Only acts that have the capacity to deceive *a substantial portion* of the public are actionable." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) (dismissing WCPA claim where plaintiff "was an experienced businessman who had dealt with [the defendant] for years" and "not representative of bargainers vulnerable to exploitation"); *see also Giesecke v. Movement Mortg. LLC*, 2025 WL 3049627, at \*7 (W.D. Wash. Oct. 31, 2025) (dismissing WCPA claim for lack of "repeated instances of similar misconduct"). Here, the Complaint does not plausibly allege facts showing any impact on the public. The alleged conduct is directed only at real estate agents who choose to advertise with Zillow—indeed, Plaintiffs allege a long-standing, eleven-year business relationship with Zillow. *See* Compl. ¶37. Likewise, the putative class consists only of agents who contracted with Zillow, not consumers. *Id.* ¶53; *see CaptiveAire Sys.*, 2009 WL 10676075, at \*3 (relationship between parties was not "of the sort contemplated by the CPA" that would affect public interest). And the challenged practices involve alleged "pressure[]" that Plaintiffs claim they resisted, rather than actual deception or

harm to the public. *Id.* ¶¶102–03. Plaintiffs therefore fail to plausibly allege the public interest impact requirement.

### D.    Plaintiffs Do Not Plead Compensable Injury and Proximate Cause

The Complaint fails to plead that Zillow's allegedly unfair or deceptive conduct proximately caused a compensable injury. "Plaintiffs may recover under the [WCPA] only for injuries to their business or property that were proximately caused by a defendant's unfair or deceptive practices." *Stone v. Aspen Dental Mgmt., Inc.*, 2019 WL 13207544, at *4 (E.D. Wash. Sept. 13, 2019). Proximate cause is a cause that "produces the injury complained of and without which such injury would not have happened." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007) (citation omitted); *see also Mundle v. Doxo, Inc.*, 2025 WL 1126646, at *6 (W.D. Wash. Apr. 16, 2025) (plaintiffs "must … aver facts that support a causal link").

Here, Plaintiffs fail to plead a causal link between the allegedly unfair and deceptive practices and their injury, reduced connections from Zillow. *See* Compl. ¶104. The Complaint makes clear that Plaintiffs' alleged injury was caused *not* by any unfair or deceptive practice but rather by a "fail[ure] to make ZHL referrals." *Id*. Indeed, Plaintiffs do not allege they suffered *any injury* from encouraging clients to obtain ZHL pre-approvals, communicating deceptive information, or mishandling confidential information (all conduct that Plaintiffs allege they have not done, *id*. ¶42). As such, Plaintiffs fail to demonstrate the necessary causal link between Zillow's alleged conduct and a compensable injury, requiring dismissal.

## V.    Plaintiffs Fail to State a Claim for Unjust Enrichment

The unjust enrichment claim (Count 7) should be dismissed for two separate reasons. First, the claim is barred because Plaintiffs and Zillow are parties to a contract covering the same subject matter. Parties to a "valid express contract [are] bound by the provisions of that contract" and thus precluded from "bring[ing] an action … in contravention of the express contract." *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943); *see also Reading Hosp. v.*

DEFENDANTS' MOTION TO DISMISS COMPLAINT    -23-
CASE NO. 3:26-CV-05049-JHC

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Anglepoint Grp., Inc.*, 2015 WL 13145347, at \*2 (W.D. Wash. May 26, 2015) ("[T]he unjust enrichment claim *is* 'about' the same subject matter that is governed by the contract. It is therefore barred."). Here, Plaintiffs allege they "entered an agreement to become a Preferred Agent," Compl. ¶4; their unjust enrichment claim is thus barred because it is premised on the terms of their participation in the Preferred Agent program, *see id.* ¶108.

Second, even if not barred, the Complaint fails to allege the requisite elements of an unjust enrichment claim: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant "appreciates" the benefit; and (3) the defendant's retention of the benefit without payment of its value is inequitable. *Young v. Young*, 164 Wash. 2d 477, 484–85 (2008). Plaintiffs concede that they have *not* conferred a benefit upon Zillow because they "refused to steer clients towards ZHL." Compl. ¶42. *See Patrick v. Ramsey*, 2023 WL 6680913, at \*3 (W.D. Wash. Oct. 12, 2023) (dismissing unjust enrichment claim where plaintiffs did not "confer[] any benefit" on defendants). Even if Plaintiffs had conferred a benefit, they admit to receiving dozens of valuable connections from Zillow to prospective clients, *see* Compl. ¶49 (Fig.12), and have thus been justly compensated.

Plaintiffs also fail to allege any circumstances that would render Zillow's retention of any alleged benefit inequitable. *See In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1049 (W.D. Wash. 2025) (dismissing unjust enrichment claim for failure to "allege 'circumstances as to make it inequitable' for Defendant to retain any alleged benefit" when all other claims were dismissed). Plaintiffs' unjust enrichment claim arises out of the same conduct alleged in their "tying" and "monopolization" claims. Compl. ¶¶108–11. However, as discussed above, Plaintiffs fail to sufficiently plead their underlying antitrust claims, which is fatal to their allegations that Zillow realized any unjust or inequitable "benefits." *Id.* ¶111; *see also Lubic v. Fid. Nat'l Fin., Inc.*, 2009 WL 2160777, at \*6 (W.D. Wash. July 20, 2009) (dismissing unjust enrichment claims "based on the existence of" insufficiently pleaded antitrust claims).

Accordingly, the Complaint fails to plead a plausible unjust enrichment claim.

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC
-24-
**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**CONCLUSION**

For the foregoing reasons, Zillow respectfully requests the Court dismiss the Complaint in its entirety.

Dated: March 23, 2026

I certify that this memorandum contains 8,400 words, in compliance with the Local Civil Rules.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Nicholas R. Sidney*
Nicholas R. Sidney, WSBA #54982
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:   (206) 883-2500
Email: nsidney@wsgr.com

Beau W. Buffier (*pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bbuffier@wsgr.com

Bonnie Lau (*pro hac vice*)
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: blau@wsgr.com

*Attorneys for Zillow Group, Inc., Zillow, Inc., Zillow Home Loans, LLC, Zillow Homes, Inc., and Zillow Listing Services, Inc.*

DEFENDANTS' MOTION TO DISMISS COMPLAINT
CASE NO. 3:26-CV-05049-JHC

-25-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500