The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| STEPHANIE M. DUPUIS, SOUND MUSIC I INC., BRIAN GRAHAM, AND ANNA ALVAREZ, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>ZILLOW GROUP, INC., ZILLOW, INC., ZILLOW HOME LOANS, LLC, ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC.<br><br>                         Defendants. | No. 3:26-cv-05049-JLR<br><br>AMENDED CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

AMENDED CLASS ACTION COMPLAINT - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs Stephanie M. Dupuis, Sound Music I, Inc. ("Sound Music"), Brian Graham, and Anna Alvarez (collectively, "Plaintiffs"), by and through their undersigned attorneys of record, for their Amended Complaint against Defendants Zillow Group, Inc.; Zillow, Inc.; Zillow Home Loans, LLC; Zillow Homes, Inc.; and Zillow Listing Services, Inc.; upon personal knowledge as to Plaintiffs' actions and upon information and belief as to Defendant's actions, allege as follows:

## I.    INTRODUCTION

1.    Zillow, among other businesses, operates the nation's largest real estate search portal, which is accessible via both its eponymous website (Zillow.com) and a mobile phone app. Zillow holds monopoly power in the market for such real estate search platforms: Zillow reports that it controls 61% of internet traffic among those searching online for real estate listings, which is more than double the next largest competitor in this market.

2.    Zillow's monopolization of the market for real estate search portals means that both consumers—that is, potential homebuyers—and real estate agents use Zillow's services. Zillow itself estimates that "80% of U.S. residential real estate transactions involve agents who use at least one Zillow product, whether that is Premier Agent, including Zillow Preferred; Follow Up Boss; or Zillow Workspace, which includes ShowingTime, Zillow Showcase and dotloop."[1] Zillow sells referrals of such potential homebuyers to real estate agents via the aforementioned "Premier Agent" and "Preferred" products. Because Zillow's portal is by far the most popular among potential homebuyers searching for real estate listings, its referral services are an important source of business for real estate agents, and Zillow holds significant market power in the market for referrals of potential homebuyers to agents.

3.    Due to (and illustrative of) its monopoly power, Zillow is able to extract supracompetitive rents in the form of excessive commission splits from the real estate agents[2] who,

---

[1] Zillow Group Inc., *Annual Report (Form 10-K)* at 4 (Feb. 11, 2026), https://s24.q4cdn.com/723050407/files/doc_financials/2025/ar/Form-10-K.pdf.

[2] In nearly every state, a real estate "agent" means someone who is licensed to assist with real estate transactions, and a real estate "broker" has additional responsibilities including overseeing a firm. *See e.g.,* Sarah Li Cain, *Real estate broker vs. agent: Differences explained*, ROCKET MORTGAGE (Jan. 17, 2026), https://www.rocketmortgage.com/learn/real-estate-broker-vs-agent. But in Washington, the term "broker" means a

AMENDED CLASS ACTION COMPLAINT - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

due to Zillow's dominance in the market, use its referral services. Zillow extracts 40% of the commissions earned by real estate agents who broker properly sales to homebuyers referred to them by Zillow. Industry standard commission splits usually range from 25-33%.

4.      Zillow also expressly ties a product in a different market, customer relation management ("CRM") software, to its more desirable referral services. Zillow requires agents who obtain referrals via its Premier or Preferred products to also pay for its Follow Up Boss ("FUB") CRM, and use it to manage those relationships. This is true despite the availability of competitor CRM products, and the fact that Zillow previously provided its client referrals via a free CRM application. Zillow estimates that FUB "powers daily activity for more than 80% of the highest-volume teams in the country."[3] In addition to monetizing its CRM via this unlawful tying arrangement, Zillow enforces the requirement to purchase FUB because FUB's data tracking is an integral tool in enforcing Zillow's coercive and unlawful scheme to steer agents' clients to Zillow's home loan program.

5.      As a condition of access to referrals of potential homebuyers, Zillow coerces and pressures real estate agents to steer those clients to Zillow's home lending service. Zillow requires agents to steer home buyers to obtain home loan approvals from Zillow Home Loans ("ZHL"). If agents, or teams of agents at brokerages, fail to meet Zillow's aggressive targets for pre-approvals of ZHL home loans, Zillow cuts them off from those client referrals, decreases the quality of those referrals, or terminates the agents from its programs. It does so regardless of how long an agent has used Zillow's referral products or how successful that agent or team has been by other Zillow metrics. This is an unreasonable agreement and an unfair business practice, in violation of federal antitrust and state consumer protection law.

---

professional akin to an "agent" elsewhere, and the terms "designated broker" and "managing broker" mean professionals who own and oversee real estate firms. *See* Wash. Rev. Code 18.85.011. Brokers, managing brokers, and designated brokers are each separately licensed or registered. *See* Wash. Rev. Code 18.85.101; 18.85.111; 18.85.121. This Complaint uses the term "agent" in a manner consistent with national standards, and as used here the term "agent" encompasses "brokers" in Washington.

[3] Jeremy Wacksman, *Q4 2025 Shareholder Letter* at 2 (Feb. 10, 2026), https://s24.q4cdn.com/723050407/files/doc_earnings/2025/q4/presentation/Zillow-4Q25-Shareholders-Letter.pdf

AMENDED CLASS ACTION COMPLAINT - 3

6.	Plaintiff Stephanie M. Dupuis operates a real estate team in Kitsap County, WA (the "Dupuis Team"). Her team has been recognized with "Best of Kitsap: Bremerton and Central Kitsap" awards from the Central Kitsap Reporter. Ms. Dupuis prides herself on providing the highest quality service for her clients and wants to give them the best advice possible.

7.	Plaintiffs Brian Graham and Anna Alvarez are licensed real estate agents in Maryland and Oregon, respectively.

8.	In today's real estate market, and because of Zillow's dominance in the market for real estate search, it is difficult for agents and brokerage teams to do business without working with Zillow to at least some degree, as Zillow proudly reports.

9.	As such, Plaintiffs or their brokerages entered into agreements to join the Preferred Agent program, which is run by Zillow alongside its similar Premier Agent program. The premise of both programs is the same: when a user on the Zillow app requests to tour a property, Zillow connects them with a Premier or Preferred agent. Premier agents pay upfront for client referrals or leads (which Zillow collectively refers to as "connections"), while Preferred agents pay Zillow a hefty cut if the referral leads to a sale: up to 40% of their commission on the sale. Although the cost of referrals is substantial, because of Zillow's monopoly power in the real estate search portal market, the referrals are an important source of business for many agents and brokerages.

10.	Still, Zillow attempts to extract even more profit from these transactions. Zillow runs a mortgage lending service, ZHL. Zillow tracks the performance of its Preferred agents in a proprietary CRM system, FUB. An agent's rating in FUB is tied to the number of loan pre-approvals they secure through ZHL. The higher an agent's rating, the higher quantity and quality of connections Zillow supplies; conversely, the lowest-rated agents risk being terminated from the program. In other words, a Preferred agent who fails to direct a sufficient number of their clients to obtain pre-approvals through ZHL will receive fewer or worse connections, resulting in fewer or lower-value of sales and substantial financial loss.

AMENDED CLASS ACTION COMPLAINT - 4

**KELLER ROHRBACK L.L.P.**

11.     Plaintiffs are opposed to steering clients to ZHL, because engaging in such steering could violate their duties to their clients, could result in their clients obtaining inferior loan products, and could even violate the Real Estate Settlement Practices Act ("RESPA"). Agents owe a duty to act in their clients' best interest, and for that reason Plaintiffs will not pressure clients to choose any particular lender over another. But Zillow designs its Preferred agent program such that a failure by agents to steer clients towards ZHL means demotion in rating, fewer connections, and thus, fewer completed sales. For its part, Zillow acknowledges as a risk to its business that ZHL "may not meet customers' financing needs with its product offerings,"[4] but it nonetheless attempts to coerce agents to steer their clients to those offerings, and cuts off access to referrals if agents refuse to do so.

12.     Zillow's abuse of its market power harms homebuying consumers and agents alike. It is also an unlawful arrangement under the state and federal antitrust and consumer protection laws. Plaintiffs bring this action on behalf of themselves and similarly situated real estate agents to hold Zillow accountable for its abuse of its market power to coerce agents to steer clients to ZHL, in the hope of restoring their ability to serve clients without being subject to these anticompetitive and unfair pressures, and to remediate Zillow's unlawful tying of its FUB CRM product to its referral "connections."

## II.     JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*, and the Clayton Antitrust Act, 15 U.S.C. § 12 *et seq*,. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because there are at least one hundred class members, there is minimal diversity, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(b), because Defendants reside in this District, transact substantial

---

[4] Zillow Group Inc., *Annual Report (Form 10-K)*, *supra* note 1, at 11.

AMENDED CLASS ACTION COMPLAINT - 5

business here, and a substantial part of the events or omissions giving rise to the claims occurred here.

### III.    PARTIES

15.    Plaintiff Stephanie M. Dupuis is a resident and citizen of Washington, and a real estate agent who operates the Dupuis Team, a Kitsap County real estate team.

16.    Plaintiff Sound Music I, Inc. is a Washington corporation owned by Stephanie Dupuis, with its principal place of business at 3888 NW Randall Way, Silverdale, WA 98383. The real estate agents who make up the Dupuis Team are employees or independent contractors of Sound Music I.

