THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE M. DUPUIS and SOUND MUSIC I INC., BRIAN GRAHAM, and ANNA ALVAREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZILLOW GROUP, INC., ZILLOW, INC., ZILLOW HOME LOANS, LLC, ZILLOW HOMES, INC., ZILLOW LISTING SERVICES, INC.,<br><br>Defendants. | CASE NO.: 3:26-cv-05049-JLR<br><br>**DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>July 13, 2026<br><br>**ORAL ARGUMENT REQUESTED** |

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

SUMMARY OF ALLEGATIONS ......................................................................................... 2

I.    Zillow's Services Benefit Consumers and Real Estate Professionals Alike...................... 2

    A.    Zillow Enhances Agent Experience with FUB ........................................................ 2

    B.    Zillow Streamlines Home Buying with ZHL........................................................... 3

II.   Plaintiffs are Dissatisfied with Preferred Despite Benefiting from It.................................. 3

III.  Plaintiffs' Claims ............................................................................................................... 4

LEGAL STANDARD............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

I.    Plaintiffs' Failure to Allege Relevant Markets Defeats All Antitrust Claims ................... 6

    A.    Plaintiffs Do Not Plead Relevant Product Markets ................................................. 6

    B.    Plaintiffs Do Not Plead Relevant Geographic Markets ........................................... 7

II.   Plaintiffs Fail to State Any Tying Claim (Count 1)................................................................ 8

    A.    Certain Plaintiffs Lack Antitrust Standing to Assert Tying Claims ....................... 8

    B.    Plaintiffs Fail to Allege All Required Elements of a Tying Claim.......................... 9

        1.    Certain Plaintiffs Do Not Plead the Existence of a Tie ............................. 9

        2.    Plaintiffs Fail to Allege an Unlawful Tie................................................. 10

III.  Plaintiffs Fail to Allege an Unreasonable Agreement Under Section 1 (Count 2)........... 12

IV.   Plaintiffs Fail to State a Section 2 Claim (Count 3)........................................................... 14

    A.    Plaintiffs Do Not Plead Monopoly Power ............................................................. 14

    B.    Plaintiffs Do Not Plead Any Unlawful Anticompetitive Conduct........................ 16

V.    Plaintiffs' State Law Antitrust Claims Fail (Counts 4 and 7).......................................... 16

VI.   Plaintiffs Fail to State a WCPA Claim (Count 5).............................................................. 17

    A.    Plaintiffs Do Not Plead Any Unfair or Deceptive Act ......................................... 17

    B.    Plaintiffs' Alleged Breaches of Professional Duties Do Not Occur in Trade or Commerce.............................................................................................. 20

C.      Plaintiffs Do Not Plead Compensable Injury or Proximate Cause ....................... 20

VII.    Plaintiffs Fail to State a UTPA Claim (Count 9) ................................................................ 21

A.      Plaintiffs' UTPA Claim is Time-Barred ................................................................. 21

B.      Plaintiffs Do Not Plead the Elements of a UTPA Claim ...................................... 21

VIII.   Plaintiffs' Unjust Enrichment Claims Fail (Counts 6, 8, and 10) .................................... 23

IX.     The Amended Complaint Should be Dismissed with Prejudice ....................................... 24

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*49er Chevrolet, Inc. v. Gen. Motors Corp.*,
    803 F.2d 1463 (9th Cir. 1986) ..................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................5

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
    241 F.3d 696 (9th Cir. 2001) ....................................................................................16

*Bohr v. Tillamook Cnty. Creamery Ass'n*,
    567 P.3d 413 (Or. 2025).............................................................................................21

*Bowers v. Bank of Am., N.A.*,
    905 F. Supp. 2d 697 (D. Md. 2012)...........................................................................24

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) .......................................................................11, 12, 14

*Bushbeck v. Chi. Title Ins. Co.*,
    632 F. Supp. 2d 1036 (W.D. Wash. 2008)..................................................................19

*CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC*,
    2009 WL 10676075 (W.D. Wash. Sept. 28, 2009)........................................................8

*Cascade Health Sols. v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008) .....................................................................................16

*Ceiling & Interior Sys. Supply, Inc. v. USG Interiors, Inc.*,
    878 F. Supp. 1389 (W.D. Wash. 1993),
    *aff'd*, 37 F.3d 1504 (9th Cir. 1994)..............................................................................8

*Chandler v. Wash. Toll Bridge Auth.*,
    137 P.2d 97 (Wash. 1943)..........................................................................................23

*Compass, Inc. v. Zillow, Inc.*,
    2026 WL 321084 (S.D.N.Y. Feb. 6, 2026)..................................................................10

*Coronavirus Rep. v. Apple Inc.*,
    2021 WL 5936910 (N.D. Cal. Nov. 30, 2021),
    *aff'd*, 85 F.4th 948 (9th Cir. 2023)...............................................................................7

*Coronavirus Rep. v. Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023) ......................................................................................16

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*,
    99 F.3d 937 (9th Cir. 1996) .......................................................................................15

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
    150 F.4th 1056 (9th Cir. 2025),
    *cert. denied*, -- S. Ct. ----, 2026 WL 795193 (Mar. 23, 2026) ...........................................10

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
    520 F. Supp. 2d 1199 (C.D. Cal. 2007),
    *aff'd*, 322 F. App'x 569 (9th Cir. 2009)...............................................................................9

*Easterbrook v. LinkedIn Corp.*,
    2023 WL 3022497 (D. Or. Apr. 20, 2023) .........................................................................21

*Edwards v. First Am. Corp.*,
    798 F.3d 1172 (9th Cir. 2015) ...........................................................................................19

*Egbukichi v. Wells Fargo Bank, NA*,
    184 F. Supp. 3d 971 (D. Or. 2016) ....................................................................................21

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ...........................................................................9, 10, 11, 16

*ESHA Rsch., LLC v. RLH Assets, LLC*,
    2025 WL 2697107 (D. Or. Sept. 22, 2025) .......................................................................22

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) .............................................................................................5

*Foman v. Davis*,
    371 U.S. 178 (1962)............................................................................................................24

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. 2011) ........................................................................................7

*Greenberg v. Amazon.com, Inc.*,
    553 P.3d 626 (Wash. 2024)................................................................................................17

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) .........................................................................................6, 8

*Hill v. Cross Cnty. Settlements, LLC*,
    402 Md. 281 (2007) ...........................................................................................................23

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006)..............................................................................................................13

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .............................................................................................5

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
    170 P.3d 10 (Wash. 2007)..................................................................................................20

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984)..................................................................................................................9

*Joseph v. Amazon.com, Inc.*,
     46 F. Supp. 3d 1095 (W.D. Wash. 2014)...............................................................13

*Khalid v. Microsoft Corp.*,
     409 F. Supp. 3d 1023 (W.D. Wash. 2019)..............................................................15

*Larisa's Home Care, LLC v. Nichols-Shields*,
     362 Or. 115 (2017)..................................................................................................24

*Loren Data Corp. v. GXS, Inc.*,
     501 F. App'x 275 (4th Cir. 2012) ...........................................................................17

*Lubic v. Fid. Nat'l Fin., Inc.*,
     2009 WL 2160777 (W.D. Wash. July 20, 2009) .....................................................23

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
     164 F.4th 710 (9th Cir. 2026) ...........................................................................14, 15

*Maris Distrib. Co. v. Anheuser-Busch, Inc.*,
     302 F.3d 1207 (11th Cir. 2002) ...............................................................................11

*McAllister Constr. Co. v. Liu*,
     343 Or. App. 53 (2025)............................................................................................24

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*,
     2008 WL 2437739 (D. Haw. June 17, 2008) .............................................................7

