The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

STEPHANIE M. DUPUIS, SOUND MUSIC I INC., BRIAN GRAHAM, AND ANNA ALVAREZ, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ZILLOW GROUP, INC., ZILLOW, INC., ZILLOW HOME LOANS, LLC, ZILLOW HOMES, INC., and ZILLOW LISTING SERVICES, INC.

Defendants.

No. 3:26-cv-05049-JLR

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

NOTED FOR MOTION: JULY 13, 2026

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO 3-26-cv-05049-JLR)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................................... 1

III.    LEGAL STANDARD .................................................................................................. 3

IV.     ARGUMENT .............................................................................................................. 4

        A.      Zillow's Motion Should Be Denied on Plaintiffs' Federal Antitrust
                Claims .............................................................................................................. 4

                1.      Plaintiffs Adequately Plead Product Markets. ....................................... 4

                        a.      Zillow Mischaracterizes the Markets Alleged. ........................... 4

                        b.      Plaintiffs Correctly Define the Market's Scope. ......................... 5

                2.      Plaintiffs Adequately Plead a Tying Claim. .......................................... 6

                        a.      Plaintiffs Have Standing. ............................................................ 6

                        b.      The Elements are Satisfied. ......................................................... 7

                3.      Plaintiffs Plausibly Plead Unreasonable Restraint. ............................... 9

                        a.      An agreement exists. .................................................................. 10

                        b.      It imposes an anticompetitive restraint on trade. ...................... 10

                        c.      The restraint is within the relevant market. .............................. 10

                        d.      This scheme affects interstate commerce. ................................. 11

                4.      Plaintiffs Adequately Allege Abuse of Monopoly Power. ................... 11

        B.      Plaintiffs' State-Law Claims Should Proceed. ................................................ 14

                1.      Plaintiffs' State-Law Antitrust Claims Survive. .................................. 14

                2.      The Washington Consumer Protection Act ("WCPA")
                        Claim Is Adequately Pled. .................................................................... 15

                        a.      Plaintiffs Allege Unfair and Deceptive Acts or
                                Practices. ................................................................................... 15

                        b.      Zillow's Conduct Occurs in Trade or Commerce. ..................... 17

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - i

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

c.     Plaintiffs Allege Injury and Causation.......................................... 18

3.     The Oregon Unlawful Trade Practices Act ("UTPA") Claim Is Adequately Pled. ..................................................................... 19

a.     The Claim is Not Time-Barred.................................................. 19

b.     Zillow's UTPA Arguments Fail. ............................................... 20

C.     Plaintiffs Sufficiently Plead Unjust Enrichment.................................................. 21

D.     Leave to Amend Would Not Be Futile. ............................................................. 23

V.     CONCLUSION ...................................................................................................... 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - ii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance v. APM Terminals Tacoma LLC*,
545 F. Supp. 3d 893 (W.D. Wash. 2021) ...........................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ............................................................................................................14

*Automated Sys. of Tacoma LLC v. Steris Corp.*,
2025 WL 3954022 (W.D. Wash. Mar. 19, 2025) ...............................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................3

*Bignold v. King Cnty.*,
399 P.2d 611 (Wash. 1965) .................................................................................................21

*Blewett v. Abbott Lab'ys*,
938 P.2d 842 (Wash. Ct. App. 1997) ..................................................................................15

*Bodin v. B. & L. Furniture Co.*,
601 P.2d 848 (1979) ............................................................................................................20

*Cascade Health Solutions v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ..............................................................................................11

*Clark v. Eddie Bauer LLC*,
532 P.3d 880 (2023) ............................................................................................................21

*Clark v. Eddie Bauer LLC*,
770 F. Supp. 3d 1271 (W.D. Wash. 2025) .................................................................... 19, 20

*Cnty. of Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*,
747 A.2d 600 (Md. 2000) ....................................................................................................22

*Compass, Inc. v. Zillow, Inc.*,
2026 WL 321084 (S.D.N.Y. Feb. 6, 2026)..................................................................*passim*

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025), *cert. denied,* 224 L. Ed. 2d 272 (Mar. 23,
2026) ................................................................................................................................12

*City of Portland ex rel. Donohue & Fleskes Corp. v. Hoffman Constr. Co.*,
596 P.2d 1305 (Or. 1979) ................................................................................................22

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ..........................................................................................12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ...........................................................................................................7

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ..............................................................................................7

*Fed. Trade Comm'n v. Zillow Grp., Inc.*,
2026 WL 1282879 (E.D. Va. May 6, 2026) ............................................................ 6, 9, 12

*Frias v. Asset Foreclosure Servs., Inc.*,
334 P.3d 529 (Wash. 2014) ..............................................................................................18

*Greenberg v. Amazon.com, Inc.*,
553 P.3d 626 (Wash. 2024) ................................................................................. 15, 17, 18

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (1986) ..........................................................................................................18

*Harris v. Cnty. of Orange*,
682 F.3d 1126 (9th Cir. 2012) ..........................................................................................23

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*,
627 F.2d 919 (9th Cir. 1980) ............................................................................................12

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
170 P.3d 10 (Wash. 2007) ................................................................................................19

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984) ................................................................................................................8

*Kaseberg v. Davis Wright Tremaine, LLP*,
265 P.3d 777 (Or. 2011) ...................................................................................................20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..........................................................................................21

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - iv

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Klem v. Wash. Mut. Bank*,
    295 P.3d 1179 (Wash. 2013) ................................................................................................18

*Kumar v. Gate Gourmet Inc.*,
    325 P.3d 193 (Wash. 2014) ..................................................................................................19

*Lambrix v. Tesla, Inc.*,
    737 F. Supp. 3d 822 (N.D. Cal. 2024)..................................................................................6

*Latham v. PWCC Marketplace, LLC*,
    2022 WL 226807 (D. Or. Jan. 25, 2022)..............................................................................21

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir.1993) ....................................................................................................6

*McConnell v. NLRB*,
    2026 WL 63446 (W.D. Wash. Jan. 8, 2026) ....................................................................3, 4

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .................................................................................................6

*Monsanto Co. v. Spray-Rite Services Corp.*,
    465 U.S. 752, 765 (1984) ....................................................................................................10

*Moore v. Jas. H. Matthews & Co.*,
    550 F.2d 1207 (9th Cir. 1977) ...............................................................................................5

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ......................................................................................4, 5, 8

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) ............................................................................................16, 18

*Parisien v. Eighty South Jackson Condo Ass'n*,
    2025 WL 1341658 (Wash. Ct. App. May 7, 2025)..............................................................18

*Paul v. Providence Health Systems-Or.*,
    240 P.3d 1110 (Or. Ct. App. 2010)......................................................................................21

*PBTM LLC v. Football Nw., LLC*,
    511 F. Supp. 3d 1158 (W.D. Wash. 2021) .............................................................................9

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
    32 F.4th 824 (9th Cir. 2022) ..................................................................................................9

*Rush v. Blackburn*,
    361 P.3d 217 (Wash. Ct. App. 2015) ...................................................................................17

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - v

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Short v. Battle Ground Sch. Dist.*,
   279 P.3d 902 (Wash. Ct. App. 2012) ...................................................................19