17.    Plaintiff Brian Graham is a licensed real estate agent based in Annapolis, Maryland.

18.    Plaintiff Anna Alvarez is a licensed real estate agent based in Portland, Oregon.

19.    Defendant Zillow Group, Inc. ("Zillow Group") is a Delaware corporation with its principal executive offices located at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. Zillow Group is the publicly traded parent company (NASDAQ: "Z") that controls a range of related businesses and services. Zillow Group includes several other brands that Zillow has acquired, including Trulia, Hotpads, and StreetEasy.[5]

20.    Zillow, Inc. is a Washington Corporation with its principal offices at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. It maintains real estate licenses in every state.

21.    Defendant Zillow Home Loans, LLC ("ZHL") is a Kansas corporation wholly owned by Zillow, with its principal offices at 2600 Michaelson Drive, Suite 1201, Irving, CA 92612. ZHL is engaged in the business of originating mortgages loans.

22.    Zillow Homes, Inc. is a Delaware corporation with its principal offices at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. Zillow Homes maintains a real estate license in four states.

---

[5] Our Brands, *About Zillow*, ZILLOW, https://www.zillow.com/z/corp/about/ (last visited May 4, 2026).

AMENDED CLASS ACTION COMPLAINT - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

23.     Zillow Listing Services, Inc. is a Washington corporation with its principal offices at 1301 Second Avenue, Floor 31, Seattle, Washington 98101, offering various real estate services.

24.     Collectively, the Zillow entity Defendants (Zillow Group, Zillow Inc, Zillow Home Loans, Zillow Homes, and Zillow Listing Services) are referred to as "Zillow."

## IV.    FACTUAL ALLEGATIONS

### A.    Zillow Builds an Anticompetitive Real Estate "Ecosystem"

25.     Zillow is the most widely used online real estate search portal in the United States.[6] One need not look hard for evidence of Zillow's power in the market for real estate search, because Zillow proudly touts it in its public-facing materials. Zillow previously touted that it was four times as large as its nearest competitor, but after two competitors merged (Rocket and Redfin), Zillow is still more than twice as large as that combined entity. *Compare* Fig. 1 and 2, *infra*. According to Zillow's most recent figures, Zillow Group products account for 61% of daily active app users, while Rocket and Redfin sites account for 26% of users.[7] Google search trends show that "Zillow" is a more common search term than "real estate."[8] Zillow Group sites had an average of 235 million monthly unique users in 2025, and there are approximately 173 million homes in its database.[9] Through 2024, Zillow had $2.2 billion in revenues, up 15% from the year prior—outpacing the 6% growth in the housing market.[10] In 2025, Zillow's sites saw 9.6 billion visits overall, and revenue of $2.6 billion.[11]

---

[6] *Your trusted home for getting home*, ZILLOW, https://www.zillow.com/news/about/ (last visited May 4, 2026).
[7] *Id.*
[8] Zillow Group Inc., *Annual Report (Form 10-K)*, *supra* note 1, at 3.
[9] *Id.* at 6, 44.
[10] Jeremy Wacksman, *Letter to Shareholders* at 1, Zillow Group (Apr. 16, 2025), https://s24.q4cdn.com/723050407/files/doc_financials/2024/ar/2025-Letter-to-Shareholders.pdf.
[11] Jeremy Wacksman, *Q4 2025 Shareholder Letter*, *supra* note 3 at 1.

AMENDED CLASS ACTION COMPLAINT - 7

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384





**Figure 1: Zillow Metrics of Market Power (Year End 2024)**



**Zillow Group apps have more than twice as many daily active users than the next company in the category. It's no wonder Google dubbed Zillow an "app that defined a generation."**



**Figure 2: Zillow Metrics of Market Power (Year End 2025)**

26.    Zillow has amassed its power in the online real estate marketplace over the years by buying up competitors one after another. In 2011, Zillow acquired Postlets, an online real estate

AMENDED CLASS ACTION COMPLAINT - 8

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

listing and distribution platform.[12] In 2012, Zillow acquired Mortech, a service to connect borrowers to home lenders and provide quotes.[13] The same year, Zillow acquired Hotpads, an online marketplace for rental listings.[14] In 2013 Zillow acquired StreetEasy, then the largest real estate website in New York City, in order to achieve "market leadership" in that market.[15] In 2014, Zillow announced a $3.5 billion dollar acquisition of Trulia, its then-largest competitor.[16]

27.    Zillow also competes in the marketplace for real estate leads or referrals. Thanks to its dominance in the search portal market, it is among the largest entities in this marketplace.[17]

28.    Zillow has also entered the home lending market and other facets of the real estate industry. ZHL was created through Zillow's acquisition of another lender, Mortgage Lenders of America, in 2018.[18] In 2021, Zillow acquired ShowingTime, a platform for scheduling home showings.[19] In 2023, Zillow acquired a CRM system, FUB.[20] This has fulfilled Zillow's goal of

---

[12] *Zillow Acquires Postlets*, ZILLOW INC. (April 11, 2011), https://zillow.mediaroom.com/2011-04-11-Zillow-Acquires-Postlets-an-Online-Listing-Creation-and-Distribution-Platform.

[13] *Zillow Completes Acquisition of Mortech*, ZILLOW GROUP (Nov. 30, 2012), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2012/Zillow-Completes-Acquisition-of-Mortech/.

[14] *Zillow to Acquire Hot Pads to Accelerate Growth of Rental Marketplace*, ZILLOW GROUP (Nov. 26, 2012), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2012/Zillow-to-Acquire-HotPads-To-Accelerate-Growth-of-Rental-Marketplace/default.aspx.

[15] *Zillow Completes Acquisition of StreetEasy*, ZILLOW GROUP (Aug. 28, 2013), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2013/Zillow-Completes-Acquisition-of-StreetEasy/.

[16] *Zillow Announces Acquisition of Trulia for $3.5 Billion in Stock*, ZILLOW GROUP (July 28, 2014), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2014/Zillow-Announces-Acquisition-of-Trulia-for-35-Billion-in-Stock/default.aspx; Geoff Weiss, *Zillow to Acquire Chief Competitor Trulia in $3.5 Billion Deal*, NBC News (July 28, 2014), https://www.nbcnews.com/id/wbna55741290.

[17] Megan DeMatteo, *The 8 top real estate lead generation companies for 2026*, HOUSINGWIRE (April 13, 2026)https://www.housingwire.com/articles/top-real-estate-lead-generation-companies/

[18] *Zillow Group Launches Zillow Home Loans to Support Zillow Offers*, ZILLOW GROUP (April 2, 2019), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2019/Zillow-Group-launches-Zillow-Home-Loans-to-Support-Zillow-Offers/default.aspx.

[19] *Zillow Group Closes Acquisition of ShowingTime, the Industry Leader in Home Touring Technology*, ZILLOW GROUP (Oct. 1, 2021), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2021/Zillow-Group-Closes-Acquisition-of-ShowingTime-the-Industry-Leader-in-Home-Touring-Technology/default.aspx.

[20] *Zillow Group to Acquire Follow Up Boss, An Industry Leader In Customer Relationship Management*, ZILLOW GROUP (Nov. 1, 2023), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2023/Zillow-Group-to-acquire-Follow-Up-Boss-an-industry-leader-in-customer-relationship-management/default.aspx.

AMENDED CLASS ACTION COMPLAINT - 9

creating an all-encompassing real estate "ecosystem," as tours through ShowingTime and loans through ZHL all flow directly into FUB.[21]

29.    Zillow leverages its monopoly power in the real estate search marketplace to extract fees from real estate agents in the closely related market for real estate referrals. To do this, Zillow has launched what it calls its "Premier" and "Preferred" agent programs. When a user on Zillow's search portal—that is, its website or its app—is interested in a listing, they are prompted to click "contact agent" or "request a tour." Zillow then connects that potential buyer to one of its Premier or Preferred agents. But Zillow does not give out those leads for free. According to Zillow, Premier Agents pay, on average, $223 per lead in major metro areas and $139 per lead elsewhere.[22] In the Premier program, Zillow sells leads at the zip code level, allowing an agent to pay for referrals in that specified area.



**Figure 3: Zillow's Explanation of the Premier Agent Program**

---

[21] *Managing Real-Time Touring and My Agent Tour Appointments*, FOLLOW UP BOSS (last visited May 4, 2026), https://help.followupboss.com/hc/en-us/articles/29070989469591-Managing-Real-Time-Touring-and-My-Agent-Tour-Appointments; *Customize & Download ZHL Pre-Approval Letters,* FOLLOW UP BOSS, https://help.followupboss.com/hc/en-us/articles/34273538945303-Customize-Download-ZHL-Pre-Approval-Letters (last visited May 4, 2025).

[22] *Become a Premier Agent Partner*, Zillow, https://www.zillow.com/premier-agent/ (last visited Jan. 26, 2026).

AMENDED CLASS ACTION COMPLAINT - 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

30.    Closely related to Zillow Premier is Zillow Preferred, also known as Zillow Flex, which is an invite-only program for agents and teams.[23] Instead of paying an upfront fee for leads, in the Preferred program, once a sale closes, agents pay Zillow a percentage of their commission as a referral fee. Zillow publishes a schedule of rates that are connected to the price of the sale and the metro location.[24] The rates run as high as 40% of the agent's commission on the sale.

31.    The Seattle metro area, for instance, is categorized by Zillow as "Group 4", meaning that an agent would owe 40% of their commission on a sale of $700,000 or greater. The Bremerton-Silverdale area is in Group 3.[25] Portland, Oregon is a Group 3 market.