*Monsanto Co. v. Spray-Rite Serv. Co.*,
     465 U.S. 752 (1984)..................................................................................................13

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
     924 F.2d 1484 (9th Cir. 1991) ...................................................................................7

*Morris v. Dental Care Today, P.C.*,
     473 P.3d 1137 (Or. Ct. App. 2020)..........................................................................21

*Mundle v. Doxo, Inc.*,
     2025 WL 1126646 (W.D. Wash. Apr. 16, 2025)......................................................20

*Newcal Indus., Inc. v. Ikon Office Sol.*,
     513 F.3d 1038 (9th Cir. 2008) ...................................................................................6

*Ohio v. Am. Express Co.*,
     585 U.S. 529 (2018)..................................................................................................11

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
     268 F. Supp. 3d 1071 (C.D. Cal. 2017) .....................................................................6

*Panag v. Farmers Ins. Co.*,
     204 P.3d 885 (Wash. 2009)......................................................................................17

*Parisien v. Eighty S. Jackson Condo. Ass'n*,
     34 Wash. App. 2d 1041, 2025 WL 1341658 (May 8, 2025),
     *as amended on denial of reconsideration* (July 17, 2025)......................................20

*Paul v. Providence Health Sys.-Or.*,
    240 P.3d 1110 (Or. Ct. App. 2010)....................................................................22

*PBTM LLC v. Football Nw., LLC*,
    511 F. Supp. 3d 1158 (W.D. Wash. 2021).................................................6, 9, 13

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
    32 F.4th 824 (9th Cir. 2022) ...........................................................................15

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) .....................................................................10, 15

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) .....................................................................10, 14

*Russell v. WADOT Cap., Inc.*,
    2024 WL 4451541 (W.D. Wash. Oct. 9, 2024) ................................................19

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ...........................................................................24

*Safeway Inc. v. Abbott Lab'ys*,
    761 F. Supp. 2d 874 (N.D. Cal. 2011) ..............................................................15

*Schmitz v. Verdad Asset Mgmt., LLC*,
    2026 WL 1146873 (4th Cir. Apr. 28, 2026) .....................................................23

*Shields v. Fred Meyer Stores Inc.*,
    741 F. Supp. 3d 915 (W.D. Wash. 2024),
    *amended by* 796 F. Supp. 3d 740 (W.D. Wash. 2025) ................................17, 18

*Sidibe v. Sutter Health*,
    4 F. Supp. 3d 1160 (N.D. Cal. 2013) ..................................................................6

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ...........................................................................24

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..................................................................................18, 19

*Stone v. Aspen Dental Mgmt., Inc.*,
    2019 WL 13207544 (E.D. Wash. Sept. 13, 2019) .............................................20

*Sublimity Harvest Found. v. Bleacher Builders Inc.*,
    751 F. Supp. 3d 1121 (D. Or. 2024) .................................................................23

*Synopsys, Inc. v. ATopTech, Inc.*,
    2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) ....................................................11

*The Jeanery, Inc. v. James Jeans, Inc.*,
    849 F.2d 1148 (9th Cir. 1988) .........................................................................13

*Toscano v. Pro. Golfers Ass'n*,
    258 F.3d 978 (9th Cir. 2001) .....................................................................13, 14

*Truck-Rail Handling Inc. v. BNSF Ry. Co.*,
 2005 WL 8178364 (N.D. Cal. Mar. 8, 2005)................................................................12

*U.S. Philips Corp. v. KXD Tech., Inc.*,
 2006 WL 8421895 (C.D. Cal. Sept. 14, 2006) .............................................................16

*Young v. Young*,
 164 Wash. 2d 477 (2008)..................................................................................23, 24

*Zulily, LLC v. Amazon.com, Inc.*,
 761 F. Supp. 3d 1368 (W.D. Wash. 2024)..............................................................17, 18

*Zunum Aero, Inc. v. Boeing Co.*,
 2022 WL 2116678 (W.D. Wash. June 13, 2022)...............................................................8

## STATUTES

12 U.S.C. §2601(a) ..............................................................................................19

12 U.S.C. §2607................................................................................................ *passim*

15 U.S.C. §1...........................................................................................................4

15 U.S.C. §2...........................................................................................................4

Md. Code Ann., Com. Law §11-201 .......................................................................4

Md. Code Ann., Com. Law §11-202 ......................................................................17

Or. Rev. Stat. §646.608...................................................................................21, 22

Or. Rev. Stat. §646.638(6) ...................................................................................21

Wash. Rev. Code §19.86.020.................................................................................17

## RULES

12 C.F.R. §1024(f) ...............................................................................................19

Fed. R. Civ. P. 9(b) ............................................................................................22

Fed. R. Civ. P. 12(b)(6)...........................................................................................5

**INTRODUCTION**

In a time when housing affordability is a challenge for millions of consumers, Zillow is simplifying the homebuying process to help buyers understand the homes they can afford and shop with confidence. Zillow encourages potential homebuyers to do so by obtaining a free, no-obligation pre-approval letter from Zillow Home Loans ("ZHL"). Zillow asks agents in its Preferred program to present this option to homebuyers, but no buyer or agent is *ever* required to buy anything from ZHL, nor prevented from using other lenders. Plaintiffs' original Complaint attempted to recast Zillow's efforts to assist homebuyers into violations of antitrust and unfair competition laws but failed to plausibly allege any claim for the reasons set forth in Zillow's motion to dismiss. Tacitly acknowledging those deficiencies, Plaintiffs' Amended Class Action Complaint ("ACAC") revises its tying theory, adds a slew of state law claims, and adds two new Plaintiffs, but fares no better than the original and should be dismissed with prejudice.

All of Plaintiffs' antitrust claims fail because they allege no plausible relevant product or geographic markets. Plaintiffs cannot assert tying claims as to products they neither purchased nor compete with, and certain Plaintiffs fail to show antitrust standing or a coerced purchase. Nor do Plaintiffs allege any anticompetitive agreement, whether tying or conspiracy, that unreasonably restrains trade. And Plaintiffs fail to plead monopoly maintenance because they do not plausibly allege that Zillow has market power or engaged in anticompetitive conduct. Plaintiffs' Washington and Maryland state antitrust claims fail for all of the same reasons.

Plaintiffs' state law claims for unfair competition and unjust enrichment are likewise deficient. Plaintiffs fail to allege the requisite elements of unfair or deceptive practice claims under Washington or Oregon law. And Plaintiffs' unjust enrichment claims must be dismissed since Plaintiffs concede they have valid contracts with Zillow covering the same subject matter and they have conferred no benefit on Zillow.

Plaintiffs attempt—but fail—to cure the defects Zillow previously identified. Therefore, the Court should dismiss Plaintiffs' entire ACAC with prejudice.

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-1-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**SUMMARY OF ALLEGATIONS**

**I.    Zillow's Services Benefit Consumers and Real Estate Professionals Alike**

Zillow offers an "integrated home buying experience" for renters, shoppers, buyers and sellers, as well as the real estate professionals who serve them. *See* ACAC ¶¶28,45. Consumers have responded positively to Zillow's products, and its websites and apps attract hundreds of millions of visitors. *Id.* ¶25. Likewise, Zillow helps agents grow their businesses by offering services to connect homebuyers with real estate agents via "connect[ions]." *Id.* ¶29.

One such service is Zillow Preferred (formerly Flex), where participating agents ("Preferred Agents") receive connections from Zillow for no upfront cost and pay Zillow a success fee only if they close a sale and earn their commission. *Id.* ¶¶29–30. In other words, Zillow only gets paid after the Preferred Agent closes a transaction. Preferred is an invite-only program where agents are expected to comply with certain "Program Standards." *Id.* ¶¶30,41. Such compliance ensures that consumers who connect with a Preferred Agent through Zillow feel supported in their home shopping journey and empowered to navigate affordability. *See id.* ¶41 (Fig.6).