*Short v. Hyundai Motor Co.*,
   444 F. Supp. 3d 1267 (W.D. Wash. 2020) ...........................................................21

*Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*,
   131 F.3d 874 (10th Cir. 1997) ...............................................................................7

*Stephens v. Omni Ins. Co.*,
   159 P.3d 10 (Wash. Ct. App. 2007) .....................................................................18

*Sw. Sunsites, Inc. v. Fed. Trade Comm'n*,
   785 F.2d 1431 (9th Cir. 1986) .............................................................................16

*Synopsys, Inc. v. ATopTech, Inc.*,
   2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) .........................................................9

*Syufy Enters. v. Am. Multicinema, Inc.*,
   793 F.2d 990 (9th Cir. 1986) ...............................................................................12

*U.S. Steel Corp. v. Fortner Enters., Inc.*,
   429 U.S. 610 (1977) ...............................................................................................8

*United States v. Charlotte-Mecklenburg Hospital Authority*,
   248 F. Supp. 3d 720 (W.D.N.C. 2017)..................................................................11

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) .........................................................................................6, 12

*Univ. of Wash. v. Gov't Emps. Ins. Co.*,
   404 P.3d 559 (Wash. Ct. App. 2017) ...................................................................18

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) .............................................................................................14

*Viamedia, Inc. v. Comcast Corp.*,
   951 F.3d 429 (7th Cir. 2020) ...............................................................................13

*Zulily, LLC v. Amazon.com, Inc.*,
   761 F. Supp. 3d 1368 (W.D. Wash. 2024) ......................................................10, 11

**Statutes**

12 U.S.C. § 2607(a) ........................................................................................................17, 21

15 U.S.C. § 1.............................................................................................................*passim*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - vi

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

15 U.S.C. § 14.................................................................................................................15

Md. Code Ann., Com. Law § 11–204(a)(6) ...................................................................15

Md. Code Ann., Com. Law § 11-209(b)(2).....................................................................15

Or. Rev. Stat. §§ 646.608 *et seq.* .................................................................... 19, 20, 21

Or. Rev. Stat. § 646.638(6).............................................................................................19

RCW 19.86. ....................................................................................... 15, 17, 18, 21

RCW 18.86.040 ..............................................................................................................16

RCW 19.86.050 ..............................................................................................................15

RCW 18.86.060 ..............................................................................................................16

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................... 20, 21

Fed. R. Civ. P. 12(b)(6)....................................................................................................4

**Regulations**

12 C.F.R. § 1024.14(g)(v) ...............................................................................................17

Or. Admin. R. § 137-020-0805(5) ..................................................................................21

**Other Authorities**

Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 777a (2025)......................................................13

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.    INTRODUCTION

In an effort to grow its fledgling mortgage business and ensure it profits from the acquisition of an undesirable software product, Zillow has exceeded the bounds of lawful competition. This case concerns Zillow's efforts to coerce individual real estate agents nationwide to prioritize Zillow's unlawful goals above their own clients and independent businesses. Zillow uses its market power to force agents to buy software they do not want and to steer clients to Zillow's mortgage lending arm. Plaintiffs allege that these practices violate federal and state law. Zillow's Motion to Dismiss attempts to erect a series of barriers to prevent the adjudication of Plaintiffs' claims. None of these efforts withstand scrutiny, and the Court should deny Zillow's motion.

## II.    FACTUAL BACKGROUND

Zillow operates a multifaceted, anticompetitive scheme that harms both real estate agents and their clients. Zillow sells referrals of potential homebuyers who use its search platform to real estate agents through a program called Preferred (formerly "Flex"). Agents pay Zillow up to 40% of their commission on any resulting sale. Dkt. No. 27 ("Compl.") ¶¶ 29–31. Agents participate in this program because of Zillow's dominance of the market for real estate search, which provides by far the largest pool of potential referrals. Zillow operates the largest real estate search portal in the country, with approximately 61–64% of daily users—two to four times its nearest competitor. *Id.* ¶ 25. Zillow estimates that "81% [o]f all home buyers in the U.S. used Zillow as part of their homebuying journey" and "80% of U.S. residential real estate transactions involve agents who use at least one Zillow product." *Id.* ¶ 35. Thus, Zillow's referrals are a valuable—if not indispensable—source of agents' business.

But Zillow now imposes conditions on Preferred participants. Agents are pressured to steer clients to Zillow's mortgage lending subsidiary, Zillow Home Loans ("ZHL"). *See id.* ¶ 41. Preferred agents are also required to purchase another Zillow product, Customer Relation Management ("CRM") software Follow Up Boss ("FUB"), to manage their relationships with

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

referred clients, which also helps Zillow enforce its steering mandate. *See id.* ¶¶ 38–39, 46, 48. If agents fail to steer enough clients to ZHL, Zillow reduces their referrals or terminates them from Preferred. *Id.* ¶¶ 49, 51–52, 60–64, 70–72. Zillow admits the purpose of its steering scheme is to "accelerat[e] growth in our Mortgages revenue." *Id.* ¶ 40.

Plaintiffs and the class are Preferred participant real estate agents who suffered damages due to Zillow's coercive conduct. Stephanie Dupuis manages the Dupuis Team in Kitsap County and owns the Washington corporation Sound Music I, which employs or contracts with the Dupuis Team agents. *Id.* ¶¶ 15–16. In every metric *except* steering, the Dupuis Team excelled as a Zillow partner: ranked #4 nationwide on Zillow's criteria for client calls, they earned 2025 "Best of Zillow" recognition. *Id.* ¶ 44. Dupuis and her team joined Zillow's previous Premier program in 2014, and switched to Preferred in 2022. *Id.* ¶ 43. In 2025, Zillow changed the metrics by which the Dupuis Team was evaluated to incentivize steering clients to ZHL, by counting ZHL mortgage pre-approvals. *Id.* ¶ 45. Also in 2025, Zillow required Dupuis to purchase FUB, for approximately $500 per month, whereas she previously used a free system (then provided by Zillow) to manage referrals. *Id.* ¶ 46. Dupuis feels strongly that steering clients to Zillow's lending arm is improper. But when she refused to do so, Zillow threatened that her leads would be reduced, and in fact the leads she now receives are of diminished quality. *Id.* ¶¶ 48–49, 51–52, 55. As a result, she and her team have suffered financially, as every lost or diminished lead is a lost opportunity for income. *Id.* ¶ 56.

Plaintiff Brian Graham is based in Maryland and joined Preferred in 2025. *Id.* ¶ 58. Soon after joining, Graham met with a Zillow representative who flew from Seattle. When the representative described the steering requirement, Graham opined that it was unlawful. *Id.* ¶ 60. When the Zillow team at Graham's brokerage fell short of Zillow's steering quotas, brokerage management, due to Zillow's coercion, pushed Brian and his peers to increase the number of clients pre-approved for ZHL loans in order to restore access to referrals and avoid termination. *Id.* ¶¶ 62–66. Brian left the brokerage to avoid Zillow's coercion, incurring out of pocket costs,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

delays in completing client transactions, and the costs of rebuilding his business at a new brokerage. *Id.* ¶ 67.