**Pricing Chart**

| | Group 1 | Group 2 | Group 3 | Group 4 | Group 5 |
|---|---|---|---|---|---|
| 40% | $300,000.00+ | $400,000.00+ | $500,000.00+ | $700,000.00+ | $900,000.00+ |
| 35% | $225,000.00 - $299,999.99 | $300,000.00 - $399,999.99 | $375,000.00 - $499,999.99 | $525,000.00 - $699,999.99 | $675,000.00 - $899,999.99 |
| 30% | $150,000.00 - $224,999.99 | $200,000.00 - $299,999.99 | $250,000.00 - $374,999.99 | $350,000.00 - $524,999.99 | $450,000.00 - $674,999.99 |
| 25% | $75,000.00 - $149,999.99 | $100,000.00 - $199,999.99 | $125,000.00 - $249,999.99 | $175,000.00 - $349,999.99 | $225,000.00 - $449,999.99 |
| 15% | $0.00 - $74,999.99 | $0.00 - $99,999.99 | $0.00 - $124,999.99 | $0.00 - $174,999.99 | $0.00 - $224,999.99 |

**Figure 4: Zillow Preferred Pricing Chart**

32.    Routinely charging referral fees of 35-40% is substantially in excess of real estate industry norms, where "[b]y far, 25% is the most common rate."[26] Unlike Premier, agents in Preferred do not pay for leads by zip code. Zillow creates a coverage map for Preferred agents, showing how many connections it supplies to that agent or team per zip code.[27]

33.    Zillow is phasing out the Premier program, in favor of Preferred. On information and belief, the latter program is more valuable for Zillow because it is designed in a way that allows Zillow to apply its coercive pressure to agents. Preferred gives Zillow greater control to

---

[23] *Frequently Asked Questions*, ZILLOW, https://www.zillow.com/preferred/faq/ (last visited May 4, 2026).

[24] *Zillow Preferred Pricing*, ZILLOW, https://www.zillow.com/preferred/pricing/ (last visited May 4, 2026).

[25] *Id.*

[26] Ashley Harwood, *Real estate referral fees: The ultimate guide for 2026*, HOUSINGWIRE VETTED (Sept. 18, 2024), https://www.housingwire.com/articles/real-estate-referral-fees/.

[27] *Coverage Map for Zillow Preferred Team Leads*, ZILLOW, https://zillow.zendesk.com/hc/en-us/articles/38043890712723-Coverage-Map-for-Zillow-Preferred-Team-Leads (last visited May 4, 2026).

AMENDED CLASS ACTION COMPLAINT - 11

**KELLER ROHRBACK L.L.P.**

meter the number and quality of connections it supplies to agents based on metrics like ZHL pre-approvals. Agents, including Plaintiffs and Class Members, who have participated in the Premier program for years and have spent tens or hundreds of thousands of dollars in Premier have been or are being told that they must move over to Flex/Preferred. For now, Zillow continues to offer Premier in some capacity, but agents in that program are finding that their investment in Premier has become worthless, as Zillow moves its connections to the Flex/Preferred program.

34.    Another Zillow program available to real estate agents is Zillow Showcase, in which agents with properties listed for sale can pay to have their listings boosted on the platform. Zillow boasts that Showcase listings get greater views and sell for higher prices than non-Showcase listings.[28] Similar to the Preferred program, leads from Showcase are funneled directly into FUB.

35.    Zillow makes plain to agents why they should pay Zillow these supracompetitive rates for leads and referrals: because Zillow controls the market for online real estate search. According to Zillow, "81% [o]f all home buyers in the U.S. used Zillow as part of their homebuying journey" and "1 in 3 [o]f all homebuyers in the U.S. sought a Zillow Premier Agent partner in 2023."[29] On the flip side of that transaction, "80% of U.S. residential real estate transactions involve agents who use at least one Zillow product."[30]

36.    Zillow has also registered itself as a real estate brokerage. Zillow, Inc. has a real estate brokerage license in all 50 states and the District of Columbia, while Zillow Homes, Inc. has a real estate brokerage license in four states.[31]

37.    Zillow also offers lending products through ZHL. ZHL operates in every state except New York, and serves borrowers with a 620 credit score or higher.[32] Third-party reviews

---

[28] *Showcase helps your listings stand out*, ZILLOW, https://www.zillow.com/agents/showcase/ (last visited May 4, 2026).

[29] *Become a Premier Agent partner*, ZILLOW, https://www.zillow.com/premier-agent/ (last visited May 4, 2026).

[30] Zillow Group Inc., *Annual Report (Form 10-K), supra* note 1 at 4.

[31] *Real Estate Licenses*, ZILLOW, https://www.zillow.com/c/info/real-estate-licenses/ (last visited May 4, 2026).

[32] *Zillow Home Loans FAQs*, ZILLOW, https://www.zillow.com/homeloans/zillow-home-loans-faqs/ (last visited May 4, 2026).

AMENDED CLASS ACTION COMPLAINT - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of ZHL note several shortcomings, including higher than average origination fees,[33] lack of sample rates, and limited loan types.[34] A review by Yahoo! Finance scored ZHL 2 out of 5 stars on mortgage rates and 2 out of 5 stars on total loan costs, estimating that a ZHL loan costs $6,714.82 more than alternatives for the median borrower.[35]

38.     To manage the leads that Zillow sells to agents and to connect these various programs, it uses FUB. Previously, Zillow managed connections through a different CRM, the Zillow Premier App, which was available to Premier/Preferred agents free of charge. But in 2025 Zillow began requiring agents to use FUB, at significant cost.

39.     FUB is key to Zillow's coercive steering to ZHL because of the integration it provides between its marketplace, brokerage, and ZHL services. Zillow has unfettered access to agents' and brokerage teams' data in FUB, allowing Zillow to track a team's communications with leads, and to track how a team performs on Zillow's metrics in terms of steering clients to ZHL. FUB also allows Zillow's lenders direct access to buyer contact information.[36] Forcing Premier and Preferred agents to pay for and use FUB when they might—and often do—prefer to use a different CRM is an unlawful tie on its own. But FUB also serves as the mechanism by which Zillow is able to coerce agents to steer homebuyers to ZHL or else lose access to Zillow referrals.

---

[33] *Zillow Home Loans Review for 2026: Rates, Loan Options and Customer Feedback*, THE MORTGAGE REPORTS, https://themortgagereports.com/78844/zillow-home-loans-review-rates-loans-credit-score (last visited May 4, 2026).

[34] Molly Grace, *Zillow Home Loans Review 2025: No-Frills Online Lender*, BUSINESS INSIDER (Jan. 23, 2025), https://www.businessinsider.com/personal-finance/mortgages/zillow-home-loans-review.

[35] Hal Bundrick, *Zillow Home Loans Review 2026:* Yahoo! Finance (Jan 1, 2026), https://tinyurl.com/muh6xxs4.

[36] *Working with Lenders in Follow Up Boss,* FOLLOW UP BOSS, https://help.followupboss.com/hc/en-us/articles/360014656273-Working-with-Lenders-in-Follow-Up-Boss (last visited May 4, 2026).

AMENDED CLASS ACTION COMPLAINT - 13

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Agents can customize* and download their clients' Zillow Home Loan pre-approval letters directly within Follow Up Boss. This streamlines the offer submission process by providing agents with fast, self-serve access to pre-approval letters, eliminating the need to contact a loan officer for retrieval. By accessing and downloading your clients' pre-approval letters directly in Follow Up Boss, you can:

- **Submit offers on your schedule** - Customize* the purchase price and download your client's pre-approval letter at a moment's notice, so you can submit offers at the right time to win more deals.
- **Know your buyer's pre-approved status as soon as possible** - never miss one of the most critical moments in your client's home buying: their pre-approval. You'll receive automatic notifications with an easy way to take the next steps to make strong offers.

**Figure 5: FUB Help Center Description of ZHL Pre-Approval Letter Functionality**

40.     Zillow freely admits that it is trying to use its dominance in the real estate search marketplace to rapidly develop its home lending business, via its Premier and Preferred agent programs, in order to drive revenue growth for the less desirable and less dominant lending arm:

> Buyers transact through Zillow at an 80% higher rate after connecting with both Zillow Home Loans and a Zillow Premier Agent partner, vs. with a Zillow Premier Agent partner only. **By driving adoption of the two offerings together, we've seen purchase loan origination volume increase by 2.6x over the past two years, accelerating growth in our Mortgages revenue.**[37]

41.     To that end, Zillow expressly incorporates ZHL pre-approvals in its "performance metrics" for Zillow Preferred Agents:[38]

---

[37] Jeremy Wacksman, *Letter to Shareholders*, *supra* note 10 at 3 (footnote omitted, emphasis added).

[38] *Zillow Preferred, Program Standards*, ZILLOW, https://www.zillow.com/preferred/program-standards/ (last visited May 4, 2026).

AMENDED CLASS ACTION COMPLAINT - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## Team Lead Performance Standards

Zillow Preferred is a team effort. These metrics reflect how well your team is collectively converting connections into successful transactions and ensuring buyers are prepared with pre-approval information upfront to support their home shopping journey.

**Performance to Transaction Target:**
- **Definition:** Every month, your Zillow Preferred team receives a transaction target, which serves as your team's monthly sales goal. This metric represents your attainment of your transaction target over the last six (6) months.
- **Standard:** 100% or greater over the last six (6) months.

**Zillow Home Loans Pre-Approval Target:**
- **Definition:** Number of agent's customers who get pre-approved with Zillow Home Loans. This empowers consumers to navigate affordability during their home search by equipping them with Zillow Home Loans pre-approvals.
- **How this target is calculated:** Approximately 10% of your team's eligible Zillow Preferred delivered connections that reached or surpassed "met with" status in the last 90 days. The pre-approvals do not need to solely be with Zillow Preferred connections.
- **Standard:** 100% of target over the last three (3) month(s).

**Did you know?** Zillow connections who work with a Zillow Preferred agent partner transact 1.9x more often when they have also connected with Zillow Home Loans.