**A.    Zillow Enhances Agent Experience with FUB**

To ensure accurate tracking of connections, transactions, and performance standards, Zillow requires Preferred Agents to use its proprietary customer relationship management ("CRM") system, Follow-Up Boss ("FUB"), to manage their Preferred connections. *Id.* ¶¶28,38. FUB provides Preferred Agents with integrated access to Zillow's marketplace, brokerage, and home lending services, so agents can access needed information about their Zillow connections in one convenient location. *See id.* ¶¶38–39.

Though Zillow asks Preferred Agents to use FUB for Zillow leads, agents are free to use other CRM systems to manage their non-Zillow leads. *See id.* ¶¶39,46.

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR                    -2-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

### B.    Zillow Streamlines Home Buying with ZHL

For homebuyer convenience, Zillow also offers financing through ZHL. *See id*. ¶¶28,37. Preferred Agents are expected to achieve a target number of free, no-obligation ZHL pre-approvals. *Id*. ¶41. The target is provided to both the Preferred Agent and their "team" and set at "[a]pproximately 10%" of that team's "eligible Zillow Preferred delivered connections that reached or surpassed 'met with' status in the last 90 days," though agents may also connect clients who were not Preferred connections to ZHL for a pre-approval. *Id*. ¶41 (Fig.6).

## II.    <u>Plaintiffs are Dissatisfied with Preferred Despite Benefiting from It</u>

Plaintiffs are licensed real estate agents Stephanie M. Dupuis in Washington, Brian Graham in Maryland, and Anna Alvarez in Oregon. ACAC ¶¶15,17–18. Plaintiff Sound Music I, Inc. ("SM") is a Washington business that contracts with Dupuis team real estate agents. *Id*. ¶16.

Plaintiffs have all benefited from Preferred status. *See id*. ¶9. Dupuis and SM became Preferred partners in February 2022 and have successfully "closed sales" through the program. *See id*. ¶¶43,57. In exchange for Zillow's connections, "Ms. Dupuis and her team" allegedly paid Zillow success fees "equal to 35–40% of their [buyers' agent] commission" after closing sales. *Id*. ¶57. Graham participated in Preferred in 2025. *Id*. ¶58. Alvarez participated in Preferred from February 2021 to December 2025, and has "paid referral fees to Zillow" after closing sales. *Id*. ¶69.

Plaintiffs complain about Zillow's requirement that Preferred Agents use Zillow's FUB software to receive and track connections. *Id.* ¶39. However, SM, Graham, and Alvarez do not allege they ever purchased or paid for FUB, let alone as a result of Zillow's policies. Graham does not allege he ever used FUB. And Alvarez alleges she started using FUB at her prior brokerage before Zillow acquired the software. *Id*. ¶76. Only Dupuis alleges she paid for FUB. *Id*. ¶46.

Plaintiffs also complain that Preferred's performance standards pressured them to "steer" clients to ZHL, giving rise to a purported "conflict[] of interest." *Id*. ¶¶122,131. However,

Plaintiffs do not allege they were required to direct every connection to ZHL or forbidden from disclosing Preferred's program standards, including its criteria related to ZHL pre-approval letters. To the contrary, Dupuis and SM allege they have "refused to steer clients to ZHL." *Id.* ¶48. Graham and Alvarez do not allege they encouraged *a single buyer* to obtain a ZHL pre-approval letter.

Finally, Plaintiffs allege Zillow pressures agents to "divulg[e] confidential information" about their connected clients, *id.* ¶47, and "advis[es] agents to give false or misleading information to clients or prospective clients," without identifying any such statements, *id.* ¶133. However, Dupuis and SM assert they "did not heed this advice." *Id.* ¶50. And Graham and Alvarez nowhere allege they made such statements.

Dupuis, Graham, and Alvarez claim their refusal to adhere to Preferred's performance standards has led to various consequences. Dupuis alleges her refusal has resulted in "lost opportunit[ies] to close a sale and earn income." *Id.* ¶56. Graham has incurred "startup costs" from "chang[ing] brokerages." *Id.* ¶67. Alvarez alleges that joining a brokerage "that does not have a relationship with Zillow" meant "she lost access to Zillow client referrals." *Id.* ¶79.

### III.    Plaintiffs' Claims

Plaintiffs assert antitrust claims against Zillow based on an alleged "tie" between "real estate referrals" and FUB; an "unreasonable agreement" between Zillow and unspecified "persons and entities"; and Zillow's "abuse[]" of purported monopoly power to "reinforce[] its coercive steering scheme." ACAC ¶¶98,105,115. Based on this conduct, Plaintiffs allege violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1–2, the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code ("RCW") §19.86.040, *et seq.*, and the Maryland Antitrust Act ("MATA"), Md. Com. Law §11-201, *et seq. Id.* ¶¶94–117,118–26,149–53.

Plaintiffs allege Zillow has "monopoly power" because it is "the most widely used online real estate search portal in the United States." *Id.* ¶25. They claim "Zillow Group products account for 61% of daily active app users," that "Zillow Group sites had an average of 235

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR                -4-                WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

million monthly unique users in 2025," and that "there are approximately 173 million homes in its database." *Id*. Plaintiffs inconsistently refer to at least 11 different "markets":

- "market for real estate search," *id*. ¶25;
- "real estate search marketplace," *id*. ¶¶29,40;
- "real estate marketplace," *id*. ¶87(c);
- "online real estate marketplace," *id*. ¶26;
- "marketplace for real estate leads or referrals," *id*. ¶27;
- "real estate referrals market," *id*. ¶¶95,97;
- "search portal market," *id*. ¶¶9, 27;
- "market for online real estate search," *id*. ¶35;
- "home lending market," *id.* ¶28;
- "market for CRM systems," *id*. ¶96;
- "CRM market," *id*. ¶¶96,122.

Plaintiffs also claim Zillow is violating Washington and Oregon law regarding "unfair or deceptive acts or practices." *Id*. ¶¶127–39,163–68. Finally, Plaintiffs assert state law claims for unjust enrichment. *Id*. ¶¶140–48,154–62,169–77.

### LEGAL STANDARD

To avoid Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). Nor do courts accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

**ARGUMENT**

**I.    Plaintiffs' Failure to Allege Relevant Markets Defeats All Antitrust Claims**

Plaintiffs' antitrust claims (Counts 1–4, 7) should be dismissed for failure to sufficiently plead relevant markets. "[P]laintiffs must plead a relevant market to state an antitrust claim under Sections 1 or 2 of the Sherman Act." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1179 (W.D. Wash. 2021) (citing *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018)). Likewise, for both *per se* and rule-of-reason tying claims, the complaint must define the relevant market for both the "tying" and "tied" products. *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1176, 1179 (N.D. Cal. 2013). Courts dismiss a complaint when its "'relevant market' definition is facially unsustainable." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008).

A relevant market must include both a product market, "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it," and a geographic market, "the area where the competition in the relevant product market takes place." *Sidibe*, 4 F. Supp. 3d. at 1174 (citations omitted). Plaintiffs allege neither.

**A.    Plaintiffs Do Not Plead Relevant Product Markets**

Plaintiffs fail to define relevant product markets. A product market is "facially unsustainable" when plaintiffs fail to explain what "reasonably interchangeable" products are included. *Hicks*, 897 F.3d at 1123 (citation modified); *see Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1084 (C.D. Cal. 2017) (rejecting market definition where it was "unclear what products [the definition] might encompass").