Plaintiff Anna Alvarez is an Oregon resident who joined Preferred in 2021. *Id.* ¶¶ 68–69. Zillow's steering mandate caused Alvarez's brokerage to withhold leads from agents who lagged behind Zillow's quotas, in order to protect the team's access overall. *Id.* ¶ 71. When Alvarez's colleague told a Zillow representative that she informed clients of their right to consider alternative lenders—as is the industry norm—she was reprimanded. *Id.* ¶¶ 72, 75. Alvarez used FUB before it was purchased by Zillow, but grew concerned about how Zillow used FUB to track client data and claim commissions on unrelated transactions. *Id.* ¶¶ 76–78. Alvarez did not want to steer clients to ZHL, but refusing to do so would harm her colleagues because Zillow reduces referrals to the entire brokerage if anyone does not meet steering quotas. *Id.* ¶ 73. She too quit her brokerage to avoid Zillow's coercion, costing her months of lost income. *Id.* ¶ 79.

Plaintiffs, on behalf of themselves and the putative class, seek damages and injunctive relief under the Sherman Act and state antitrust and consumer protection laws, and disgorgement of Zillow's unjust enrichment. *Id.* ¶¶ 94–177.

## III.    LEGAL STANDARD

On a 12(b)(6) motion, all factual allegations in the complaint are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint does not need "heightened fact pleading of specifics" to overcome such a motion; rather, plaintiffs need only "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. At this stage, "the court construes the allegations in the complaint in the light most favorable to the nonmoving party" and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *McConnell v. NLRB*, 2026 WL 63446, at *2 (W.D. Wash. Jan. 8, 2026) (Robart, J.) (citation omitted). A complaint is facially plausible when it contains sufficient facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Id.* (citation omitted).

## IV.    ARGUMENT

**A.    Zillow's Motion Should Be Denied on Plaintiffs' Federal Antitrust Claims.**

**1.    Plaintiffs Adequately Plead Product Markets.**

Zillow misstates the applicable standard. In the Ninth Circuit, a motion to dismiss an antitrust complaint on market definition grounds must be denied "unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect." *Newcal Indus., Inc. v. Ikon Off. Sol.,* 513 F.3d 1038, 1045 (9th Cir. 2008). "[S]ince the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Id.* A market definition "must be a *product* market" and it "must encompass the product at issue as well as all economic substitutes for the product." *Id.* (emphasis in original).

**a.    Zillow Mischaracterizes the Markets Alleged.**

Plaintiffs define four distinct products implicated in Zillow's unlawful conduct, contrary to Zillow's mischaracterization of the complaint as pleading "at least 11 different 'markets.'" *See* Dkt. No. 30 (hereinafter, "Mot.") at 5. First is the market for real estate search, which Zillow dominates with between 61% and 64% of market share. Compl. ¶ 25. Zillow argues that Plaintiffs "inconsistently refer" to this market by using alternative phrasing in places (*see* Mot. at 5), but the Complaint is clear and there is no "fatal legal defect."

The second market is for referrals of prospective homebuyers to real estate agents, where Zillow's product is called Preferred. Zillow is among the largest sellers of such leads, and it derives power in this market from its dominance in real estate search. Compl. ¶¶ 27 & n.17, 95. The relationship is obvious: the leads Zillow sells are requests by prospective homebuyers using Zillow's search platform to be referred to an agent. That the majority of American homebuyers use Zillow's search platform means Zillow has many more referrals to sell than its competitors. *Id.* ¶¶ 35, 113. Even if the referrals market were considered a submarket of the market for real

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

estate search, Zillow's motion should be denied. *See Newcal,* 513 F.3d at 1045. Once more, Zillow's argument that slight differences in broadly synonymous terminology across the complaint invalidate the market definition fails.

Plaintiffs allege that Zillow ties its undesirable CRM software—FUB—to its desirable Preferred program. Compl. ¶¶ 4, 28. CRM systems are used to manage contacts with clients, and while there are many competing CRMs, Zillow requires that Preferred agents purchase FUB to manage Zillow referrals. *Id.* ¶¶ 46, 48. Zillow previously offered a different, free CRM system, the "Premier App." *Id.* ¶ 38. Zillow claims that FUB now "powers daily activity for more than 80% of the highest-volume teams in the country." *Id.* ¶ 4. Plaintiff Dupuis was told that she had to use FUB or else be terminated from Preferred. *Id.* ¶ 46. Likewise, Plaintiff Alvarez used FUB before it was purchased by Zillow, but despite becoming disillusioned with it after Zillow's acquisition, was forced by Zillow's tying to continue using it. *See id.* ¶ 76. Here again, the use of the term "market for CRM services" and the subsequent shorthand "CRM market" across the Complaint does not merit dismissal. *See* Mot. at 7.

Finally, there is the market for home mortgage lending. Zillow entered this market in 2018, and has tried to increase its market share by "driving adoption" of its Premier and Preferred programs, and then coercing participating agents to steer their clients to ZHL by threatening to reduce their referrals or terminate them if they do not. Compl. ¶¶ 28, 40.

While Zillow attempts to sow confusion, the markets identified in the Complaint are consistently and sufficiently defined.

### b.    Plaintiffs Correctly Define the Market's Scope.

Next, Zillow unpersuasively argues that Plaintiffs fail to plead relevant geographic markets. Mot. at 7–8. A geographic market is the "'area of effective competition' … where buyers can turn for alternative sources of supply." *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1218 (9th Cir. 1977) (citation omitted). Zillow's argument that its market should not be considered nationwide has recently been rejected by two other courts. *Compass, Inc. v. Zillow,*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 5

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Inc.*, 2026 WL 321084, at \*15 (S.D.N.Y. Feb. 6, 2026) (online real estate search market is national); *Fed. Trade Comm'n v. Zillow Grp., Inc.*, 2026 WL 1282879, at \*2 (E.D. Va. May 6, 2026) (dismissal on market definition grounds is not appropriate at the pleading stage because of the "fact-intensive nature of these claims"). The same applies here: Plaintiffs adequately plead that the closely related markets for real estate search and real estate referrals are nationwide in scope. Compl. ¶ 97.

That definition is also appropriate because Zillow implements its anticompetitive policies nationwide. *See Lambrix v. Tesla, Inc.*, 737 F. Supp. 3d 822, 842 (N.D. Cal. 2024) (rejecting Tesla's argument seeking local market definition for auto repair services, concluding that "Plaintiffs have plausibly alleged that [Tesla] implemented its policies on a nationwide level"); *United States v. Grinnell Corp.*, 384 U.S. 563, 575 (1966) (market for central station services was national because "the business of providing such a service is operated on a national level. There is national planning."). Here, the Complaint plausibly alleges that Zillow plans and implements its tying and steering schemes nationwide. *See* Compl. ¶¶ 29–41, 48–49, 51–52, 59–65, 70–75.