Figure 6: Zillow Preferred Agent Program Standards

42. Zillow's strategy has worked: Zillow has reported a 57% increase in loan origination year over year in Q3 2025, increasing revenues by 36%—even as Zillow estimates that Q3 mortgage origination was flat year over year for the rest of the industry.[39]

**B.    Plaintiff Stephanie M. Dupuis and the Dupuis Team**

43. Seeking to avoid missing out on business generated through Zillow's dominant real estate search platform, Ms. Dupuis and her team joined the Premier Agent program in September

[39] *Zillow Group Reports Third-Quarter 2025 Financial Results*, ZILLOW GROUP (Oct. 30, 2025), https://investors.zillowgroup.com/investors/news-and-events/news/news-details/2025/Zillow-Group-Reports-Third-Quarter-2025-Financial-Results/default.aspx

AMENDED CLASS ACTION COMPLAINT - 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2014, which she participated in through January 2022, and then switched to the Preferred (then known as Flex) program beginning in February 2022.

44.     Zillow has recognized the Dupuis Team for their outstanding work. Zillow ranked the Dupuis Team #4 nationally for using their "ALM" (appointment, location, motivation) framework for calls with connections. In April 2023, a Zillow representative congratulated the Dupuis Team for achieving a 100% ALM rate and exceeding transaction targets. As of December 2025, the Dupuis Team continues to exceed Zillow targets for answering connections and scheduling appointments and showings, earning them the "Best of Zillow" status.

45.     But the Dupuis Team noticed a shift in the Zillow program around May 2025, when Zillow announced an expansion of its "enhanced markets" program, an "integrated home buying experience" for select metro areas, including Seattle and Bremerton-Silverdale, in which the Zillow Preferred and Zillow Home Loan programs are strongly tied together.[40] Not long after that, Ms. Dupuis experienced increased pressure to steer clients to ZHL. Whereas her performance in the program had previously been evaluated on statistics measuring conversations with clients, the evaluation criteria changed to measurements of ZHL pre-approvals.

46.     Also around May 2025, Zillow ramped up its pressure on agents to use and purchase the FUB system. Ms. Dupuis was told that she had to sign up for Follow Up Boss, or she would be terminated from the Preferred program. Previously, Ms. Dupuis' Zillow Flex leads were tracked in the Premier App, a program that Zillow provided for free. After Zillow acquired FUB and forced Ms. Dupuis and her team to move to FUB, she incurred costs of approximately $500 per month to use FUB, as well as additional per-user licensing costs for agents on her team to access FUB, and significant costs in training staff to use the program. Ms. Dupuis would prefer to use alternative CRMs that are more cost effective, more user friendly, or both. In fact, she uses a different and preferable CRM to track non-Zillow leads, which prevents Zillow from invasively obtaining data on those clients and transactions.

---

[40]*Zillow expands integrated home buying experience to additional markets*, ZILLOW GROUP (May 22, 2025), https://www.zillowgroup.com/news/zillow-expands-integrated-home-buying-experience-to-additional-markets/.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**Figure 7: Email from Zillow advisor stating FUB is mandatory**

47.     Additionally, as participants in the Preferred program, Ms. Dupuis and her team were required to complete training modules on Zillow's policies and practices, which was a significant expense of staff time. She became concerned that Zillow's directives to Preferred Agents to push clients to ZHL would compromise her duties to clients by divulging confidential information. Screenshots from those training modules illustrate how Zillow directs agents to share client information with lenders, and vice versa:

AMENDED CLASS ACTION COMPLAINT - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**Figures 8 & 9: Zillow Training Modules Directing Agents to Provide Loan Officers with Detailed Information About their Clients**

AMENDED CLASS ACTION COMPLAINT - 18

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

48. Based on Ms. Dupuis's concerns with Zillow's practices and respect for her duties to clients, she and her team refused to steer clients to ZHL. But Zillow used the FUB system to track her clients' ZHL loan pre-approvals, and Ms. Dupuis could see in FUB that Zillow was penalizing her team for low ZHL pre-approval rates. Her team members were rated only "fair" or "low" in FUB, with comments indicating that the ratings were due to only "fair" or "low" rates of ZHL pre-approvals:

**Figure 10: FUB Dashboard Showing Fair or Low Agent Ratings Due to ZHL Pre-Approvals**

Connection targets

| Forecasted cxns | Cxns set | Cxns remaining |
|---|---|---|
| 94 | 89 | 5 |

Distribution of connections

| High performers | Fair performers | Low performers |
|---|---|---|
| 0% | 55.1% | 44.9% |

Alignment with recommended connection targets

75% aligned

❶ You have 4 agents exceeding their max target based on their Low performance rank. Reduce their connections to submit.

| Agent | Perf rank ↑ | Predicted CVR | ZHL Pre-approvals | Cxns L30D | Rec cxn target | Agent requested target | Insights | Cxn target |
|---|---|---|---|---|---|---|---|---|
| | Fair | 4.99% | 0 | 5 | 11 | 4 | High pCVR and Fair ZHL Pre-approvals performance AND agent requested 4 cxns | 4 |
| | Fair | 4.48% | 0 | 19 | 17 | 14 | Fair pCVR and Fair ZHL Pre-approvals performance | 15 |
| | Fair | 4.2% | 0 | 5 | 15 | 20 | Fair pCVR and Fair ZHL Pre-approvals performance AND unresponsive to desired cxns SMS | 10 |
| | Fair | 4% | 0 | 0 | 13 | 8 | Less than 25 lifetime cxns, ramp slowly | 5 |
| | Low | 4.51% | 0 | 23 | 5 | 20 | High pCVR and Low ZHL Pre-approvals performance | 10 Max of 8 due to Low performance rank |
| | Low | 3.53% | 0 | 19 | 5 | 20 | Low-Fair pCVR and Low ZHL Pre-approvals performance | 10 Max of 8 due to Low performance rank |
| | Low | 3.06% | 0 | 19 | 5 | 20 | Low-Fair pCVR and Low ZHL Pre-approvals performance | 10 Max of 8 due to Low performance rank |
| | Low | 2.66% | 0 | 19 | 5 | 5 | Low pCVR and Low ZHL Pre-approvals performance | 10 Max of 8 due to Low performance rank |

Reset to recommended targets · Save and finish later · Submit connection targets

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

49.    Zillow also made explicit to Ms. Dupuis' agents that it was capping the number of connections they would get per month on the basis of their low ZHL pre-approvals:



**Figure 11: Agent Connections Limited Due to ZHL Pre-Approvals**

50.    Zillow and its representatives also encouraged Ms. Dupuis and her team to give false or misleading information to prospective clients. A member of the Dupuis Team expressed to a Zillow representative that callers to their agency would hang up after being told that her agents were not the listing agents for properties the callers viewed on Zillow. On more than one occasion, the representative encouraged Dupuis Team members to mislead callers as to their role in the

AMENDED CLASS ACTION COMPLAINT - 20

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

transaction, so they would stay on the phone. Ms. Dupuis and her team did not heed this advice to deceive clients.

51.    In a call on August 27, 2025, the Zillow representative called Ms. Dupuis and gave her a stern warning about her performance. He said that Zillow "only cares about ZHL. Not Flex," according to her contemporaneous notes of the call, and that failing to refer clients to ZHL would have negative consequences for her team. He gave Ms. Dupuis statistics that agents are "1.8 times more likely to convert a lead [with] ZHL" and conveyed the expectation that the Dupuis Team would convert 1 in 5 connections to ZHL.

52.    Further, after a "coaching" call, another Zillow representative sent Ms. Dupuis the below email confirming that her team's ratings in the Preferred Agent program and number of connections were in fact tied to ZHL pre-approvals, and that they were expected to improve their ZHL metrics:

KELLER ROHRBACK L.L.P.

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



**12/4 Recap**

From ▮▮▮▮▮▮▮▮▮▮ @zillowgroup.com>
Date  Thu 12/4/2025 3:06 PM
To      Dupuis Team <stephanie@dupuisteam.com>

Hi Stephanie & Team,

Thank you for taking the time to meet today to discuss your team's Zillow Flex operations and performance. It was great getting to know you all a little bit and I'm excited to partner with you going forward.

Here are the key points we discussed:

- We clarified how Zillow's performance metrics, particularly eligible met-with connections and ZHL pre-approvals, directly impact individual and team connection targets.
- We addressed the team's challenges with agent recruitment and managing fluctuating connection volume, which has sometimes overwhelmed newer agents.
- We emphasized the critical role of ZHL pre-approvals in improving the team's overall performance ratings and subsequently increasing connection volume.

Regarding our next steps, here is what we agreed upon:

- Our next call is Friday December 12th at 10AM PST
- You will focus on increasing ZHL pre-approvals within your team to improve performance ratings and connection volume.
- Please send the name of the connection that went through ZHL on their own so we can ensure you get credit.

Thank you again for your time today; please reach out if you have any questions.

**Figure 12: Email from Zillow Representative Confirming ZHL Pre-Approvals Required for Connections**

53.     Since Ms. Dupuis has expressed these concerns, the representative canceled future consultation sessions that she had scheduled with Ms. Dupuis.

54.     Additionally, Ms. Dupuis has participated in the Zillow Showcase program in the past. But as of December 24, 2025, Zillow terminated her Showcase account.