Here, Plaintiffs fail to define the tying market. They inconsistently refer to it as the "market for real estate search" (ACAC ¶25) or "real estate search marketplace" (*id*. ¶¶29,40) or "real estate marketplace" (*id*. ¶87(c)); "online real estate marketplace" (*id*. ¶26); "marketplace for real estate leads or referrals" (*id*. ¶27) or "real estate referrals market" (*id*. ¶¶95,97); "search

portal market" (*id*. ¶¶9,27); or "market for online real estate search" (*id*. ¶35). Yet Plaintiffs do not allege what products any of these markets include, with whom Zillow competes in each, or whether these markets are single or multi-sided. *See McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, 2008 WL 2437739, at *7 (D. Haw. June 17, 2008) (dismissing complaint with "no facts indicating that the identified market bears any relation to the methodology necessary in defining the relevant market"); *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *13 (N.D. Cal. Nov. 30, 2021) (dismissing complaint for failure to plausibly define market), *aff'd*, 85 F.4th 948 (9th Cir. 2023). Indeed, Plaintiffs fail to even explain whether the market is restricted to "online real estate" or not. *Compare* ACAC ¶26 ("online real estate marketplace"), *with id*. ¶27 ("marketplace for real estate leads or referrals"). An online "referrals" market would improperly exclude the myriad interchangeable ways real estate agents obtain clients, such as through advertising, social media, and word-of-mouth. *See id*. ¶¶26,27,34.

The alleged tied market fails for similar reasons. Plaintiffs do not allege any defining features of a "CRM market," *id*. ¶96, including its parameters, competitors, substitutable CRM systems, or whether CRM competitors are substantially foreclosed from the market due to the purported tying arrangement. *See Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (affirming dismissal of complaint without "*any* facts" supporting "a product market consisting of reasonably interchangeable goods").

The ACAC fails to identify what reasonably interchangeable products are included in any purported markets.

### B.    Plaintiffs Do Not Plead Relevant Geographic Markets

Plaintiffs' allegations of nationwide markets are likewise deficient. A geographic market must be defined with reference to the "area of effective competition where buyers can turn for alternate sources of supply." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (citation modified). Courts dismiss complaints with conclusory geographic markets that are inconsistent with "judicial experience and common sense." *See*

DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT CASE NO. 3:26-CV-05049-JLR

-7-

*Hicks*, 897 F.3d at 1121 (citation omitted) (affirming dismissal); *see also CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC*, 2009 WL 10676075, at *5 (W.D. Wash. Sept. 28, 2009) (Robart, J.) (dismissing antitrust claim where plaintiff "failed to plead *any* geographic market").

Here, Plaintiffs claim all relevant markets are national because Zillow operates across the United States, ACAC ¶97, yet they assert allegations inconsistent with national markets. *See Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *8 (W.D. Wash. June 13, 2022) (Robart, J.) (pleading geographic market requires describing scope of markets "in more than vague and conclusory terms."). Plaintiffs acknowledge that leads are organized "at the zip code level," and that leads in "major metro areas" are valued higher than those elsewhere, ACAC ¶29, such that "not all connections are of the same potential financial value to agents," *id*. ¶55. Plaintiffs further admit that "real estate markets are generally regional from an individual homebuyer's or agent's perspective," *id*. ¶97, and that connections are less valuable to agents when they must travel further to meet clients, *id*. ¶55. As for the alleged tied market, Plaintiffs do not explain how the CRM market is national beyond vague allegations that Zillow sells FUB "nationwide" and requires Preferred participants "throughout the nation to use FUB." *Id*. ¶97; *see also Ceiling & Interior Sys. Supply, Inc. v. USG Interiors, Inc.*, 878 F. Supp. 1389, 1394 (W.D. Wash. 1993) (dismissing antitrust claim where complaint failed to "settle[] down" on scope of geographic market), *aff'd*, 37 F.3d 1504 (9th Cir. 1994). Plaintiffs' allegations of national geographic markets are thus unsupported.

All antitrust claims should be dismissed for failure to plead relevant markets.

## II.    Plaintiffs Fail to State Any Tying Claim (Count 1)

Count 1 should be dismissed because Plaintiffs fail to plead a plausible claim that Zillow has tied the sale of FUB to "the sale of client referrals." ACAC ¶98.

### A.    Certain Plaintiffs Lack Antitrust Standing to Assert Tying Claims

As a threshold matter, SM, Graham, and Alvarez do not satisfy antitrust standing to challenge any purported tie. "Two types of plaintiffs have standing to challenge illegal tying

-8-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

arrangements—[1] purchasers who are forced to buy the tied product to obtain . . . the tying product, and [2] competitors who are restrained from entering the market for the tied product." *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1210 (C.D. Cal. 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009).

SM, Graham, and Alvarez lack antitrust standing because none allege they are direct purchasers of FUB or competitors in the allegedly tied market for CRM systems. At best, Graham and Alvarez allege they were previously part of brokerages that participated in Preferred, but neither alleges a direct purchase of FUB. ACAC ¶¶58,69. Alvarez merely alleges that she "used" FUB while working at her former brokerage. *Id*. ¶76. Likewise, though Dupuis and SM's staff allegedly used FUB, only Dupuis (*not* SM) alleges that she "incurred costs" from purchasing it. *Id*. ¶46. SM, Graham, and Alvarez therefore lack antitrust standing and cannot maintain a tying claim. *See Cyntegra*, 520 F. Supp 2d at 1210.

### B.    Plaintiffs Fail to Allege All Required Elements of a Tying Claim

No Plaintiff has alleged all of the required elements of a tying claim. "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023) (citation omitted). Plaintiffs must prove (1) "the existence of a tie" (2) that is "unlawful pursuant to either a modified *per se* rule or the Rule of Reason." *Id.* at 995–97.

#### 1.    Certain Plaintiffs Do Not Plead the Existence of a Tie

SM, Graham, and Alvarez have not pled the existence of a tie. A tying claim requires a showing that the seller "*force[d]* the buyer into the purchase of a tied product." *Id.* (citation omitted). "Actual coercion . . . is an indispensable element of a tying violation." *PBTM*, 511 F. Supp. 3d at 1183 (citation omitted); *see also Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984) (seller must "force a purchaser to do something that he would not do in a competitive market"). The allegations foreclose any tying claim because SM, Alvarez, and

Graham do not allege they ever purchased FUB and thus cannot have been coerced to do so. *See supra* Section II.A. In fact, Alvarez admits she started using FUB before Zillow even acquired it, *see* ACAC ¶76, dispelling any notion that Zillow coerced her. *See Epic Games*, 67 F.4th at 995 ("Were a buyer merely to agree 'to buy [a] second product on its own merits' absent any coercion, there would be no tie." (alteration in original) (citation omitted)).

### 2. Plaintiffs Fail to Allege an Unlawful Tie

Plaintiffs' tying claims also fail because they have not plausibly alleged that *per se* treatment is appropriate or that any tie violates the rule of reason.