### 2. Plaintiffs Adequately Plead a Tying Claim.

#### a. Plaintiffs Have Standing.

Zillow first argues that three of four named plaintiffs in the Complaint lack standing because they are not direct purchasers. *See* Mot. at 8–9. But Zillow does not challenge Plaintiff Dupuis' standing.[1] In a case where multiple plaintiffs allege the same claim, "once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012) (quoting *Leonard v. Clark,* 12 F.3d 885, 888 (9th Cir.1993)). So even if Zillow's standing argument were accepted, it could not result in

---

[1] Plaintiff Dupuis alleges that "[a]fter Zillow acquired FUB and forced Ms. Dupuis and her team to move to FUB, she incurred costs of approximately \$500 per month to use FUB" Compl. ¶ 46. To clarify the allegation, Sound Music I is billed for the service, but Dupuis pays for it as the corporation's representative. One or both of Dupuis and Sound Music I is/are therefore a direct purchaser with standing.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 6

dismissal.

Moreover, the reality is more complex. Plaintiff Alvarez alleges that she was required by Zillow to use FUB to service Preferred/Flex referrals, and the Complaint alleges that Zillow requires all Preferred agents to use FUB, meaning that either they or their brokerages have to pay for it. *See* Compl. ¶¶ 46, 76–78; Mot. at 9. The antitrust injury occurs when the consumer of the tied product is "forced to forego his free choice among competitors," as is clearly alleged here. *See, e.g., Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc*., 131 F.3d 874, 889 (10th Cir. 1997). At this stage, the record is not yet developed as to how FUB costs are billed by Zillow or apportioned between agents and brokerages, and the fact issue of whether Alvarez and Graham are direct or indirect purchasers is premature to resolve at the pleading stage.[2]

### b.   The Elements are Satisfied.

Plaintiffs adequately plead that Zillow ties FUB to its referrals. "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461–62 (1992) (quotation omitted). "A tie can be unlawful pursuant to either a modified *per se* rule or the Rule of Reason." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 996–97 (9th Cir. 2023). "A tie is *per se* unlawful if (1) the defendant has market power in the tying product market, and (2) the 'tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market.'" *Id.* (quotation omitted). Plaintiffs have pled each of these elements.

Zillow first argues that Plaintiffs were not "force[d]" to purchase FUB. *See* Mot. at 9–10. Zillow only advances this argument for three of four plaintiffs, so it fails for the same reason as the standing argument. *See supra* at Section IV.A.2.a.  Further, Plaintiff Alvarez wanted to avoid using FUB but was told by her managing broker, based on Zillow's requirements, that FUB was

---

[2] This issue could be addressed at the class certification stage if necessary, such as by amending the class definitions to include subclasses for direct and indirect purchaser classes.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 7

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

mandatory. Compl. ¶ 76.[3]

Next, Zillow says Plaintiffs "fail to allege Zillow's market share in any viable tying product market." Mot. at 10. Not so. First, Zillow misstates what Plaintiffs must prove. Market power in the tying context is the power "to force a purchaser to do something that he would not do in a competitive market." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984). Courts look to "whether the seller has the power, within the market for the tying product, to raise prices or to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market" or "whether the seller has some advantage not shared by his competitors in the market for the tying product." *U.S. Steel Corp. v. Fortner Enters., Inc.*, 429 U.S. 610, 620 (1977). That is satisfied here: Zillow forced Plaintiffs to purchase and use FUB whether they wanted to or not, which would not have been possible without market power. *See* Compl. ¶¶ 45–46, 76.

Plaintiffs clearly allege market power in the tying product: Zillow is among the largest players in the market for real estate referrals, and it derives this power from its dominant 61–64% share of the real estate search market. Compl. ¶¶ 25, 95. Zillow argues that allegations about Zillow's market power in the search market are irrelevant (*see* Mot. at 10–11), but that defies common sense, as Zillow would have no leads to sell without visitors to its search platform, and its referral service would be much less desirable if it had less of the search visitors that constitute the pool of potential referrals.[4] *See* Compl. ¶¶ 3, 35, 43.

Zillow also argues that website visit metrics are "flawed proxies" for market share. Mot. at 10 (quoting *Compass*, 2026 WL 321084, at *18–20). But *Compass* only made findings as to Zillow's *monopoly* power, not whether Zillow holds *market* power, and Plaintiffs need only

---

[3] Zillow also argues that Plaintiff Alvarez cannot claim she was forced to use FUB because she began using it before Zillow purchased it. Mot., 10. But Alvarez became concerned about the way Zillow used FUB, Compl. ¶ 76, and but for Zillow's coercion, she could and would have stopped using FUB in favor of a different CRM.

[4] It is possible to conceive of referrals as a submarket of the search market, which would still be sufficient to defeat the Motion. *Newcal,* 513 F.3d at 1045.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 8

allege the latter for the Section 1 tying claim. *Compass* noted that the site-user metric "provides helpful insight into Zillow's comparative market position" and that audience share "is likewise sufficient to be suggestive of a competitor's market power." 2026 WL 321084, at *18. Moreover, *Compass* concerned a motion for a preliminary injunction—a higher standard than applicable here. By contrast, *FTC v. Zillow* held that there is sufficient evidence of Zillow's market power for a Sherman Act Section 1 claim to survive at the pleading stage. 2026 WL 1282879, at *2.

Zillow's argument that there are no anticompetitive harms fails too. Mot. at 11–12. Plaintiffs allege that Zillow forbids Preferred participants from using alternative CRMs, or Zillow "will disengage" them: "No exceptions will be made." Compl. ¶ 46. Plaintiffs must use *some* CRM, but would prefer to use an alternative. *See id.* That Plaintiff Dupuis uses another CRM for non-Zillow clients does not defeat her claim as Zillow suggests; if anything, it shows she would prefer to use a competing product if Zillow did not require FUB.[5] *Id.*; Mot. at 12.

Finally, the Court need not decide at this stage whether *per se* treatment or the rule of reason should apply. *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1178 (W.D. Wash. 2021). But if the Court believes the latter applies, dismissal would be premature because of the "fact-specific assessment" required. *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 839–840 (9th Cir. 2022).

### 3.    Plaintiffs Plausibly Plead Unreasonable Restraint.

Zillow argues that Plaintiffs' Section 1 claim should be dismissed because it does not fit neatly into one of the theories of liability it self-servingly identifies. Contrary to Zillow's suggestion, this claim is not identical to Plaintiffs' Count 1 tying claim. Nor is it pled as a conspiracy. *Contra* Mot. at 12–13. The Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To state a claim for an unreasonable restraint, a plaintiff must allege "(1) an agreement exists, (2)

---

[5] Zillow cites *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *8 (N.D. Cal. Aug. 7, 2015), where a claim was dismissed because "only that one customer purchased both products together." Mot. at 11. Here, the tie applies equally to the entire putative Class.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 9

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the agreement imposed an unreasonable restraint on trade (i.e., had an anticompetitive effect) under a rule of reason analysis, (3) the restraint was within the relevant market, and (4) it affected interstate commerce." *Zulily, LLC v. Amazon.com, Inc.*, 761 F. Supp. 3d 1368, 1387 (W.D. Wash. 2024). Those elements are satisfied.