55.     Ms. Dupuis has also observed that the quality of her Zillow connections has declined. While Ms. Dupuis prides herself on the level of client service she and her team provide to all their clients, not all connections are of the same potential financial value to agents, who derive their earnings from commissions. For instance, a lead for a seller listing a $50,000 property, or a buyer seeking to purchase such a listing, is ultimately less valuable than a lead involving a $500,000 or higher luxury home. A lead falling outside of an agent or team's service area is also

AMENDED CLASS ACTION COMPLAINT - 22

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

less valuable than one within the service area, both because it requires agents to travel long distances—consuming staff time—and because an agent is less likely to be able to close a sale far outside the service area with which they are most familiar. Zillow applies certain tags to leads within the FUB system that are indicators of quality, such as a tag indicating whether or not the client is financeable. In the time since Zillow ramped up its efforts to coerce Flex agents to steer clients to FUB and Ms. Dupuis refused to go along, she and her team have seen a noticeable decline in the quality of Zillow connections, including a marked increase in leads outside of their service area.

56.    Zillow's punitive measures had a direct and measurable adverse impact on Ms. Dupuis' business. Zillow began reducing her connections or connection quality around October 2025 as it escalated its pressure on the Dupuis Team to steer clients to ZHL. Each withheld or diminished connection represents a lost opportunity to close a sale and earn income. Ms. Dupuis' business has suffered as a result, in the form of reduced earnings. Ms. Dupuis' team has also experienced increased staff attrittition, with agents frustrated at the increased burdens and diminished earning prospects of the Zillow program choosing to leave the team.

57.    When Ms. Dupuis and her team have closed sales through the Preferred Agent program, they have paid fees equal to 35-40% of their commission to Zillow, which exceeds, in Ms. Dupuis' experience, industry norms.

**C.    Plaintiff Brian Graham**

58.    Brian Graham is a real estate agent based in Annapolis, Maryland. In 2025, he was associated with a real estate brokerage that was participating in the Zillow Flex program.

59.    The brokerage's Flex team had weekly meetings to discuss the program. Occasionally, they would meet with Zillow representatives who traveled from Seattle to meet with them in Maryland. Some meetings were mandatory for agents.

60.    After the second meeting Brian attended, he began to receive pressure to steer clients to ZHL. Brian expressed to a Zillow representative his view that such steering constituted

AMENDED CLASS ACTION COMPLAINT - 23

an illegal kickback under RESPA. The Zillow representative stated that all Zillow wanted was for agents to send the client to ZHL, but Brian understood that in reality he would be punished for any failure to do so.

61.    Formerly, Zillow evaluated agents by metrics such as "engaged transfers," but Zillow informed Brian's brokerage that as of June 1, 2025 it would begin evaluating them on the basis of meeting a ZHL pre-approval target—that is, how many of the brokerage's clients ultimately were pre-approved for loans through ZHL.

62.    As Zillow applied pressure to the brokerage to steer clients to ZHL, management of the brokerage passed that pressure on to its agents, rather than risk losing access to Zillow's client referrals. In a series of group chat messages, leadership explained to agents that "we really need to show another push of effort towards ZHL or it will cost us leads - it already is"—hurting the firm and each of the agents.

63.    When Brian's brokerage failed to meet its ZHL pre-approval target, Zillow did in fact cut the referral connections it supplied, costing Brian and his colleagues the opportunity to earn commission on sales. Management confirmed that because they had a goal of seven pre-approvals but got none, "our allocations for this month are lower due to us not meeting our goal" and "[i]t will also restrict the number of individual leads as well."

64.    Zillow escalated its pressure, threatening to kick Brian's brokerage out of Flex because of its failure to meet ZHL pre-approval targets. In turn, the brokerage's management sent increasingly desperate messages to agents, warning them of the financial loss all would experience if Zillow terminated them, which, if it occurred, would be "entirely because of our ZHL transfer rates."

65.    In response to this pressure from management, the agents at Brian's brokerage discussed why it was not possible for them to meet ZHL pre-approval targets, and the problems caused by Zillow's escalating demands. One of Brian's colleagues stated that her clients had no interest in ZHL, as these clients had no intention to deal with ZHL when they browsed a property

AMENDED CLASS ACTION COMPLAINT - 24

on the Zillow real estate marketplace. Another stated that the leads Zillow was still sending to their brokerage were of poor quality compared to those sent to other brokerages (presumably, those performing better on Zillow's ZHL metrics). Another explained that pressure to steer clients to ZHL presented an ethical dilemma because she knew their service to be inferior to other lenders.

66.    In response, management told agents to stop sending messages about their concerns with Zillow. Zillow's coercive conduct fosters peer pressure between agents within a brokerage, because the refusal of some agents to acquiesce to Zillow's steering coercion deprives all the others of the opportunity to earn income.

67.    Brian ultimately left the brokerage in order to avoid coercive pressure from Zillow to steer clients to ZHL. This resulted in 6-8 weeks of delays in closing transactions that were in progress when he changed brokerages, startup costs such as new marketing materials, and time and labor spent learning new systems. Brian has had to inform former clients about the change in brokerages, in an effort to preserve and build on the client base he previously had.

**D.    Plaintiff Anna Alvarez**

68.    Anna Alvarez is a real estate agent based in Oregon, who is licensed in Oregon and Washington.

69.    She first joined Zillow's Preferred/Flex program in February 2021 through the brokerage she was with at the time. In June 2023, she moved to a different brokerage, which also participated in Zillow Flex. She continued as a Zillow Flex agent until December 2025, when she left for a third brokerage that does not participate in Zillow programs. While participating in the Zillow Flex program, Ms. Alvarez paid referral fees to Zillow.

70.    Ms. Alvarez first heard about ZHL in 2023, and began receiving pressure to steer clients to ZHL sometime in 2024. Her managing broker at the time conveyed that Zillow treated ZHL pre-approvals as the most important metric for maintaining leads, saying she was "100% sure" that "ZHL is the most important stat currently for how you are routing leads." Therefore,

AMENDED CLASS ACTION COMPLAINT - 25

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

agents needed to "ensure that you are doing everything you can to maintain high transfer and closing rate so you can get leads."

71.    Expressly as a result of Zillow's treatment of ZHL pre-approvals as the most important metric for participation in the Flex program, the principal broker at Ms. Alvarez's second brokerage conveyed Zillow's pressure on agents to steer their clients to ZHL. Consistent with Zillow's priorities, Ms. Alvarez's managing broker would shut off new leads to agents who were not meeting ZHL targets, in order to protect the lead flow to the team as a whole, saying that "Our top focus is ZHL closings and conversion. . . .Many people rely on this lead flow, and it's crucial that we all do our part to perform at the level expected."

72.    In one meeting on or about May 8, 2024, Ms. Alvarez's colleague, another agent, told a Zillow representative that she had informed clients of lending options both with Zillow and other lenders, and was reprimanded for saying so, lest it alienate Zillow and result in a reduction in access to Zillow's connections. The principal broker instituted meetings about the program to "keep[] everyone on the same page," with attendance mandatory for some agents, depending on their ZHL statistics. Agents who failed to attend would have their leads shut off.

73.    Ms. Alvarez also felt pressure from her peers as a result of Zillow's coercion. While she did not want to go along with Zillow's coercion, a colleague explained to her that if any agent in the brokerage failed to do their part to meet Zillow's ZHL pre-approval targets, "that would just hurt the rest of us as a whole," because all the other agents would suffer negative consequences in the form of lost connections.

74.    To encourage agents to keep up with Zillow's metrics, Ms. Alvarez's managing broker ran promotions to reward agents that secured ZHL pre-approvals.

75.    Ms. Alvarez's managing broker also discouraged agents on her team from mentioning other lenders, in order to preserve their ZHL metrics with Zillow, telling them "Please only be sending zillow leads to ZHL UNLESS they specifically ask for someone else DONT. . . . right now this is 100% required."

AMENDED CLASS ACTION COMPLAINT - 26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

76.     Ms. Alvarez had been using FUB since before Zillow purchased it, but noticed changes in FUB after Zillow's acquisition. Previously, calls from Zillow connections would come to her through the Premier Agent app, but Zillow moved all client calls to FUB, and her team was told by her managing broker that they were not permitted to contact clients through any phone number other than the one linked to FUB. Ms. Alvarez became concerned that this posed confidentiality concerns, as Zillow could use FUB to track all of her conversations with the client and all of the client's data.

77.     The all-encompassing nature of FUB also allowed Zillow to insert itself—and attempt to charge referral fees—in transactions for which it had no actual involvement. For instance, when a prospective buyer walked in off the street to attend an open house that Ms. Alvarez was hosting, Ms. Alvarez was told that once she input the buyer's information into FUB, if that person had *ever* contacted her brokerage through Zillow's various products, Zillow would treat the prospective buyer as a Zillow connection and apply its referral rates to any sale. To rebut that inference, Ms. Alvarez would have to produce documentary evidence that she had discussed homebuying with that buyer within the previous 30 days.

78.     Ms. Alvarez's managing broker also tried to assuage concerns on her team about "agents panicking because they think Zillow is getting access to 'their database.'" She acknowledged that it "has been scary for a couple years that we have no control over our people calling in and having to pay a flex fee." Nonetheless, she argued that Zillow's changes to its privacy policy on FUB allowing greater data access were actually good for agents, because those changes make FUB into a "behavior tracking tool" that allows agents to monitor what prospective buyers in their "sphere" do on their personal Zillow accounts, and then contact them before they have the chance to speak to other agents.

79.     Ultimately, Ms. Alvarez left that brokerage for one that does not have a relationship with Zillow, in order to avoid Zillow's coercive conduct. Because she lost access to Zillow client

AMENDED CLASS ACTION COMPLAINT - 27

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

referrals, her earnings were significantly impacted, and it took approximately four to five months for Ms. Alvarez's income to return to its previous levels.