No *Per Se* Condemnation. Plaintiffs cannot maintain a *per se* tying claim without showing that the defendant has market power in the tying product market. *See id*. at 997 ("A tie is *per se* unlawful if the defendant has market power in the tying product market." (citation modified)). As a threshold matter, Plaintiffs have not alleged a plausible tying market for "real estate search" or for "real estate referrals," *see supra* Section I.A, and "[w]ithout a definition of the relevant market, it is impossible to determine market share." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

Regardless, Plaintiffs fail to allege Zillow's market share in any viable tying product market. At most, Plaintiffs assert a laundry list of metrics related to the quantity of *consumer* interactions with Zillow's services, ACAC ¶25, which a federal district court recently found to be "flawed proxies for Zillow's market share in the online home search market." *Compass, Inc. v. Zillow, Inc.*, 2026 WL 321084, at *18–20 (S.D.N.Y. Feb. 6, 2026). Indeed, Plaintiffs do not plead any facts demonstrating that consumer visits to Zillow's websites reflect market share in a tying market for client leads. *Id*.; *see CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1071 (9th Cir. 2025) (website visits "unlikely to mirror" market share absent other data), *cert. denied*, -- S. Ct. ----, 2026 WL 795193 (Mar. 23, 2026); *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 973 (9th Cir. 2008) (affirming dismissal where plaintiff could not explain statistics' relevance to market share). Fundamentally, Plaintiffs allege nothing about

Zillow's share in the tying market for "client referrals"; instead, Plaintiffs attempt to impute their failed allegations of market share in "real estate search" to market share in "real estate referrals" without alleging any facts to make that claim plausible. *See* ACAC ¶95 ("Zillow's dominant real estate portal position gives it market power . . . in the real estate referrals market."). But "a defendant's market share in a market other than the alleged relevant market is irrelevant." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1215 (11th Cir. 2002). Moreover, Plaintiffs admit it is possible to simply leave Zillow when they wish to "avoid Zillow's coercive conduct," *see* ACAC ¶¶56,67,79, thus undermining the idea Zillow has market power simply because it offers valuable client connections.

No Anticompetitive Effects. Under the rule of reason, Plaintiffs must plead that "the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Epic Games*, 67 F.4th at 983 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018)). For a tying claim, this requires pleading "that the tying arrangement will either 'harm existing competitors or create barriers to entry of new competitors in the market for the tied product' or will 'force buyers into giving up the purchase of substitutes for the tied product.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (citations omitted). Plaintiffs allege neither.

First, Plaintiffs offer no facts to suggest that their own allegedly coerced purchase of FUB is enough to harm competition in an undefined CRM market. *See* ACAC ¶101. They do not allege that tracking Zillow leads is a substantial portion of the undefined CRM market, such that foreclosing competition for Zillow leads would be enough to harm competition in that market. Nor do Plaintiffs allege any percentage foreclosure of a CRM market at all, a flaw fatal enough to defeat even a *per se* claim on this element. *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *8 (N.D. Cal. Aug. 7, 2015) (dismissing *per se* tying claim "absent any allegations as to . . . what percentage of the [tied] market has been foreclosed by [Defendant's] alleged tying"). At most, Plaintiffs assert that as a result of Zillow's acquisition, "FUB 'powers daily

activity for more than 80% of the highest-volume teams in the country.'" ACAC ¶96. But Plaintiffs have not defined the CRM market to include only real estate-specific CRM software. Nor have they defined the market to be restricted to high-volume teams rather than all real estate teams. Critically, Plaintiffs do not allege that any teams, high-volume or not, are foreclosed from using other CRM products. Thus, Plaintiffs' cited percentage of high-volume real estate teams using FUB does not establish that Zillow foreclosed competition in any CRM market.

Second, Plaintiffs admit Zillow does not restrict them from "us[ing] a different and preferable CRM to track non-Zillow leads." *Id.* ¶46. Plaintiffs thus cannot have been forced to give up the purchase of competing substitutes. *See Brantley*, 675 F.3d at 1199.

Plaintiffs' failure to allege any unlawful tying claim requires dismissal of Count 1.

**III.    Plaintiffs Fail to Allege an Unreasonable Agreement Under Section 1 (Count 2)**

Plaintiffs appear to advance two distinct theories of unlawful conduct under Section 1. Neither withstands scrutiny. And regardless of the theory, Plaintiffs fail to show any anticompetitive effect from buyers obtaining free, non-exclusive ZHL pre-approval letters.

Tying Theory. Plaintiffs first allege what appears to be a re-packaged tying claim: that Zillow uses alleged power over the "sale of leads" to coerce real estate agents to "steer[] clients to ZHL." ACAC ¶107. This theory fails for the same reasons discussed in Zillow's first motion to dismiss. *See* Dkt. 19 at 10–14. In particular, Plaintiffs lack antitrust injury because none allege that they purchase anything from ZHL or that they compete with ZHL; instead, they allege they were "pressured" by Zillow to *steer* clients to ZHL. ACAC ¶¶106–07; *see 49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1469 (9th Cir. 1986) (affirming dismissal where plaintiffs were sellers, "not buyers," of an allegedly tied product"); *see also Truck-Rail Handling Inc. v. BNSF Ry. Co.*, 2005 WL 8178364, at *11 (N.D. Cal. Mar. 8, 2005) (dismissing tying claim where plaintiffs "were allegedly coerced 'to *sell* services to the [d]efendant, whether they wanted to or not'" (citation omitted)). Moreover, because none of the Plaintiffs allege that they themselves purchased from ZHL, they fail to satisfy the single-buyer requirement for a tying

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-12-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

claim. *See Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34–35 (2006) (the "essential characteristic of an invalid tying arrangement" is a single "buyer" of two separate products).

Plaintiffs similarly fail to allege a *coerced* purchase. *See PBTM*, 511 F. Supp. 3d at 1183 ("[a]ctual coercion" to "purchase the tied product" is "indispensable" to tying claim (citation omitted)). Indeed, Dupuis and SM concede they have *refused* to encourage clients to obtain ZHL pre-approvals. ACAC ¶55. And Graham and Alvarez conspicuously fail to plead that they personally referred any clients to ZHL, or that Zillow required them to do so on an exclusive basis. *Id.* ¶¶61–65 (Graham alleging ZHL pre-approval targets for his *brokerage*); *id.* ¶¶70–75 (Alvarez alleging same). Plaintiffs' allegations that Zillow "refuses to deal with" or "threaten[s] to terminate" agents and brokerages that "fail[] to meet ZHL pre-approval metrics" are likewise unavailing, *see id.* ¶¶104–05, because even the full "termination or rejection of a dealer or customer who refuses to comply with a tie is neither a tying agreement nor a conditioned sale." Areeda & Hovenkamp, *Antitrust Law* ¶1753(f) (5th ed. 2024); *see Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1104 (W.D. Wash. 2014) (plaintiff who refused to purchase tied product cannot plead tying claim).

Conspiracy Theory. Plaintiffs also hint at an alleged conspiracy or "combination" between Zillow and "other persons and entities," such as "brokerages." ACAC ¶105. To plead a Section 1 conspiracy claim, the plaintiff must plausibly allege a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Toscano v. Pro. Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001) (citation omitted). "[C]oncerted action of more than a single entity" is required. *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988). Here, Plaintiffs do not plausibly allege that Zillow's brokerage partners committed to a "common scheme" with Zillow. *Toscano*, 258 F.3d at 983. To the contrary, Zillow's and the brokerages' mutual transactions are merely independent business decisions for both parties. *See Monsanto Co. v. Spray-Rite Serv. Co.*, 465 U.S. 752, 761 (1984) (manufacturers have "a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." (citations omitted)).

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-13-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Plaintiffs also effectively concede that Zillow acted unilaterally in implementing its program policies for Preferred Agents. *See* ACAC ¶106. Plaintiffs thus plead no conspiracy. *Toscano*, 258 F.3d at 984 (no concerted action where "the PGA Tour independently set the terms of the contracts, and the local sponsors merely accepted them").