### a.    An agreement exists.

Zillow contracts with agents and brokerages for the Preferred/Flex program through which Zillow sells client referrals. Compl. ¶¶ 29–30, 43, 58, 69. Then, Zillow coerces participants to steer clients to ZHL, including by pressuring brokerages to force employees' compliance. In *Monsanto Co. v. Spray-Rite Services Corp.,* the Supreme Court affirmed a jury verdict finding Section 1 liability where there was an agreement between a manufacturer and distributors. 465 U.S. 752, 765 (1984). When a distributor refused to adhere to price restrictions, Monsanto representatives informed the distributor's parent company, which forced the distributor into compliance. *Id.* Likewise here, Zillow pressures brokerages and team leads to force agents like Plaintiffs Alvarez and Graham into compliance with its steering mandate by threatening to cut off the flow of leads to the entire team. Compl. ¶¶ 59–66, 69–75.

### b.    It imposes an anticompetitive restraint on trade.

Agents are prevented from informing clients of competing lenders, even if they believe other lenders would better serve their clients, and are punished if they do so. *See* Compl. ¶ 75. Zillow imposes express quotas for steering clients to ZHL pre-approvals, and communicates to agents that they will be terminated from the program if they fail to meet these quotas. Compl. ¶¶ 41, 48–49, 51–52, 55, 60–66, 70–75. Ultimately, the scheme harms the agents, including lost business in the form of diminished leads for agents and teams, or lost jobs for agents who refuse to steer. Compl. ¶¶ 55-56, 63, 67, 71, 79. It also harms homebuyers when they are steered to less competitive ZHL loans.

### c.    The restraint is within the relevant market.

This restraint affects both the markets for referrals, by conditioning sale of those leads on

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

steering to ZHL, and the market for mortgage lending, by keeping information about competing lenders from consumers and attempting to increase ZHL's market share.[6]

Analogous conduct has been found unlawful in the healthcare industry, where courts have imposed Section 1 liability on health systems that steer patients to higher-priced services or to stay within their network. In *United States v. Charlotte-Mecklenburg Hospital Authority*, the court denied judgment on the pleadings on a Section 1 claim concerning a contract between a hospital and insurer that prohibited the insurer from informing patients of care options that could be cheaper. 248 F. Supp. 3d 720 (W.D.N.C. 2017). The complaint sufficiently alleged harms to consumers, and supracompetitive prices were taken as evidence of market power. *Id.* at 729, 731. Similar conduct has also been found to be an unlawful tie. In *Cascade Health Solutions v. PeaceHealth*, the Ninth Circuit reversed summary judgment on a tying claim, wherein a hospital attempted to force an insurance company to purchase primary, secondary, and tertiary services as a bundle, effectively steering patients away from competitors. 515 F.3d 883, 913, 915–16 (9th Cir. 2008).

### d.    This scheme affects interstate commerce.

Zillow's scheme is national in scope, emanating from its headquarters in Seattle. *See* Compl. ¶¶ 29–30. Zillow representatives impose coercive pressure on agents around the country both by flying from Seattle to meet with them in person and by communicating electronically by phone, email, or videoconference. *Id.* ¶¶ 50–52, 59. The losses agents suffer are likewise experienced by Plaintiffs and Class Members nationwide. *Id.* ¶¶ 46–47, 49, 55–56, 63, 67, 76, 79.

### 4.    Plaintiffs Adequately Allege Abuse of Monopoly Power.

To state a Section 2 claim, Plaintiffs must plead "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as

---

[6] To the extent there are any procompetitive aspects of Zillow's agreement, a motion to dismiss is not the posture to adjudicate them. *Zulily*, 761 F. Supp. 3d at 1389.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Grinnell*, 384 U.S. at 570–71. Both elements are satisfied.

*First*, Zillow has monopoly power in the real estate search market. Plaintiffs allege that Zillow charges supracompetitive prices for its referrals. Compl. ¶ 32 (alleging that "[b]y far, 25% is the most common rate," whereas Zillow charges 35–40%). A 40% commission split represents 60% more money for Zillow than a 25% commission would—a massively supracompetitive price, and direct evidence of monopoly power. *See CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1069–1070 (9th Cir. 2025), *cert. denied,* 224 L. Ed. 2d 272 (Mar. 23, 2026). Additionally, Plaintiffs plead indirect evidence that Zillow's share in the real estate search market is about 61–64%. Compl. ¶ 25. This range has been accepted as sufficient evidence of monopoly power. *See Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924–25 (9th Cir. 1980) (60–70 percent); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 n.5 (9th Cir. 2022) (65 percent). A share at the lower end of the range may support a finding of monopoly power where other factors exist, such as "highly fragmented competition" and burdens to enter the market. *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 995 (9th Cir. 1986). Here, Zillow boasts that it is two to four times larger than its nearest competitor, Compl. ¶ 25,[7] and it has repeatedly bought up its search competitors. *Id.* ¶ 26.

The *Compass* litigation does not support dismissal of the Section 2 claim. Discussing Zillow's market power, the court found that site visits were an "imperfect proxy to evaluate market share," noting that such metrics could under- or overstate Zillow's true market share. *Compass*, 2026 WL 321084, at *18–20. Assuming that Zillow's share fell somewhere between 50 and 66 percent, the court evaluated whether other factors supported an inference of monopoly power, and found that "the large amount of capital required to seriously compete in this market does seem to erect a significant barrier to market entry," but discounted the impact of network

---

[7] The Court may also take notice of the *FTC v. Zillow* litigation, where Zillow is alleged to have paid $100 million to competitor Redfin, in exchange for Redfin exiting the market for multifamily rental advertising. 2026 WL 1282879, at *1.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 12

effects and brand recognition. *Id.* at *20. Ultimately, the court held that Compass failed to demonstrate likelihood of success on the merits of its Section 2 claim—a different and higher burden than Plaintiffs face here. *Id.* at *21. Given the indicators of monopoly power that exist here, dismissal at the pleading stage without developing the record through discovery would be inappropriate.

*Second*, Zillow maintains and abuses its monopoly power in a manner far beyond normal business acumen. Zillow conditions sale of its referrals on agents' steering clients to ZHL, Compl. ¶¶ 40–41, 45–46, 48–49, 51–52, 60–61, 70, 75; and expressly threatens agents that they will be terminated from the program or have their leads reduced if they fail to meet its steering quotas, causing financial harm to those agents, *id*. ¶¶ 51–52, 55–56, 60, 62–67, 71, 79.

The Court could plausibly conceive of this conduct in a few ways. For one, the Court could evaluate conditioning Zillow's sale of the leads derived from its dominant search platform on obtaining a certain number of ZHL loan pre-approvals as a kind of tying. Phillip Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application (CCH)*. 777a (2025) (explaining that "when the monopolist bundles the product in which it has monopoly power" courts "dispense with the technical requirements that attach only to per se ties" and instead embrace "the more open-ended §2 inquiry whether a practice injures competition unnecessarily").