## V.    CLASS ALLEGATIONS

80.    Plaintiffs re-allege and incorporate by reference all of the above allegations.

81.    **Class Definition:** Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following class: All persons or entities domiciled in the United States who, between January 16, 2022, and the present, are or were enrolled in Zillow Group's Preferred or Flex Agent programs.

82.    In addition or, as indicated in the claims for relief alleged below, in the alternative, state classes are defined as follows:

A.    **Maryland class:** All persons or entities domiciled in Maryland who, between May 4, 2022, and the present, are or were enrolled in Zillow Group's Preferred or Flex Agent programs.

B.    **Oregon class:** All persons or entities domiciled in Oregon who, between May 4, 2022, and the present, are or were enrolled in Zillow Group's Preferred or Flex Agent programs.

C.    **Washington class:** All persons or entities domiciled in Washington who, between January 16, 2022, and the present, are or were enrolled in Zillow Group's Preferred or Flex Agent programs.

83.    Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this action and Members of their staff, as well as Members of their families; (b) Defendants and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally

AMENDED CLASS ACTION COMPLAINT - 28

adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

84.    Plaintiffs reserve the right to modify or refine any of the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

85.    **Ascertainability**. The proposed Class is readily ascertainable because they are defined using objective criteria so as to allow Class Members to determine if they are part of a Class. Further, the Class can be identified through records maintained by Defendant.

86.    **Numerosity (Rule 23(a)(1)).** The Class is so numerous that joinder of individual Members herein is impracticable. The exact number of Class Members, as herein identified and described, is not known, but on information and belief, there are many thousands of agents enrolled in Zillow's Premier Agent, Preferred, or Flex programs.

87.    **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members, including the following:

A.    Whether Zillow's practices in tying its Preferred Agent program and FUB CRM tool violates federal and/or state antitrust law;

B.    Whether Zillow's coercion of agents to steer clients to ZHL constitutes an unreasonable agreement in restraint of trade, in violation of federal and/or state antitrust law;

C.    Whether Zillow maintains a monopoly in the real estate marketplace and is unlawfully abusing its monopoly to coerce agents to steer clients to ZHL;

D.    Whether Zillow's coercion of agents to steer clients to ZHL is an unfair business practice under the Washington Consumer Protection Act and/or other states' consumer protection laws;

AMENDED CLASS ACTION COMPLAINT - 29

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

E.      Whether Plaintiffs and the Class are entitled to monetary damages, and if so what are the measure of those damages;

F.      Whether Plaintiffs and the Class are entitled to non-restitutionary disgorgement based on Zillow's unjust enrichment; and

G.      Whether Plaintiffs and the Class are entitled to injunctive or other equitable relief.

88.     **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class. Plaintiffs and Class Members (as applicable) suffered anticompetitive harms and other injuries as a result of Zillow's wrongful conduct that is uniform across the Class.

89.     **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class, and Zillow has no defenses unique to individual Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class Members, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other Class Members.

90.     **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to Class Members, and would be dispositive of the interests of the other Class Members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and

AMENDED CLASS ACTION COMPLAINT - 30

**KELLER ROHRBACK L.L.P.**

comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

91.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

92.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Class as a whole.

93.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VI.    CLAIMS FOR RELIEF

**A.    Claims Asserted on Behalf of the Nationwide Class**

### COUNT ONE — SHERMAN ACT SECTION 1, 15 U.S.C. § 1

### (Tying)

### (Against all Defendants, on behalf of the Nationwide class)

94.    Plaintiffs, on behalf of the Nationwide class, re-allege and incorporate by reference herein all of the allegations contained above.

95.    Zillow has market power in the market for real estate search. As Zillow represents, it controls 61% of daily traffic for online real estate search portals, beating its next closest competitor by as much as two to four times. The market for real estate referrals is a separate market, but Zillow's dominant real estate portal position gives it market power in the sale of referrals to agents, and as a result Zillow is among the largest competitors in the real estate referrals market.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Zillow sells client referrals from visitors to its real estate search portal to real estate agents and brokerages.

96.    Zillow also sells a CRM system, FUB, which it requires agents to purchase in order to use Zillow's client referral products. The market for CRM systems is a separate product market from real estate search portals or from real estate client referrals; FUB historically does not have significant market share in the CRM market, but in part as a result of tying FUB to its much more desirable referral products, where Zillow's market power derives from its dominance in real estate search, Zillow can now boast that FUB "powers daily activity for more than 80% of the highest-volume teams in the country."

97.    The relevant geographic area for the real estate search market and the real estate referrals market is the United States, because Zillow operates its real estate search portal, and sells referrals derived from that portal, throughout the United States. Consumers can browse listings on the Zillow real estate marketplace from anywhere in the country, for properties listed anywhere in the country. While real estate markets are generally regional from an individual homebuyer's or agent's perspective, Zillow's coercive conduct is substantially identical nationwide. Real estate agents throughout the nation who participate in Zillow's Flex or Preferred programs can purchase referrals of potential homebuyers who view properties on Zillow's portal. The relevant geographic area for CRM systems is also the United States, as Zillow sells its FUB system to agents and brokerages nationwide, and requires all participants in Flex/Preferred throughout the nation to use FUB.

98.    Zillow has violated Section 1 by tying the sale of the FUB CRM tool to the sale of client referrals, which are generated from visitors to its market-dominant real estate marketplace. Agents wish to purchase client referrals from Zillow because of the dominance of its real estate search portal; that is, Zillow's portal is so dominant that the ability to purchase quality referrals from Zillow substantially affects an agent's earnings. However, Zillow does not permit agents to purchase those referrals without also purchasing its FUB CRM. That is despite the fact that Zillow

AMENDED CLASS ACTION COMPLAINT - 32

KELLER ROHRBACK L.L.P.

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

formerly supplied referrals through a different, free application. Many agents would prefer to use alternative CRM products for reasons including cost, user experience, and data privacy, but Zillow's tying arrangement prevents them from doing so.

99.    This tying arrangement is a *per se* violation of Section 1 in its own right, but it is particularly insidious because it is a key mechanism by which Zillow engages in further coercive conduct. Zillow uses FUB to track every aspect of agents' interactions with referred clients, from the initial referral, to phone, email and text conversations, to pre-approvals for ZHL loans, and thereby to coerce agents to steer clients to ZHL and track the extent to which agents do so. Ultimately, the agent cannot purchase client referrals in the desired quantity or quality unless they a) also purchase FUB, b) steer their clients to ZHL, and c) obtain a sufficient number of ZHL loan pre-approvals from their clients.

100.    Plaintiffs were injured by Zillow's tying arrangement. They were forced to spend substantial sums on FUB, and if they refused to do so, they would be terminated from Zillow's Flex/Preferred program and would suffer significant financial loss from the loss of client referrals.

101.    Zillow's conduct has a substantial effect on interstate commerce in these markets. Zillow's conduct lessens competition in the marketplace for CRM systems, by preventing agents from using competing CRM products.

102.    Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by 15 U.S.C. §§ 15, 26.

### COUNT TWO — SHERMAN ACT SECTION 1, 15 U.S.C. § 1
### (Unreasonable agreement in restraint of trade)
### (Against all Defendants, on behalf of the Nationwide Class)

103.    Plaintiffs, on behalf of the Nationwide class, re-allege and incorporate by reference herein all of the allegations contained above.

104.    Zillow has market power in the market for real estate search, and has used this power to condition the sale of leads from that marketplace to real estate agents on steering clients

AMENDED CLASS ACTION COMPLAINT - 33

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to lending services through ZHL. Zillow applies coercive pressure to those agents, and refuses to deal with, punishes, or terminates those agents or brokerages if they fail to do so to the degree Zillow deems fit, despite the fact that this steering often involves misleading clients. This coerced agreement is a contract, combination, or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

105.    Zillow acts in combination with other persons and entities in creating and enforcing this unreasonable agreement. It applies its coercive pressure on agents through brokerages and their leadership, who amplify and enforce the coercive pressure on agents, by threatening to terminate the entire brokerage or team from Zillow Preferred if it fails to meet ZHL pre-approval metrics. This means that individual agents cannot resist Zillow's coercion without risking discipline from their superiors, or harm to their business and that of their peers, whose business is also dependent on the entire team participating in steering. Likewise, an agent who *does* acquiesce to Zillow's coercion may nonetheless be terminated from Zillow's program if their peers fail to do so to the same degree.

106.    Zillow has abruptly changed its business practices and refuses to deal even with agents and brokerages with whom it has longstanding, mutually beneficial relationships. Zillow previously dealt with Plaintiffs and Class Members for years, collecting tens or hundreds of thousands of dollars from them to purchase referrals in the Premier program. Now, Zillow has forced agents and brokerages to shift from Premier to Preferred/Flex and made ZHL steering and pre-approvals a key metric of success in the later program. This means that Zillow will not deal with agents or brokerages even if they excel in metrics related to closing sales and customer satisfaction, generating significant profits for Zillow. Zillow does so to reinforce its illegal arrangement.

107.    This unreasonable agreement to steer clients to ZHL pressures agents to push a specific lender on clients that may not be in their best interest, distorting both the real estate marketplace and home lending markets.

AMENDED CLASS ACTION COMPLAINT - 34

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

108.    This unreasonable agreement causes significant anticompetitive harms. Agents are effectively forced to do business with Zillow because of its vast market power, paying supracompetitive rates for Zillow leads and referrals. Agents are likewise forced to steer business to ZHL regardless of whether it is in their own or clients' best interests to purchase or utilize ZHL products or services. Zillow's conduct thereby lessens competition in the real estate marketplace and the home lending markets.

109.    Plaintiffs were injured by these unreasonable agreements. They suffered economic loss and retaliation, in the form of reduced quantity or quality of referrals and consequently reduced sales or lost opportunity for sales, by refusing to steer clients toward ZHL.