No Anticompetitive Effects. Regardless of the theory, Plaintiffs still fail to show any anticompetitive effect, such as reduced output or quality or increased prices, as required to state a Section 1 claim. *Brantley*, 675 F.3d at 1204 ("Injury to competition must be alleged to state a violation of Sherman Act § 1."). Plaintiffs merely allege that in some circumstances a ZHL pre-approval letter "may not be in their [client's] best interest," but do not allege facts showing how this free, no-obligation letter "distort[s] both the real estate marketplace and home lending markets." ACAC ¶107. If anything, helping consumers learn more about their buying power is more beneficial than injurious to competition. *See, e.g.*, Areeda & Hovenkamp ¶1423(c) ("rationality and efficiency are served by maximizing the relevant information available to parties contemplating dealing with each other"). Plaintiffs' Section 1 claim thus fails.

## IV.    **Plaintiffs Fail to State a Section 2 Claim (Count 3)**

Plaintiffs have not plausibly alleged a Section 2 claim. To plead abuse of monopoly, Plaintiffs must allege (1) "possession of monopoly power in the relevant market"; (2) "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"; and (3) "causal antitrust injury." *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 724 (9th Cir. 2026) (citations omitted). Plaintiffs fail to plead any of these elements.

### A.    **Plaintiffs Do Not Plead Monopoly Power**

Plaintiffs fail to allege that Zillow has monopoly power in a valid "online real estate search market." ACAC ¶113; *see Rick-Mik*, 532 F.3d at 971. Monopoly power is "the power to control prices or exclude competition," which can be "shown through direct or circumstantial

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR                    -14-                    **WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

evidence." *Safeway Inc. v. Abbott Lab'ys*, 761 F. Supp. 2d 874, 886 (N.D. Cal. 2011) (citations omitted). Plaintiffs do not allege either.

No Direct Evidence. Direct proof of market power may be alleged by pleading restricted output or supracompetitive prices. *See PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022). The ACAC is completely devoid of allegations that Zillow has restricted output or charged supracompetitive prices in "the online real estate search market." ACAC ¶113.

No Indirect Evidence. Indirect evidence requires plaintiffs to "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and . . . that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434. The ACAC falls short on all three elements.

As discussed above, Plaintiffs have not alleged a plausible national market for "online real estate search," *see supra* Section I.A. Without a facially valid market, Plaintiffs cannot show that Zillow holds a dominant share of that market, *see supra* Section II.B.2.

Plaintiffs also fail to allege barriers to entry. "[M]arket share standing alone does not automatically equate to monopoly power." *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996). Thus, a dominant market share supports a finding of monopoly power only "if entry barriers are high and competitors are unable to expand their output in response to supracompetitive pricing." *Rebel Oil*, 51 F.3d at 1438. Here, regardless of Zillow's market share in online real estate search, Plaintiffs completely fail to allege any barriers to entry or expansion for competitors in any market. This defect alone warrants dismissal. *See Malheur*, 164 F.4th at 728–29 (affirming dismissal where plaintiffs alleged 95% market share but failed to plead barriers to entry or expansion); *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1033 (W.D. Wash. 2019) (dismissing claim where plaintiff alleged "88% market share" but provided no analysis as to "barriers to entry or hyper-competitive pricing that inhibits competitors").

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-15-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

**B.      Plaintiffs Do Not Plead Any Unlawful Anticompetitive Conduct**

Even if Zillow had monopoly power (it does not), the Section 2 claim still fails because Plaintiffs do not plead that Zillow's conduct is anticompetitive or exclusionary. "[A]nticompetitive conduct . . . harms the competitive process as a whole, rather than . . . individual competitors." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954–55 (9th Cir. 2023); *U.S. Philips Corp. v. KXD Tech., Inc.*, 2006 WL 8421895, at *2 (C.D. Cal. Sept. 14, 2006) (dismissing monopolization claim where plaintiff failed to allege anticompetitive conduct). Anticompetitive conduct "tends to impair the opportunities of rivals" and "does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008). None of the challenged conduct suffices.

First, Plaintiffs cannot rely on their FUB tying theory to plead a Section 2 claim, ACAC ¶115, because they have failed to plead an unlawful tie between FUB and another product for the same reasons as their Section 1 tying claim (Count 1). *See supra* Section II; *Epic Games*, 67 F.4th at 998 ("Where, like here, the plaintiff challenges the same conduct pursuant to Sections 1 and 2, we can 'review claims under each section simultaneously.'"); *see also id*. at 998–99 (affirming dismissal of Section 2 claim because plaintiff failed to prove the alleged tie was unlawful under Section 1).

Likewise, Plaintiffs' allegation of anticompetitive conduct in the form of "coercing" "agents and brokerages to steer clients to ZHL as a condition to access valuable referrals," ACAC ¶114, is defective for the same reasons as the vague ZHL tying theory pleaded in Count 2. *See supra* Section III; ACAC ¶¶104–06.

Plaintiffs' failure to plausibly allege anticompetitive conduct therefore requires dismissal of Count 3.

**V.      Plaintiffs' State Law Antitrust Claims Fail (Counts 4 and 7)**

Plaintiffs' antitrust claims under the WCPA and MATA should be dismissed because they rise and fall with the federal claims. *See Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris*

*Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) (WCPA must be interpreted "in light of federal court decisions interpreting federal antitrust law"); *see also* Md. Code Ann., Com. Law §11-202(a)(1)–(2) (in interpreting MATA, courts should "be guided by the interpretation given by the federal courts" to the federal antitrust statutes); *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 279 n.2 (4th Cir. 2012) ("resolution of [MATA] claims is subsumed in the Sherman Act analysis."). Those claims therefore fail for the same reasons as the federal claims.

## VI.    Plaintiffs Fail to State a WCPA Claim (Count 5)

Plaintiffs fail to plead any violation of WCPA. RCW §19.86.020. To state a claim, a plaintiff must plead "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co.*, 204 P.3d 885, 889 (Wash. 2009). Plaintiffs fail to plead at least four of these elements.

### A.    Plaintiffs Do Not Plead Any Unfair or Deceptive Act

"A practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits'" to consumers or to competition. *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 930–31 (W.D. Wash. 2024) (citation omitted), *amended by* 796 F. Supp. 3d 740 (W.D. Wash. 2025). A deceptive act is "'a representation, omission or practice that is likely to mislead' a reasonable consumer." *Zulily, LLC v. Amazon.com, Inc.*, 761 F. Supp. 3d 1368, 1393–94 (W.D. Wash. 2024) (citation omitted). Whether an act is unfair or deceptive may be decided as a matter of law on a motion to dismiss. *See Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 648 (Wash. 2024).

Plaintiffs allege that Zillow (1) "deceptively" "coerc[es] agents and brokerages to steer their clients to ZHL"; (2) "deceptively mak[es] misrepresentations or material omissions" about Preferred by "fail[ing] to disclose" that "steering clients to ZHL" or "purchas[ing] the FUB product" would be requirements; (3) "pressur[es]" agents to "compromise [their] abilities to

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-17-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

adhere to their statutory duties" by "refer[ring] clients to ZHL," "divulge" and "view confidential" client information, and "give false or misleading information to clients or prospective clients"; and (4) violates the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. §2607(a). ACAC ¶¶129–34. None of these allegations establish unfair practices as a matter of law.

First, Plaintiffs nowhere allege that encouraging a subset of consumers to obtain free and non-binding ZHL pre-approval letters causes "substantial injury" to Plaintiffs or consumers, let alone an injury that cannot be avoided. *Shields*, 741 F. Supp. 3d at 931. Nor do Plaintiffs allege that a pre-approval letter adds any costs or obligates consumers to use ZHL's services. To the contrary, helping consumers learn more about their buying power is more beneficial than injurious to competition. *See, e.g.*, Areeda & Hovenkamp ¶1423(c).