For example, in *Viamedia, Inc. v. Comcast Corp.*, the Seventh Circuit reversed summary judgment on a Section 2 claim. Comcast, which held a monopoly in cable interconnects and advertising representation, sought to prevent Viamedia from selling advertising services by cutting off Viamedia's access to the interconnect, making Viamedia's clients purchase both services from Comcast. 951 F.3d 429, 442–49 (7th Cir. 2020). The court found that Comcast's conduct could be considered unlawful as tying *or* as refusal to deal, and that "[c]onduct that can harm competition may fit into more than one of these court-devised categories." *Id.* at 453. Specifically, Comcast cutting off Viamedia's access to a service in which Comcast held a

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

monopoly could constitute tying. *Id.* at 466. Noting that "this is not a typical bundling case" and "great effort has been made to parse whether Comcast's conduct satisfies some platonic ideal of tying conduct," the court "walk[ed] through the tying factors at issue" and found that a fact question existed. *Id.* at 469, 471. Here, Zillow's conditioning its sale of client referrals—clients who entered the referral pool by using the search platform at the center of Zillow's monopoly power—to the coerced steering of those clients into ZHL mortgages could constitute an unlawful tying arrangement.

Another way to conceive of this conduct is as a conditional refusal to deal, where Zillow will only deal with partners who advance its steering scheme. In *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, the Supreme Court found a Section 2 violation when the defendant, who owned one of four neighboring ski areas, abruptly stopped selling a joint pass with its neighbors as it had done for years, unless the others agreed to pay defendant a larger revenue share. 472 U.S. 585, 591–94 (1985). This conduct violated Section 2 because "[t]he unilateral termination of a voluntary (*and thus presumably profitable*) course of dealing suggested a willingness to forsake short-term profits to achieve an anticompetitive end." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko*, *LLP*, 540 U.S. 398, 409 (2004) (emphasis in original); *see also, e.g.*, *Viamedia,* 951 F.3d at 435. Here, Zillow had a mutually beneficial course of dealing with Plaintiffs, which it threatened to terminate unless they engaged in steering designed to grow Zillow's mortgage lending business. *See* Compl. ¶¶ 43–44, 51–52, 64, 69–70. Even if Zillow's relationships with Plaintiffs and class members are lucrative because of the commission splits Zillow collects on completed home sales to referred clients, Zillow would reduce Plaintiffs' and class members' leads or terminate them from Preferred, foregoing those commissions, to serve the goal of growing ZHL. In fact, Zillow has in fact done so repeatedly.

**B.      Plaintiffs' State-Law Claims Should Proceed.**

**1.        Plaintiffs' State-Law Antitrust Claims Survive.**

Plaintiffs' state antitrust claims do not depend on the Court's analysis of their federal

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 14

claims. Mot. at 16–17. There are material differences between the statutes. Washington's and Maryland's equivalents to the Clayton Act encompass both goods and services (whereas the federal statute covers only commodities), providing an alternative cause of action for Plaintiffs' tying claim. *Compare* RCW 19.86.050 *and* Md. Code Ann., Com. Law § 11–204(a)(6), *with* 15 U.S.C. § 14; *see also Blewett v. Abbott Lab'ys*, 938 P.2d 842, 846 (Wash. Ct. App. 1997) (Washington courts may diverge from federal interpretation if there is a "reason rooted in our own statutes"). Further, Maryland has repealed the *Illinois Brick* doctrine. Md. Code Ann., Com. Law § 11-209(b)(2). Therefore, if Zillow prevails on its argument that Plaintiff Graham cannot bring a Sherman Act tying claim for damages because he is an indirect purchaser, Mot. at 9, he could still have such a claim under Maryland law.

**2.      The Washington Consumer Protection Act ("WCPA") Claim Is Adequately Pled.**

**a.      Plaintiffs Allege Unfair and Deceptive Acts or Practices.**

From the start, Zillow misstates the legal standard for unfair acts. Mot. at 17. The Washington Supreme Court recently emphasized the WCPA's breadth:

> Unlike the FTC Act, our CPA simply has no limitations on the range of effect the defendant's conduct must have for a plaintiff to state a cognizable claim to relief. Rather, in cases where a plaintiff alleges that an act or practice is unfair, but that act or practice is not regulated by statute, the plaintiff needs to show only that the defendant's conduct is in violation of public interest. Additionally, we go further to conclude the application of our CPA is not dependent on the federal *S&H* criteria and that there may even be additional ways that a plaintiff can show that act or practice that is unregulated by statute is unfair. Accordingly, plaintiffs may satisfy the first element of a private CPA claim—an unfair or deceptive act—in a number of ways.

*Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 640–41 (Wash. 2024) (citations omitted). While the "substantial injury" test recited by Zillow can be applied, *see id.* at 640, it is not dispositive. Thus, even if Zillow's arguments about "substantial injury" are right (and they are not), Zillow has waived any other arguments, and Plaintiffs' claim survives. Compl. ¶¶ 129, 131–34, 137.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 15

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Still, Zillow's arguments fail. Zillow argues that coercing agents to steer consumers to ZHL does not cause substantial injury (Mot. at 18), but Plaintiffs allege that they suffered "actual damages," such as "lost business and terminated participation in valuable Zillow programs when they were penalized or retaliated against" for refusing to steer. Compl. ¶ 135. Zillow has "repeated the same course of conduct" with each of them, and "will continue to do so with Plaintiffs and Class Members, affecting many consumers." *Id.* ¶ 137. Plaintiffs cannot avoid Zillow's conduct while participating in Preferred because if they don't meet Zillow's steering quotas, they are terminated from Preferred or lose the referrals that make it desirable in the first place. *Id.* ¶ 136.

Zillow also misapprehends Plaintiffs' allegations about confidential information. Mot. at 18 (citing Compl. ¶ 133). As discussed above, substantial injury is not required to show unfair acts. Instead, Plaintiffs allege that an agent owes a "dut[y] of confidentiality to their clients," which is unfairly threatened by Zillow's practices. Compl. ¶¶ 131–32 (citing RCW 18.86.040–060). FUB provides Zillow "unfettered access to agents' and brokerage teams' data in FUB, allowing Zillow to track a team's communications with leads, and to track how a team performs on Zillow's metrics in terms of steering clients to ZHL." *Id.* ¶ 39; *see also id.* ¶¶ 46, 76. Worse, "FUB also allows Zillow's lenders direct access to buyer contact information," *id.*, and Zillow directs agents to share client information with ZHL. *Id.* ¶ 47.

Next, contrary to Zillow's assertion (Mot. at 18–19), Plaintiffs plead multiple deceptive omissions by Zillow. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)). Specifically, Plaintiffs allege that Zillow failed to disclose when they joined Preferred that Zillow would require them to steer homebuyers to ZHL and purchase FUB—material conditions governing the Preferred program. Compl. ¶¶ 43–46, 58–61, 69–70, 76–77, 130.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Finally, Plaintiffs allege that Zillow violates the WCPA because its steering conduct violates the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a). Compl. ¶ 134. Zillow responds that Plaintiffs lack standing for a claim under RESPA because they are not homebuyers (Mot. at 19). That is a red herring: Plaintiffs do not allege a claim under RESPA. Rather, Plaintiffs allege that it is an unfair business practice under the WCPA for Zillow to structure Preferred in a way that violates RESPA. *See* Compl. ¶ 134; *Rush v. Blackburn*, 361 P.3d 217, 225 n.7 (Wash. Ct. App. 2015) (noting the Washington Supreme Court "recently decided a number of cases wherein it determined that acts or practices violating applicable statutes constituted unfair or deceptive practices"); *Greenberg*, 553 P.3d at 641 (holding unfairness can be shown "in a number of ways").