110.    Zillow's conduct has a substantial effect on interstate commerce in these markets.

111.    Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by 15 U.S.C. §§ 15, 26.

## COUNT THREE — SHERMAN ACT SECTION 2, 15 U.S.C. § 2

### (Abusing monopoly power)

### (Against all Defendants, on behalf of the Nationwide Class)

112.    Plaintiffs, on behalf of the Nationwide class, re-allege and incorporate by reference herein all of the allegations contained above.

113.    Zillow possesses monopoly power in the online real estate search market. As Zillow itself states, its platforms have two to four times the number of daily active users as its next competitor, accounting for 61% of all daily active users in the market. By Zillow's estimate, 81% of all U.S. homebuyers interact with Zillow in some manner. Zillow has become so ubiquitous that searches of "Zillow" outpace searches for "real estate" itself on major search engines.

114.    Zillow abuses its monopoly power in the real estate marketplace by coercing agents and brokerages to steer clients to ZHL as a condition to access valuable referrals.

115.    Zillow also abuses its monopoly power through an unlawful tying arrangement, which further reinforces its coercive steering scheme. Zillow ties the sale of client referrals,

AMENDED CLASS ACTION COMPLAINT - 35

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

generated from visitors to its dominant real estate search portal, to the sale of the FUB CRM system to agents and brokerages. In turn, Zillow uses FUB to track pre-approvals for ZHL services and coerce agents to steer clients to ZHL. Ultimately, the agent cannot purchase client referrals, generated from visitors to the search portal, in the desired quantity or quality unless they a) also purchase FUB, b) steer their clients to ZHL, and c) obtain a sufficient number of ZHL pre-approvals from their clients.

116. As such, Zillow has willfully abused and profited from its monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

117. Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by 15 U.S.C. §§ 15, 26.

## COUNT FOUR — WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE § 19.86.010 *ET SEQ.*

### (State antitrust law)

### (Against Washington-domiciled Defendants, on behalf of the Nationwide Class, or in the alternative on behalf of the Washington Class)

118. Plaintiffs, on behalf of the Nationwide Class or in the alternative on behalf of the Washington Class, re-allege and incorporate by reference herein all of the allegations contained above.

119. The Washington Consumer Protection Act ("WCPA") protects consumers from unfair and anticompetitive business practices. Among its prohibitions, the WCPA states that "[i]t shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." Wash. Rev. Code § 19.86.040.

120. The WCPA provides that "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful." Wash.

AMENDED CLASS ACTION COMPLAINT - 36

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Rev. Code Ann. § 19.86.030. Zillow's tying arrangement and coercion of agents to steer clients to ZHL is an unreasonable agreement in restraint of trade, in violation of this provision.

121. The WCPA also makes it unlawful "for any person to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, or services, . . . on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodity or services of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." Wash. Rev. Code Ann. § 19.86.050.

122. Zillow violates this provision in at least two ways: first, by conditioning sale of client referrals from its dominant real estate marketplace to agents on their agreement to purchase FUB, reducing competition in the CRM market, and second, by coercing agents to steer clients to ZHL, lessening competition in the home lending market.

123. Zillow's conduct is injurious to the public interest because it has injured Plaintiffs and has the capacity to injure other persons, such as other Class Members, as well as homebuyers. Wash. Rev. Code § 19.86.093. The acts at issue, Zillow's tying arrangement and aggressive coercion of agents to steer clients to ZHL, were committed in the course of Zillow's business, and constitute a pattern or generalized course of conduct. Zillow has repeated the same course of conduct with each of the Plaintiffs, and will continue to do so with Plaintiffs and Class Members, affecting many agents and, ultimately, homebuying consumers.

124. Plaintiffs suffered actual damages as a result of Zillow's illegal coercion and agreement, such as lost business when they were penalized for failing to make ZHL referrals.

125. On information and belief, the unfair and anticompetitive trade practices described herein were planned and carried out from Zillow's headquarters in Seattle.

AMENDED CLASS ACTION COMPLAINT - 37

126.    Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by Wash. Rev. Code § 19.86.090.

## COUNT FIVE — WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE § 19.86.010 *ET SEQ.*

### (Unfair or deceptive practices)

### (Against Washington-domiciled Defendants, on behalf of the Nationwide Class, or in the alternative on behalf of the Washington class)

127.    Plaintiffs, on behalf of the Nationwide class or in the alternative on behalf of the Washington class, re-allege and incorporate by reference herein all of the allegations contained above.

128.    The WCPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

129.    Zillow's coercion of agents and brokerages to steer their clients to ZHL as a condition to access valuable client referrals, including by use of deception, is an unfair method of competition or unfair practice in the conduct of trade or commerce.

130.    Zillow also acted deceptively by making misrepresentations or material omissions in offering the Flex/Preferred program to agents and brokerages. Zillow failed to disclose to agents and brokerages when they joined the program that steering clients to ZHL would be a requirement to obtain referrals. Zillow also failed to disclose that agents and brokerages would be required to purchase the FUB product, at significant expense.

131.    Washington law also specifies the duties that a real estate broker owes to a client, which includes duties to "exercise reasonable skill and care," to "deal honestly and in good faith," to "disclose all existing material facts known by the broker and not apparent or readily ascertainable to a party," and to disclose terms of compensation in writing. Wash. Rev. Code

AMENDED CLASS ACTION COMPLAINT - 38

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

§ 18.86.030. Moreover, buyers,' sellers,' and dual agents each owe duties of confidentiality to their clients, and are required to disclose any conflicts of interest. Wash. Rev. Code §§ 18.86.040-060.

132.    Zillow, by pressuring real estate agents to refer clients to ZHL regardless of whether they believe that lending with ZHL is in their clients' best interest, compromise agents' abilities to adhere to their statutory duties. In so doing, Zillow engages in unfair methods of competition.

133.    Zillow also engages in unfair methods of competition by pressuring real estate agents to divulge detailed and identifying client contact information to ZHL lenders, and by advising agents to give false or misleading information to clients or prospective clients.

134.    Zillow also engages in unfair business practices by violating RESPA. The referral fees it charges, contingent upon steering clients to ZHL, are prohibited by 12 U.S.C. § 2607(a) and its implementing regulations (12 C.F.R. § 1024.14), and do not fall within the safe harbors enumerated in § 2607(c).

135.    Plaintiffs suffered actual damages as a result of Zillow's unfair methods of competition, such as lost business and terminated participation in valuable Zillow programs when they were penalized or retaliated against for failing to make ZHL referrals or refusing to adhere to Zillow's unlawful policies and practices.

136.    Zillow's policy of terminating participation in the Preferred Agent program and/or reducing referrals to those agents—reinforced by repeated, explicit threats from Zillow representatives—is the cause of Plaintiffs' damages.

137.    Zillow's conduct is injurious to the public interest because it has injured Plaintiffs and Class Members and has the capacity to injure other persons, such as home buyers. Wash. Rev. Code § 19.86.093. The acts at issue, Zillow's aggressive coercion of agents to steer clients to ZHL, were committed in the course of Zillow's business, and constitute a pattern or generalized course of conduct. Zillow has repeated the same course of conduct with each of the Plaintiffs, and will continue to do so with Plaintiffs and Class Members, affecting many consumers.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

138. On information and belief, the unfair and deceptive trade practices described herein were planned and carried out from Zillow's headquarters in Seattle.

139. Plaintiffs seek actual damages, treble damages, costs, attorneys fees, and injunctive relief as permitted by Wash. Rev. Code § 19.86.090.

## COUNT SIX — UNJUST ENRICHMENT

**(Against Washington-domiciled Defendants, on behalf of the Nationwide Class, or in the alternative on behalf of the Washington class)**

140. Plaintiffs, on behalf of the Nationwide class or in the alternative on behalf of the Washington subclass, re-allege and incorporate by reference herein all of the allegations contained above.

141. Plaintiffs assert a claim for unjust enrichment under the laws of Washington.

142. By virtue of the unfair and unlawful conduct alleged herein, Zillow has realized millions of dollars in revenue from (1) unlawfully coercing real estate agents to steer their clients to ZHL as a condition to access valuable referrals from Zillow's real estate marketplace; and (2) by abusing its monopoly power to extract supracompetitive referral rates and fees from Preferred Agents who use Zillow's referral services.

143. Zillow's ill-gotten gains were monetary benefits conferred upon Zillow by Plaintiffs and Class Members. It would be inequitable and unjust to permit Zillow to retain the economic benefits it obtained through its illegal monopolization and other unlawful practices. Zillow will be unjustly enriched it if were permitted to retain these economic benefits.

144. Plaintiffs and Class members are therefore entitled to recover the amounts realized by Zillow at their expense.

145. Zillow knew and appreciated that it was receiving monetary benefits from Plaintiffs and Class Members through its unlawful steering coercion and referral fee practices.

AMENDED CLASS ACTION COMPLAINT - 40

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

146.   Zillow deliberately engineered its marketplace and lending programs to maximize its revenues from the illegal arrangement. Zillow also deliberately charges supracompetitive referral fees to Preferred agents.

147.   Plaintiffs and Class Members have no adequate remedy at law to divest Zillow of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

148.   To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, Plaintiffs and Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy, and/or the imposition of a constructive trust to recover the amount of Zillow's ill-gotten gains.