Second, Plaintiffs offer no factual allegations regarding why any information agents allegedly "divulge" or "view" is confidential vis-à-vis Zillow or ZHL, let alone how that alleged conduct causes substantial injury to anyone. ACAC ¶133. To the extent Plaintiffs assert the confidential information is that of their clients, Plaintiffs lack Article III standing because they have no legally protected interest in, and have not been injured by, any disclosure of third parties' information. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (plaintiff must show injury-in-fact from an invasion of a "legally protected interest" that is "concrete and particularized" (citation omitted)).

Third, Plaintiffs' allegations regarding Zillow's "deception" are too conclusory because they fail to plead any specific representations by Zillow. *See Zulily, LLC*, 761 F. Supp. 3d at 1393–94. Plaintiffs allege no representation by Zillow that it would never implement FUB-related requirements or otherwise change Preferred's program terms. Indeed, Dupuis and SM had over three months' notice of the new FUB policy change prior to its implementation—thus contradicting the notion that Zillow "failed to disclose" this requirement. *See* ACAC ¶46 (Fig. 7) (Zillow notified Plaintiffs on May 7 that the FUB policy would go into effect by September 1).

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-18-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Likewise, Plaintiffs vaguely reference "advice" by Zillow to "give false or misleading information to clients" but fail to allege that any specific misinformation was actually conveyed to consumers because "Ms. Dupuis and her team did not heed" that advice. *Id.* ¶¶50,133.[1]

Fourth, Plaintiffs' effort to import an alleged RESPA violation fails in multiple respects. Critically, Plaintiffs lack RESPA and Article III standing as they do not allege they paid for a mortgage settlement service or the "unnecessarily high settlement charges" that RESPA seeks to prevent. 12 U.S.C. §2601(a); *see also* 12 U.S.C. §2607(d)(2) (injury occurs to the person "charged for the settlement service"); *Spokeo*, 578 U.S. at 341 ("[S]tanding requires a concrete injury even in the context of a statutory violation."). Plaintiffs also fail to allege the "actual referral" required to state a claim. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015). Indeed, no Plaintiff alleges they ever encouraged a buyer to obtain a ZHL pre-approval *letter*—let alone an actual loan—and Dupuis and SM expressly plead they "refused to steer clients to ZHL." ACAC ¶48. Similarly, Plaintiffs do not identify a single consumer who obtained a requisite "federally regulated mortgage loan" as a result of any such "referral." 12 U.S.C. §2607(a), (b).[2] In fact, Plaintiffs admit Zillow "has a real estate brokerage license in all 50 states," ACAC ¶36, such that Zillow's conduct falls within §2607(c)(3)'s safe harbor for "payments [made] pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers." Thus, Plaintiffs fail to plead a predicate RESPA violation, dooming this WCPA theory. *See, e.g.*, *Russell v. WADOT Cap., Inc.*, 2024 WL

[1] SM, Graham and Alvarez do not allege personally purchasing FUB or referring clients to ZHL, so they cannot have been deceived by any statements on those issues.

[2] Plaintiffs also fail to allege a "settlement service" or the "referral" thereof. *See Bushbeck v. Chi. Title Ins. Co.*, 632 F. Supp. 2d 1036, 1040 (W.D. Wash. 2008) (Robart, J.) (settlement services "apply only to *costs payable* at or before settlement." (emphasis added)); *see also* 12 C.F.R. §1024(f)(1)–(2) (under RESPA's implementing regulation, a "referral" must involve a settlement service that the consumer pays for). As Plaintiffs admit, Preferred Agents are merely expected to meet targets for free, non-binding ZHL pre-approval letters, not home loan sales. *See* ACAC ¶41 (Fig.6).

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-19-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

4451541, at *22 (W.D. Wash. Oct. 9, 2024) (Robart, J.) (granting summary judgment of WCPA claim where plaintiff failed to establish underlying RESPA violation).

Plaintiffs thus fail to plead an unfair or deceptive practice.

**B.    Plaintiffs' Alleged Breaches of Professional Duties Do Not Occur in Trade or Commerce**

Plaintiffs' WCPA claim is also defective because it is directed at "the substantive quality of services provided" by licensed professionals, which falls "outside the confines of 'trade and commerce.'" *Parisien v. Eighty S. Jackson Condo. Ass'n*, 34 Wash. App. 2d 1041, 2025 WL 1341658, at *31, *34 (May 8, 2025) (affirming summary judgment of WCPA claim directed at real estate broker for failure to disclose plumbing leak), *as amended on denial of reconsideration* (July 17, 2025). Here, Plaintiffs' core theory is that Zillow is "compromis[ing] agents' abilities to adhere to their statutory duties," thus affecting the quality-of-service agents deliver to their clients. ACAC ¶¶131–32. That is insufficient to state a WCPA claim as a matter of law.

**C.    Plaintiffs Do Not Plead Compensable Injury or Proximate Cause**

Plaintiffs fail to plead a causal link between the allegedly unfair practices and their purported injury, reduced connections from Zillow or their voluntary decisions to change brokerages. *See id.* ¶135. Plaintiffs may only recover "for injuries to their business or property that were proximately caused by a defendant's unfair or deceptive practices." *Stone v. Aspen Dental Mgmt., Inc.*, 2019 WL 13207544, at *4 (E.D. Wash. Sept. 13, 2019). Thus, the allegations must "support a causal link" between the unfair practice and the ultimate injury, *Mundle v. Doxo, Inc.*, 2025 WL 1126646, at *6 (W.D. Wash. Apr. 16, 2025), such that the latter "would not have happened" without the former, *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007) (citation omitted).

Plaintiffs' allegations reflect that their alleged injuries were caused *not* by any unfair or deceptive practice, but rather by their own independent conduct. Indeed, Plaintiffs do not allege they suffered *any injury* from encouraging clients to obtain ZHL pre-approvals, communicating

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-20-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

allegedly deceptive information, or purportedly mishandling confidential information. As such, Plaintiffs fail to demonstrate a causal link between Zillow's alleged conduct and a compensable injury, requiring dismissal.

## VII.    <u>Plaintiffs Fail to State a UTPA Claim (Count 9)</u>

Plaintiffs' UTPA claim is facially defective and should be dismissed.

### A.    **Plaintiffs' UTPA Claim is Time-Barred**

Preliminarily, the UTPA claim is untimely because "[a]ctions . . . must be commenced within one year after the discovery of the unlawful method, act or practice." Or. Rev. Stat. ("ORS") §646.638(6). "The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct." *Morris v. Dental Care Today, P.C.*, 473 P.3d 1137, 1139 (Or. Ct. App. 2020).

Alvarez alleges she "began receiving pressure to steer clients to ZHL sometime in 2024." ACAC ¶70. She further describes an example of this so-called pressure occurring around May 8, 2024. *Id*. ¶72. Alvarez was thus aware of the allegedly unlawful conduct no later than May 2024, *id*. ¶¶73,76, yet did not bring her UTPA claim until May 4, 2026—nearly two years later, *id*. ¶47. Her UTPA claim therefore must be dismissed as time-barred. *See Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 977–78 (D. Or. 2016) (dismissing UTPA claim where allegedly violative foreclosure actions "terminated well before the one-year statute of limitations period"); *see also Easterbrook v. LinkedIn Corp.*, 2023 WL 3022497, at *3 (D. Or. Apr. 20, 2023) (dismissing UTPA claim where "Plaintiff knew or should have known of LinkedIn's allegedly unlawful conduct over one year before she filed her Complaint").