Plus, Zillow's conduct is not exempt under RESPA. The statute provides "safe harbors" from its broad prohibition on kickbacks, 12 U.S.C. § 2607(a), and Zillow argues that its conduct falls under one such provision: § 2607(c)(3), which exempts agreements between agents and brokerages. Mot. at 19. But although Zillow is a registered broker, the safe harbor does not apply to the conduct alleged here. Section 2607(c)(3) "refers only to fee divisions within real estate brokerage arrangements when all parties are acting in a real estate brokerage capacity, and has no applicability to any fee arrangements between real estate brokers and mortgage brokers or between mortgage brokers." 12 C.F.R. § 1024.14(g)(v). ZHL is a licensed mortgage broker in 49 states, and it is too cute by half for Zillow to lean on its simultaneous registration as a real estate broker to exempt its lending arm from a RESPA provision that exempts only real estate brokers. *See* Compl. ¶ 37.

### b.    Zillow's Conduct Occurs in Trade or Commerce.

Zillow fleetingly, and implausibly, argues that Plaintiffs' claim fails because "it is directed at 'the substantive quality of services provided' by licensed professionals, which falls 'outside the confines of "trade and commerce."'" Mot. at 20 (citation omitted). To be clear, Plaintiffs assert a claim for Zillow's unfair and deceptive acts and practices, not any claim

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

against real estate agents for the quality of their professional services. *Parisien v. Eighty South Jackson Condo Ass'n* is thus distinguishable. There, a homeowner alleged a WCPA claim against her real estate broker—facts that are not analogous here. 2025 WL 1341658 (Wash. Ct. App. May 7, 2025). Additionally, Washington courts recognize that "the Legislature intended [trade or commerce] to be construed broadly," so any doubt should be resolved in favor of Plaintiffs. *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 22 (Wash. Ct. App. 2007) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (1986)).

### c.    Plaintiffs Allege Injury and Causation.

Zillow conflates its arguments regarding injury and causation, both of which fail. Mot. at 20–21. First, Zillow argues that Plaintiffs do not allege any injury. *Id.* at 20. A plaintiff must show "injury to plaintiff in his or her business or property." *Greenberg*, 553 P.3d at 638 (quoting *Klem v. Wash. Mut. Bank*, 295 P.3d 1179 (Wash. 2013)). "Injury to property or business is broadly construed and is not restricted to commercial or business injury." *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 404 P.3d 559, 571 (Wash. Ct. App. 2017) (citation omitted). "Even minimal injury is sufficient to meet the damages element of a CPA claim." *Id.* (citation omitted). Although there are certain exclusions related to personal injuries, "injury" is otherwise "relatively expansive." *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014) (citing *Panag*, 204 P.3d 885). Here, Plaintiffs allege multiple forms of cognizable injury, Compl. ¶ 135, including lost opportunity for sales, *id.* ¶¶ 49, 55–56, 63; pocketbook injury for paying for FUB directly or indirectly, *id.* ¶¶ 46, 76; lost earnings and other out-of-pocket costs while changing jobs, *id.* ¶¶ 67, 79; and staff training time wasted on Zillow's unlawful policies, *id.* ¶ 47.

Second, Zillow argues that "Plaintiffs fail to demonstrate a causal link between Zillow's alleged conduct and a compensable injury." Mot. at 21. "A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 18

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Here, Plaintiffs adequately plead causation: Zillow explicitly told Plaintiffs that the reason for losing leads or being terminated from Preferred was insufficient steering. Compl. ¶¶ 48–49, 51–52, 62–64, 71–72. Similarly, Zillow made it impossible to obtain or service referrals without purchasing FUB. *Id.* ¶¶ 46, 76–78. Zillow makes passing reference to "voluntary decisions to change brokerages," Mot. at 20, but this does not sever causation. The only way for Plaintiffs Alvarez and Graham to avoid one form of harm arising from Zillow's coercion was to voluntarily leave Preferred and change brokerages, but they still suffered another form of harm as a result of Zillow's practices. The conditions created by Zillow's coercive practices are not unlike an employee constructively discharged by intolerable working conditions, *cf. Short v. Battle Ground Sch. Dist.*, 279 P.3d 902, 912–13 (Wash. Ct. App. 2012), *disapproved on other grounds by Kumar v. Gate Gourmet Inc.*, 325 P.3d 193 (Wash. 2014).

### 3. The Oregon Unlawful Trade Practices Act ("UTPA") Claim Is Adequately Pled.

#### a. The Claim is Not Time-Barred.

Zillow argues that Plaintiff Alvarez's claim is time-barred because she first experienced pressure to steer clients to ZHL sometime in 2024. Mot. at 21. The UTPA incorporates a discovery rule: "[a]ctions brought under this section must be commenced within one year after the discovery of the unlawful method, act or practice." Or. Rev. Stat. § 646.638(6). As this Court explained, "[t]he UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct. The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Clark v. Eddie Bauer LLC*, 770 F. Supp. 3d 1271, 1275–76 (W.D. Wash. 2025) (citation omitted). This standard may be satisfied "when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists." *Kaseberg v. Davis Wright Tremaine, LLP*, 265 P.3d 777, 782 (Or. 2011). Moreover, "[a]pplication of the discovery rule *presents a factual question for determination by a jury* unless the only conclusion that a jury

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 19

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Clark*, 770 F. Supp. 3d at 1276 (quoting *Kaseberg*, 265 P.3d at 782).

Here, the allegations of the Complaint do not show that Alvarez reasonably knew or should have known that the claim existed from the moment she first experienced steering pressure. *Cf.* Compl. ¶¶ 70, 72. Her discovery came later, in December 2025, when she concluded that she needed to leave her brokerage. *See* Compl. ¶¶ 74, 79. The majority of her losses due to Zillow's coercive conduct occurred *after* she left the brokerage, at which point "her earnings were significantly impacted." *Id.* ¶ 79. Thus, she could not have understood the full extent of the harm, and all elements of her claim did not accrue, until after she left the brokerage. In circumstances like these, the question of when the claim accrued is a fact question, which should be resolved by a jury. *See, e.g.*, *Clark,* 770 F. Supp. 3d at 1276; *Bodin v. B. & L. Furniture Co.*, 601 P.2d 848, 850 (1979).

### b.    Zillow's UTPA Arguments Fail.

Zillow argues that Section 646.608(1)(o) does not apply because there was no "transaction" and no contingent "discount." Mot. at 22. But there was a "transaction" when Ms. Alvarez paid Zillow for client referrals. Compl. ¶ 69. And the statute includes "other value" alongside "discount." Or. Rev. Stat. § 646.608(1)(o). Here, the "other value" is an incentive: the opportunity to earn more or better leads from Zillow in the future, which Zillow conditions on ZHL steering. Compl. ¶¶ 49, 52.