**B.     Claims Asserted on Behalf of State Classes**

**1.     Maryland**

**COUNT SEVEN — MARYLAND ANTITRUST ACT**

**Md. Comm. law § 11–201 *et seq.***

**(Against all Defendants on behalf of the Maryland class)**

149.   Plaintiffs, on behalf of the Maryland class, reincorporate and re-allege the allegations contained above.

150.   The Maryland Antitrust Act prohibits any contract, combination, or conspiracy that unreasonably restrains trade or commerce. Md. Comm. Law § 11–204(a)(1). The Act makes it unlawful to "[m]onopolize, attempt to monopolize, or combine or conspire with one or more other persons to monopolize any part of the trade or commerce within the State, for the purpose of excluding competition or of controlling, fixing, or maintaining prices in trade or commerce." Md. Comm. Law § 11–204(a)(2). It also prohibits conditioning the sale or lease of any good or service on the "understanding that the lessee or purchaser will not use or deal in the commodity or service of a competitor of the lessor or seller," if such an agreement would lessen competition or tend to create a monopoly. Md. Comm. Law § 11–204(a)(6).

AMENDED CLASS ACTION COMPLAINT - 41

151. Zillow has violated the Maryland Antitrust Act, as described supra, by coercing agents and brokerages into an unreasonable agreement to steer clients to ZHL or suffer loss of valuable client referrals, in violation of § 11–204(a)(1). This agreement maintains and reinforces Zillow's monopoly of the real estate marketplace, in violation of § 11–204(a)(2). Zillow also violates § 11–204(a)(6) by conditioning the sale of client referrals to the purchase of the FUB CRM, and on an agreement by agents to steer clients to ZHL.

152. Plaintiffs were injured by this conduct, in the form of lost client referrals and lost opportunity to close real estate transactions, and in the form of supracompetitive overcharges for client referrals.

153. Plaintiffs seek injunctive relief, treble damages, costs, and reasonable attorneys' fees. Md. Comm. Law § 11–209.

## COUNT EIGHT — MARYLAND UNJUST ENRICHMENT

### (Against all Defendants on behalf of the Maryland Class)

154. Plaintiffs, on behalf of the Maryland Class, re-allege and incorporate by reference herein all of the allegations contained above.

155. Plaintiffs assert a claim for unjust enrichment under the laws of Maryland.

156. By virtue of the unfair and unlawful conduct alleged herein, Zillow has realized millions of dollars in revenue from (1) unlawfully coercing real estate agents to steer their clients to ZHL as a condition to access valuable referrals from Zillow's real estate marketplace; and (2) by abusing its monopoly power to extract supracompetitive referral rates and fees from Preferred Agents who use Zillow's referral services.

157. Zillow's ill-gotten gains were monetary benefits conferred upon Zillow by Plaintiffs and Class Members. It would be inequitable and unjust to permit Zillow to retain the economic benefits it obtained through its illegal monopolization and other unlawful practices. Zillow will be unjustly enriched it if were permitted to retain these economic benefits.

AMENDED CLASS ACTION COMPLAINT - 42

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

158.    Plaintiffs and Class members are therefore entitled to recover the amounts realized by Zillow at their expense.

159.    Zillow knew and appreciated that it was receiving monetary benefits from Plaintiffs and Class Members through its unlawful steering coercion and referral fee practices.

160.    Zillow deliberately engineered its marketplace and lending programs to maximize its revenues from the illegal arrangement. Zillow also deliberately charges supracompetitive referral fees to Preferred agents.

161.    Plaintiffs and Class Members have no adequate remedy at law to divest Zillow of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

162.    To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, Plaintiffs and Class Members assert their claim for non-restitutionary disgorgement as an alternative remedy, and/or the imposition of a constructive trust to recover the amount of Zillow's ill-gotten gains.

**2.    Oregon**

**COUNT NINE — OREGON UNFAIR TRADE PRACTICES ACT**

**Or. Rev. Stat § 646.605 *et seq.***

**(Against All Defendants, on behalf of the Oregon class)**

163.    Plaintiffs, on behalf of the Oregon class, reincorporate and re-allege the allegations contained above.

164.    The Oregon Unfair Trade Practices Act ("UTPA") prohibits an enumerated list of unlawful trade practices. Or. Rev. Stat. § 646.608. Among those prohibitions, a person violates the act if, "[i]n a sale, rental or other disposition of real estate, goods or services, gives or offers to give a rebate or discount or otherwise pays or offers to pay value to the customer in consideration of the customer giving to the person the names of prospective purchasers, lessees, or borrowers, or otherwise aiding the person in making a sale, lease, or loan to another person, if earning the

AMENDED CLASS ACTION COMPLAINT - 43

rebate, discount or other value is contingent upon an event occurring after the time the customer enters into the transaction." Or. Rev. Stat. § 646.608(1)(o). Zillow has violated this prohibition by conditioning the provision of referrals to agents on their willingness to aid Zillow in selling loans to those clients, at some future time.

165.    Zillow similarly makes false or misleading statements to agents, or omits material facts, related to their obligation to steer clients to ZHL as a condition of obtaining referrals from Zillow, in violation of Or. Rev. Stat. § 646.608(1)(L).

166.    Zillow also made false or misleading misrepresentations about the characteristics, quality, or intent to deliver the referrals it was selling in the Flex/Preferred program, in violation of Or. Rev. Stat. §§ 646.608(1)(e), (g), (q). Zillow failed to disclose to agents and brokerages when they joined the program that steering clients to ZHL would be a requirement to obtain referrals, or that the quantity or quality of those referrals would be conditioned on client ZHL pre-approvals. Zillow also failed to disclose that agents and brokerages would be required to purchase the FUB product to obtain referrals.

167.    The UTPA also proscribes "any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1)(u). This section only applies where the Attorney General has published a rule declaring a practice to be unfair or deceptive. Or. Rev. Stat. § 646.608(4). The Oregon Attorney General has issued a rule declaring that any conduct violating the federal RESPA statute is an unfair or deceptive practice. Or. Admin. Code § 137-020-0805. Zillow's referral fee scheme violates RESPA. The referral fees it charges, contingent upon steering clients to ZHL, are prohibited by 12 U.S.C. § 2607(a) and its implementing regulations (12 C.F.R. § 1024.14), and do not fall within the safe harbors enumerated in § 2607(c).

168.    Plaintiffs seek injunctive relief, actual, statutory, and punitive damages, costs and reasonable attorney's fees as provided by Or. Rev. Stat. § 646.638.

KELLER ROHRBACK L.L.P.

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT TEN — OREGON UNJUST ENRICHMENT

### (Against all Defendants on behalf of the Oregon Class)

169.    Plaintiffs, on behalf of the Oregon Class, re-allege and incorporate by reference herein all of the allegations contained above.

170.    Plaintiffs assert a claim for unjust enrichment under the laws of Oregon.

171.    By virtue of the unfair and unlawful conduct alleged herein, Zillow has realized millions of dollars in revenue from (1) unlawfully coercing real estate agents to steer their clients to ZHL as a condition to access valuable referrals from Zillow's real estate marketplace; and (2) by abusing its monopoly power to extract supracompetitive referral rates and fees from Preferred Agents who use Zillow's referral services.

172.    Zillow's ill-gotten gains were monetary benefits conferred upon Zillow by Plaintiffs and Class Members. It would be inequitable and unjust to permit Zillow to retain the economic benefits it obtained through its illegal monopolization and other unlawful practices. Zillow will be unjustly enriched it if were permitted to retain these economic benefits.

173.    Plaintiffs and Class members are therefore entitled to recover the amounts realized by Zillow at their expense.

174.    Zillow knew and appreciated that it was receiving monetary benefits from Plaintiffs and Class Members through its unlawful steering coercion and referral fee practices.

175.    Zillow deliberately engineered its marketplace and lending programs to maximize its revenues from the illegal arrangement. Zillow also deliberately charges supracompetitive referral fees to Preferred agents.

176.    Plaintiffs and Class Members have no adequate remedy at law to divest Zillow of its ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

177.    To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, Plaintiffs and Class Members assert their claim

AMENDED CLASS ACTION COMPLAINT - 45

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

for non-restitutionary disgorgement as an alternative remedy, and/or the imposition of a constructive trust to recover the amount of Zillow's ill-gotten gains.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek that this matter be certified as a class action, and that their attorneys be appointed Class Counsel, and that they be appointed Class Representatives.

Plaintiff and Class Members seek the following relief against Defendants:

A.    Actual damages and other compensatory relief in an amount to be determined at trial;

B.    Statutory, treble, or punitive damages as authorized by law, including under 15 U.S.C. § 15, Wash. Rev. Code 19.86.090, Or. Rev. Stat. § 646.638, and/or Md. Comm. Law § 11–209.

C.    Restitution and disgorgement of profits and other unjust gains obtained through the conduct alleged herein;

D.    Injunctive and equitable relief to prevent Defendants from continuing the unlawful, unfair, and deceptive practices described in this Complaint;

E.    Reasonable attorneys' fees, costs, and expenses as permitted by law;

F.    Pre- and post-judgment interest as allowed by law; and

G.    Such other and further relief as the Court deems just and proper under the circumstances.

## VIII.    JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial for all claims so triable.

AMENDED CLASS ACTION COMPLAINT - 46

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

DATED this 4th day of May, 2026.

KELLER ROHRBACK L.L.P.

By: *s/ Ryan McDevitt*
 Ryan McDevitt, WSBA #43305
 Samuel L. Rubinstein, WSBA #64605
 Nicandro Iannacci, WSBA #64636
 1201 Third Avenue, Suite 3400
 Seattle, WA 98101-3268
 Telephone: (206) 623-1900
 Facsimile: (206) 623-3384
 rmcdevitt@kellerrohrback.com
 srubinstein@kellerrohrback.com
 niannacci@kellerrohrback.com

 *Attorneys for Plaintiffs*

AMENDED CLASS ACTION COMPLAINT - 47