### B.    **Plaintiffs Do Not Plead the Elements of a UTPA Claim**

Even if timely, Alvarez fails to plead a plausible UTPA claim. A UTPA plaintiff must plead (1) the defendant committed an unlawful trade practice as enumerated in ORS §646.608; (2) "an ascertainable loss of money or property"; and (3) causation. *Bohr v. Tillamook Cnty. Creamery Ass'n*, 567 P.3d 413, 416 (Or. 2025). Alvarez fails to allege all three elements.

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-21-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

No Unlawful Practice. All of Alvarez's alleged unlawful practices fail.

First, the Amended Complaint fails to plead a violation of ORS §646.608(1)(L) with particularity, as required by Fed. R. Civ. P. 9(b) for claims grounded in fraud. *See ESHA Rsch., LLC v. RLH Assets, LLC*, 2025 WL 2697107, at *8 (D. Or. Sept. 22, 2025) (plaintiff's allegation that defendant made "false and misleading representations and omissions" that had a "tendency to confuse and deceive" were too conclusory to satisfy Rule 9(b)). It nowhere alleges any specific false and misleading representations by Zillow—let alone when, by whom, and to whom—in connection with "submitting names of potential customers." ORS §646.608(1)(L).

Second, Alvarez fails to state a claim under subsection (1)(o). It is inapplicable because Plaintiffs do not allege that Zillow offered "a rebate or discount or otherwise pays or offers to pay value" dependent on a future event after a "transaction." *Id*. Rather, Plaintiffs have alleged only that they participated in the Preferred program and a condition of remaining in that program was obtaining ZHL pre-approvals. *See* ACAC ¶71. There was no "transaction" nor "discount" contingent on events following a transaction.

Third, Alvarez's effort to import a violation of RESPA via subsection (1)(u) fails for the same reasons it fails under the WCPA. *See supra* Section VI.A.

No Injury. Alvarez fails to allege any ascertainable loss of money or property flowing from a deceptive practice. *See* ACAC ¶¶163–68 (lacking allegations). To the extent her purported loss is a reduction in Zillow connections, Alvarez does not allege that she personally experienced any reduction at all. *Id*. ¶¶69–79. Moreover, any expenses Alvarez incurred by voluntarily moving to a brokerage that does not work with Zillow were not caused by any deceptive practice and thus not cognizable. *See id*. ¶79; *see also Paul v. Providence Health Sys.-Or.*, 240 P.3d 1110, 1122 (Or. Ct. App. 2010) (no causation where "plaintiffs' complaint allege[d] out-of-pocket expenses to *prevent* a potential loss of money or property").

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-22-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

## VIII.    <u>Plaintiffs' Unjust Enrichment Claims Fail (Counts 6, 8, and 10)</u>

Plaintiffs do not state a claim for unjust enrichment under Washington, Maryland, or Oregon state law.

First, Plaintiffs' unjust enrichment claims are barred because they are parties to valid contracts—either in their individual capacities or through their brokerages—with Zillow that cover the terms of their participation in the Preferred program. *See* ACAC ¶9. Plaintiffs cannot maintain unjust enrichment claims based on issues covered by a legally enforceable contract. *See, e.g.*, *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943) (parties to a "valid express contract" are precluded from "bring[ing] an action . . . in contravention of the express contract."); *Schmitz v. Verdad Asset Mgmt., LLC*, 2026 WL 1146873, at *4 (4th Cir. Apr. 28, 2026) (unjust enrichment claims "cannot be asserted where an express contract defining the rights and remedies of the parties exists." (citation omitted)); *Sublimity Harvest Found. v. Bleacher Builders Inc.*, 751 F. Supp. 3d 1121, 1123 (D. Or. 2024) (dismissing unjust enrichment claim where "a valid and legally enforceable contract exist[ed] between" the parties).

Second, Plaintiffs fail to allege that they conferred a benefit upon Zillow, as required under Washington and Maryland state law. *Young v. Young*, 164 Wash. 2d 477, 484–85 (2008) (unjust enrichment claim requires plaintiff to confer a benefit upon defendant); *Hill v. Cross Cnty. Settlements, LLC*, 402 Md. 281, 295 (2007) (same). In fact, Dupuis and SM concede they have *not* conferred a benefit upon Zillow because they "refused to steer clients towards ZHL," ACAC ¶48, and Graham does not allege he ever purchased FUB or encouraged a client to obtain a ZHL pre-approval.

Plaintiffs also do not allege any inequitable circumstances. For one, Plaintiffs' unjust enrichment claims arise out of the same conduct alleged in their antitrust claims. *See id.* ¶¶142,156,171. However, Plaintiffs fail to plead their underlying antitrust claims, which is fatal to their allegations that Zillow realized any unjust or inequitable "benefits" under Washington law. *See Lubic v. Fid. Nat'l Fin., Inc.*, 2009 WL 2160777, at *6 (W.D. Wash. July 20, 2009)

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-23-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

(dismissing unjust enrichment claims "based on the existence of" insufficiently pleaded antitrust claims). The failure to plausibly allege underlying unlawful conduct also excludes Plaintiffs' allegations from a "recognized grounds for imposing liability," as required under Oregon law to maintain an unjust enrichment claim. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 127–28 (2017); *see McAllister Constr. Co. v. Liu*, 343 Or. App. 53, 62 (2025) (reversing summary judgment on unjust enrichment where there was "no indication that defendant's conduct was fraudulent or otherwise illegal").

If anything, Plaintiffs' own allegations reflect an equitable exchange of value. *See Young*, 164 Wash. 2d at 484–85 (plaintiff must show that defendant's retention of benefit without payment of its value was inequitable); *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012) (plaintiff failed to plead defendant's inequitable retention of benefit, where the only benefit plaintiff allegedly conferred was "the value of his mortgage payments and interest, which were conferred in exchange for his home"). Here, Plaintiffs concede that Zillow provided them with valuable connections to prospective clients, for which Plaintiffs pay a "referral fee" after closing a sale, ACAC ¶¶29–30, thus reflecting an equitable exchange of value.

Accordingly, Plaintiffs fail to plead unjust enrichment as a matter of law.

## IX.    The Amended Complaint Should be Dismissed with Prejudice

Zillow's motion to dismiss outlined all of the deficiencies in the original Complaint, yet Plaintiffs' attempt to amend has not remedied them. Courts treat "repeated failure to cure deficiencies" and "futility of amendment" as justifications for dismissal with prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Both are present here. With respect to the antitrust and WCPA claims, the ACAC fails to cure the defects Zillow previously identified. *See generally* Dkt. 19; *see also Somers v. Apple, Inc.*, 729 F.3d 953, 959, 967 (9th Cir. 2013) (affirming district court's dismissal of antitrust claims with prejudice where plaintiff failed to correct "deficiencies" in the prior complaint). Further amendment would be "futile." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("further amendment would be futile" where plaintiff

DEFENDANTS' MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-24-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

had opportunity to cure defects). Further amendment of Plaintiffs' state law claims would also be futile because, as described above, the Oregon UTPA claim is time-barred and Plaintiffs' own allegations foreclose the remaining claims as a matter of law.

**CONCLUSION**

For the foregoing reasons, Zillow respectfully requests the Court dismiss the entire Amended Class Action Complaint with prejudice.

Dated: June 1, 2026

I certify that this memorandum contains 8,342 words, in compliance with the Local Civil Rules.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Nicholas R. Sidney*
Nicholas R. Sidney, WSBA #54982
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:   (206) 883-2500
Email: nsidney@wsgr.com

Beau W. Buffier (*pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bbuffier@wsgr.com

Bonnie Lau (*pro hac vice*)
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: blau@wsgr.com

*Attorneys for Zillow Group, Inc., Zillow, Inc., Zillow Home Loans, LLC, Zillow Homes, Inc., and Zillow Listing Services, Inc.*