Zillow also argues that Section 646.608(1)(L) is not pled with sufficient particularity under Federal Rule of Civil Procedure 9(b). Mot. at 22. Even if Rule 9(b) applies, the claim is sufficiently pled.[8] Zillow makes a material misrepresentation or omission when it engages

---

[8] Where Rule 9(b) applies, courts apply the elements of state law fraud. *See Latham v. PWCC Marketplace, LLC*, 2022 WL 226807, at \*2 (D. Or. Jan. 25, 2022) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)). This Court has held that "Rule 9(b)'s standard is relaxed in fraudulent omission cases." *Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1279 (W.D. Wash. 2020) (quotation omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Preferred agents like Plaintiff Alvarez without disclosing that they cannot obtain leads unless they steer clients to ZHL. *See* Compl. ¶¶ 69–70, 165. Other Plaintiffs and Class members likewise experienced steering pressure that was not disclosed in program terms, or were misled by Zillow representatives about the degree to which steering was a program requirement. *See id.* ¶¶ 45, 60, 69, 79.

Finally, Zillow argues that Section 646.608(1)(u) does not apply. Mot. at 22. This prong prohibits violation of any rule promulgated by the Oregon Attorney General. *See* Or. Rev. Stat. § 646.608(4). Here, an Oregon AG rule provides that RESPA violations also violate the UTPA, which, as with the WCPA, sustains the UTPA claim. Or. Admin. R. § 137-020-0805(5).[9]

Zillow further argues that Plaintiff Alvarez did not suffer injury. Mot. at 22. But she suffered injury in the form of lost leads and lost earnings when she quit her job to avoid Zillow's coercion. Compl. ¶ 79. *Paul v. Providence Health Systems-Or.* is inapposite, as it concerns money spent to prevent a future hypothetical loss—not, as alleged here, an actual loss. 240 P.3d 1110 (Or. Ct. App. 2010). Finally, in Oregon, ascertainable loss may be "'any determinable loss,' including loss that cannot be measured exactly; loss may be 'so small that the common law likely would reject it as grounds for relief.'" *Clark v. Eddie Bauer LLC*, 532 P.3d 880, 888 (2023). Here, the loss is concrete, substantial, and sufficient to plead a claim.

## C.    Plaintiffs Sufficiently Plead Unjust Enrichment.

Washington and Oregon law allow unjust enrichment claims, despite the existence of a contract, if they address conduct outside what the parties considered when the contract was formed. *See, e.g.*, *Bignold v. King Cnty.*, 399 P.2d 611, 617 (Wash. 1965) (finding quantum meruit to be "an appropriate basis for recovery when substantial changes occur which are not covered by the contract and were not within the contemplation of the parties, if the effect is to require extra work and materials or to cause substantial loss to the contractor"); *City of Portland ex rel. Donohue & Fleskes Corp. v. Hoffman Constr. Co.*, 596 P.2d 1305, 1311 (Or. 1979) ("In

---

[9] The Amended Complaint invokes Or. Rev. Stat. §§ 646.608(1)(e), (g), (q), but Zillow does not argue for dismissal of these claims.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 21

summary, our cases recognize that quantum meruit recovery is available to a contractor whose performance has been made substantially more difficult and costly by the other party's actions . . . .”). Maryland law recognizes four exceptions where unjust enrichment claims are allowed even when there is a contract, including “when there is evidence of fraud or bad faith,” and “when the express contract does not fully address a subject matter.” *Cnty. of Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000). At the very least, the latter exception, if not also the former, is present here.

Here, Plaintiffs' or their brokerages' contracts with Zillow did not expressly include the conditions to purchase FUB and steer clients to ZHL. Plaintiff Dupuis joined the Preferred program in February 2022, but steering clients towards ZHL and purchasing FUB only became requirements around May 2025. Compl. ¶¶ 43, 45–46. Additionally, once FUB was required, she incurred additional costs—$500 per month, as well as licensing costs—that were not part of her original agreement with Zillow. *Id.* ¶ 46. When Plaintiff Graham's brokerage joined Preferred, he was told that he would be evaluated on metrics such as “engaged transfers,” but Zillow later informed the team that they would actually be evaluated on ZHL pre-approval rates. *Id.* ¶ 61. Plaintiff Alvarez was only pressured by Zillow to steer clients towards ZHL after three years in the Preferred program. *Id.* ¶ 70. Zillow failed to disclose any of these conditions when Plaintiffs or their brokerages joined Preferred/Flex. These contracts do not bar Plaintiffs' claims.

Zillow also inaccurately claims that Plaintiffs fail to allege any benefits that they conferred upon Zillow. Mot. at 23. First, Plaintiffs purchased and used FUB, and thereby both paid money directly to Zillow and helped it grow its CRM market share. Compl. ¶¶ 4, 46. Second, Plaintiffs paid Zillow's supracompetitive referral fee of 35–40%, even when industry norms were substantially lower. *Id.* ¶¶ 32, 57. Finally, by using FUB, Plaintiffs gave Zillow access to valuable data about their leads and client interactions, which Zillow used to grow its mortgage business and to enforce its anticompetitive conditions. *Id.* ¶¶ 39, 77–78.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (CASE NO. 3-26-cv-05049-JLR) - 22

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**D.      Leave to Amend Would Not Be Futile.**

Even if the Court is inclined to grant Zillow's motion, Plaintiffs should be granted leave to amend. District courts are "generally required to grant the plaintiff leave to amend 'unless it is clear . . . that the [claim] could not be saved by amendment.'" *Automated Sys. of Tacoma LLC v. Steris Corp.*, 2025 WL 3954022, at \*7 (W.D. Wash. Mar. 19, 2025) (Robart, J.) (alteration in original) (quoting *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012)). Leave to amend is only futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Alliance v. APM Terminals Tacoma LLC*, 545 F. Supp. 3d 893, 896 (W.D. Wash. 2021). Zillow does not clear this high bar. Courts grant leave to amend despite previous amendments where they conclude that the Plaintiff "may be able to cure the deficiencies." *See, e.g.*, *Automated Sys.*, 2025 WL 3954022, at \*7. Here, the complaint has only been amended once, and only as to the Washington plaintiffs' allegations; Zillow does not show that Plaintiffs could not cure any of the deficiencies it now claims exist.

## V.      CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss, or grant Plaintiffs leave to amend to cure any perceived defects.

DATED this 29th day of June, 2026.

KELLER ROHRBACK L.L.P.

By: *s/ Ryan McDevitt*
  Ryan McDevitt, WSBA #43305
  Samuel L. Rubinstein, WSBA #64605
  Nicandro Iannacci, WSBA #64636
  1201 Third Avenue, Suite 3400
  Seattle, WA 98101-3268
  Telephone: (206) 623-1900
  Facsimile: (206) 623-3384
  rmcdevitt@kellerrohrback.com
  srubinstein@kellerrohrback.com
  niannacci@kellerrohrback.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
(CASE NO. 3-26-cv-05049-JLR) - 23

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384