THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE M. DUPUIS and SOUND MUSIC I INC., BRIAN GRAHAM, and ANNA ALVAREZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ZILLOW GROUP, INC., ZILLOW, INC., ZILLOW HOME LOANS, LLC, ZILLOW HOMES, INC., ZILLOW LISTING SERVICES, INC.,<br><br>    Defendants. | Case No. 3:26-cv-05049-JLR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>July 13, 2026<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.    Plaintiffs' Deficient Market Allegations Are Fatal to All Antitrust Claims ........... 1

    A.    Plaintiffs Still Do Not Plausibly Plead Product Markets ........................... 1

    B.    Plaintiffs' Allegations Contradict their Geographic Markets .................... 2

II.    Plaintiffs' Tying Claim (Count 1) Still Fails ........................................................... 2

    A.    All Plaintiffs Must Have Antitrust Standing .............................................. 2

    B.    Plaintiffs' Tying Claims Remain Defective ................................................ 3

III.    Plaintiffs' Section 1 Unreasonable Restraint Claim (Count 2) Still Fails .............. 5

IV.    Plaintiffs' Section 2 Abuse of Monopoly Power Claim (Count 3) Still Fails ................................................................................................................. 6

    A.    Plaintiffs' Monopoly Power Allegations Remain Deficient ....................... 7

    B.    Plaintiffs Still Fail to Allege Anticompetitive Conduct ............................. 7

V.    Plaintiffs' State Antitrust Claims Still Fail (Counts 4 and 7) ................................ 8

VI.    Plaintiffs Still Fail to State a WCPA Unfair or Deceptive Practices Claim (Count 5) ..................................................................................................... 9

    A.    Plaintiffs Do Not Plead any Unfair or Deceptive Practice ......................... 9

    B.    Plaintiffs Do Not Plead Compensable Injury or Causation ...................... 10

VII.    Plaintiffs Still Fail to State an Oregon UTPA Claim (Count 9) .......................... 10

VIII.    Plaintiffs' Unjust Enrichment Claims Still Fail (Counts 6, 8, and 10) ................ 12

IX.    Dismissal with Prejudice is Warranted ................................................................. 12

CONCLUSION ............................................................................................................. 13

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-i-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ................................................................................3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ...............................................................................................8

*Bartholomew v. Washington*,
725 F. Supp. 3d 1225 (W.D. Wash. 2024) ...........................................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................4

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ..................................................................................6

*Compass, Inc. v. Zillow, Inc.*,
2026 WL 321084 (S.D.N.Y. Feb. 6, 2026) ...........................................................4

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
150 F.4th 1056 (9th Cir. 2025) ..............................................................................7

*Cyntegra, Inc. v. Idexx Lab'ys, Inc.*,
520 F. Supp. 2d 1199 (C.D. Cal. 2007) .................................................................3

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ...............................................................................................12

*FTC v. Zillow Group, Inc.*,
2026 WL 1282879 (E.D. Va. May 6, 2026) .......................................................4, 5

*Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*,
2024 WL 4122123 (D. Md. Sept. 6, 2024) ..........................................................8, 9

*Grae-El v. City of Seattle*,
2022 WL 721489 (W.D. Wash. Mar. 10, 2022) ...................................................12

*Greenberg v. Amazon.com, Inc.*,
553 P.3d 626 (Wash. 2024) ....................................................................................9

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ...............................................................................1

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
170 P.3d 10 (Wash. 2007) .....................................................................................10

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984) ...................................................................................................5

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-ii-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Johnson v. Buckley*,
356 F.3d 1067 (9th Cir. 2004) ...............................................................................................12

*King v. Amazon.com Servs. LLC*,
2026 WL 628261 (W.D. Wash. Mar. 6, 2026) .........................................................................9

*Martell v. Gen. Motors LLC*,
492 F. Supp. 3d 1131 (D. Or. 2020) .......................................................................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) ..................................................................................................................6

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
924 F.2d 1484 (9th Cir. 1991) ..................................................................................................2

*Morris v. Dental Care Today, P.C.*,
473 P.3d 1137 (Or. Ct. App. 2020)....................................................................................10, 11

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008) ..................................................................................................1

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)...................................................................................................................6

*PBTM LLC v. Football Nw., LLC*,
511 F. Supp. 3d 1158 (W.D. Wash. 2021)............................................................................3, 4

*Pearson Educ., Inc. v. Allen Air Conditioning Co.*,
2014 WL 2154099 (S.D.N.Y. May 22, 2014) ..........................................................................3

*Philips N. Am., LLC v. Summit Imaging Inc.*,
2020 WL 6741966 (W.D. Wash. Nov. 16, 2020) .....................................................................8

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ....................................................................................................7

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
532 F.3d 963 (9th Cir. 2008) ....................................................................................................4

*Rush v. Blackburn*,
361 P.3d 217 (Wash. Ct. App. 2015)......................................................................................10

*Sidibe v. Sutter Health*,
4 F. Supp. 3d 1160 (N.D. Cal. 2013) .....................................................................................1, 5

*Somers v. Apple, Inc.*,
258 F.R.D. 354 (N.D. Cal. 2009)..............................................................................................9

*Sports Racing Services, Inc. v. Sports Car Club of America, Inc.*,
131 F.3d 874 (10th Cir. 1997) ..................................................................................................3

*Taylor v. Amazon.com, Inc.*,
2025 WL 623738 (W.D. Wash. Feb. 26, 2025)........................................................................9

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-iii-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*United States v. Syufy Enters.*,
    903 F.2d 659 (9th Cir. 1990) ..............................................................................................6, 7

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)...............................................................................................................8

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) .................................................................................................8

*Zulily, LLC v. Amazon.com, Inc.*,
    761 F. Supp. 3d 1368 (W.D. Wash. 2024)........................................................................5, 10

*Zunum Aero, Inc. v. Boeing Co.*,
    2022 WL 2116678 (W.D. Wash. June 13, 2022)...............................................................1, 2

**STATUTES**

12 U.S.C. § 2607(c)(3)...............................................................................................................10

Oregon Revised Statute § 646.608(1) ........................................................................................11

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................................................9, 11

Defendants' Reply in Support of Motion To
Dismiss Amended Class Action Complaint
Case No. 3:26-cv-05049-JLR

-iv-

**Wilson Sonsini Goodrich & Rosati**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

## INTRODUCTION

Plaintiffs' opposition ("Opp.") does nothing to cure the ACAC's fatal defects as detailed in Zillow's Motion ("Mot."), requiring dismissal with prejudice. Plaintiffs' antitrust claims are still doomed by their defective market definitions and failure to plead essential elements of each antitrust theory. Plaintiffs' state law claims likewise fail because they are insufficiently pleaded, barred as a matter of law, or rely on allegations nowhere pleaded in the ACAC.

## ARGUMENT

### I.    Plaintiffs' Deficient Market Allegations Are Fatal to All Antitrust Claims

Plaintiffs still fail to plausibly allege any of the markets they assert, requiring dismissal of every antitrust claim. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (complaint may be dismissed if "'relevant market' definition is facially unsustainable" (citation omitted)). A facially sustainable market definition must include both a product market, including the product at issue and all economic substitutes, *id.*, and a geographic market "where the competition in the relevant product market takes place," *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1174 (N.D. Cal. 2013) (citations omitted).

### A.    Plaintiffs Still Do Not Plausibly Plead Product Markets

Plaintiffs do not dispute that the ACAC does not plead *any* reasonably interchangeable products or competitors in *any* of the purported product markets. *See* Opp. 4–5. Thus, Plaintiffs fail to "plead any facts showing what exactly [each] market encompasses." *Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *9 (W.D. Wash. June 13, 2022) (Robart, J.) (plaintiff failed to plausibly allege product markets). This renders all of Plaintiffs' markets facially unsustainable.

Instead, Plaintiffs attempt but fail to characterize the "referrals" market as a submarket of the "real estate search market." *See* Opp. 4–5, 8 n.4. Pleading a submarket requires allegations showing the "submarket is economically distinct from the general product market." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (citation omitted). But the ACAC lacks

allegations sufficient to define a "referrals" submarket or explain why that market should be limited to online referrals or exclude the myriad ways agents connect with consumers.

### B.    Plaintiffs' Allegations Contradict their Geographic Markets

Plaintiffs misconstrue the standard for defining a geographic market. "Where [a company] competes does not define the market." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991); *see also Zunum*, 2022 WL 2116678, at *8 (rejecting market defined by "where 'Boeing does business'"). Instead, a geographic market is defined with reference to the "area of effective competition where buyers can turn for alternate sources of supply," *id*. (citation modified), which requires "more than vague and conclusory terms," *Zunum*, 2022 WL 2116678, at *8. Thus, irrespective of where Zillow implements its business practices, Plaintiffs must still plead "area[s] of effective competition" for each market.

The ACAC contradicts Plaintiffs' argument that real estate search and referrals markets are nationwide. With respect to referrals, Plaintiffs acknowledge that Zillow's leads are organized "at the zip code level," ACAC ¶29; that leads in "major metro areas" are valued higher than those elsewhere, *id*., such that "not all connections are of the same potential financial value to agents," *id*. ¶55; and that connections are less valuable to agents when they must travel further to meet clients, *id*. Those allegations contradict any supposed nationwide market for referrals. Plaintiffs also admit "real estate markets are generally regional from an individual homebuyer's or agent's perspective," *id*. ¶97, thus undermining any national real estate search market. The Opposition ignores these contrary allegations.

Nor does the Opposition remedy the ACAC's conclusory allegations supporting a nationwide CRM market, and it identifies *zero allegations* supporting a nationwide home lending market.

## II.    Plaintiffs' Tying Claim (Count 1) Still Fails

### A.    All Plaintiffs Must Have Antitrust Standing

Plaintiffs are wrong that only one putative class representative is needed to establish

-2-

antitrust standing. "A plaintiff who satisfies [constitutional standing] is not necessarily a proper party to bring a private antitrust action." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054 n.3 (9th Cir. 1999). Accordingly, "[e]very plaintiff asserting [an antitrust claim] must allege a sufficient basis for antitrust standing." *Pearson Educ., Inc. v. Allen Air Conditioning Co.*, 2014 WL 2154099, at *6 (S.D.N.Y. May 22, 2014).

For tying claims, antitrust standing requires each plaintiff to be either (1) a purchaser forced to buy the tied product to obtain the tying product; or (2) a competitor foreclosed from the tied product market. *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1210 (C.D. Cal. 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009). Here, only Dupuis pleads she purchased FUB, the allegedly tied product. *See* ACAC ¶46. No other Plaintiffs allege they purchased FUB or seek to enter the CRM market. SM, Graham, and Alvarez therefore lack antitrust standing.[1]

**B.      Plaintiffs' Tying Claims Remain Defective**

The Opposition confirms no Plaintiff has adequately pleaded all elements of a tying claim.

No Tie. Plaintiffs still fail to demonstrate a tie because they fail to plead a coerced purchase. "Actual coercion" requires a showing that the seller "in fact forces the buyer to purchase the tied product." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1183 (W.D. Wash. 2021) (citation omitted). The Opposition cites no allegations that SM, Alvarez, and Graham purchased FUB, let alone were coerced to do so. Opp. 7.[2] Plaintiffs also do not explain how Alvarez's managing broker's insistence that she use (but not pay for) FUB establishes a tie—particularly where Alvarez started using FUB before Zillow acquired it *and* voluntarily left

---

[1] Plaintiffs' reliance on *Sports Racing Services, Inc. v. Sports Car Club of America, Inc.*, 131 F.3d 874, 889 (10th Cir. 1997) is misplaced as Dupuis concedes she has free choice to use other CRMs. ACAC ¶46.

[2] Plaintiffs appear to concede they lack a good faith basis to allege that Alvarez or Graham are direct purchasers and have not adequately investigated whether SM or Dupuis is the direct purchaser. *See* Opp. 6–7, n.1.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-3-

her brokerage after deciding not to work with Zillow's products, showing she was always free to stop using FUB. *See PBTM*, 511 F. Supp. 3d at 1183 (no coercion where defendant merely "pressured" plaintiff); ACAC ¶¶76,79. Indeed, Plaintiffs do not allege the managing broker is a Zillow employee or otherwise under Zillow's control. Thus, that Alvarez's employer required her to use company-approved software hardly shows Zillow tied FUB to leads.

No Market Power. Plaintiffs still have not adequately pleaded Zillow's market power in the alleged tying market for referrals. Plaintiffs circularly argue that Zillow could not have "forced Plaintiffs to purchase and use FUB … without market power," but fail to explain why. Opp. 8. Indeed, the ACAC merely conclusorily alleges that "Zillow's dominant real estate portal position gives it market power in the sale of referrals." ACAC ¶95. Plaintiffs' talismanic recitation of a claim element does not make it plausible. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a formulaic recitation of the elements of a cause of action will not do").

Plaintiffs' reliance on *Jefferson Parish* and *U.S. Steel Corp.* also confuses the definition of market power with its pleading standards. *See* Opp. 8. Regardless of its doctrinal definition, market power "must [still] be properly alleged." *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 971–72 (9th Cir. 2008) (affirming dismissal where complaint contained "no factual allegations" of market power). Tellingly, Plaintiffs cite no cases supporting their "common sense" approach, Opp. 8, nor factual allegations establishing Zillow's alleged market power over referrals.

Plaintiffs further rely on inapposite cases to contend that website visits—in the separate real estate search market—equate to market share in the tying market for referrals. Opp. 8–9. Plaintiffs misinterpret *Compass, Inc. v. Zillow, Inc.*, 2026 WL 321084 (S.D.N.Y. Feb. 6, 2026), where the court rejected each metric Compass put forth to show audience share—"site-user," "daily-app-user," "time-spent," and "site-visit"—as "flawed proxies for Zillow's market share in the online home search market." *Id*. at *20. Absent a showing of market share, the court could not infer monopoly power. *Id*. Plaintiffs also mistakenly rely on *FTC v. Zillow Group, Inc.*, 2026

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-cv-05049-JLR

-4-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

WL 1282879, at *1 (E.D. Va. May 6, 2026), which relates only to multifamily rental properties, because that case does not involve a tying theory or any of the markets alleged here. *Id.*

No Anticompetitive Effect in Tied Market. The Opposition fails to identify any harm to competition in the allegedly tied CRM market. Beyond failing to define the CRM market, *supra* Section I, the ACAC contains no allegations suggesting that Zillow's FUB requirement "is used to impair competition on the merits in [the tied] market" such as by "harm[ing] existing competitors or creat[ing] barriers to entry of new competitors in the market for the tied product." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984). Plaintiffs concede agents are free to use other CRM products to track non-Zillow leads, so competitors are free to compete. ACAC ¶46. That Plaintiffs "prefer to use a competing product," Opp. 9, fails to show that the FUB requirement has "a *significant* negative impact on competition" in the CRM market. *Sidibe*, 4 F. Supp. 3d at 1178 (emphasis added).

## III.    Plaintiffs' Section 1 Unreasonable Restraint Claim (Count 2) Still Fails

Plaintiffs now concede they are not proceeding under either a tying theory or a conspiracy theory under Count 2. *Compare* Opp. 9, *with* ACAC ¶104 (invoking "conditioning" and "conspiracy"). Instead, they claim Count 2 proceeds only from the high-level elements identified in *Zulily, LLC v. Amazon.com, Inc.*, 761 F. Supp. 3d 1368, 1387 (W.D. Wash. 2024). For two reasons, Plaintiffs do not establish an unreasonable restraint or resulting anticompetitive effects as required under *Zulily*. *Id.*

First, Plaintiffs have not alleged that agents "are prevented from informing clients of competing lenders" through an agreement with Zillow. Opp. 10. Rather, Plaintiffs allege that Zillow creates a "Pre-Approval Target," ACAC ¶41 (Fig. 6), and that one brokerage has freely *chosen* to prioritize that target, *id.* ¶75, but they do not allege that Zillow and that brokerage (or any other brokerage) agreed they could not inform clients of other lenders. In fact, Plaintiffs allege that the target relates only to free pre-approval letters to help navigate a home search rather than actual mortgages. *Id.* ¶41 (Fig. 6). These allegations are thus insufficient to plead that

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-5-

**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

Zillow and brokerages have "a conscious commitment to a common scheme" to restrict information about competing lenders. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).

Second, Plaintiffs fail to plead that the markets for "referrals" or "mortgage lending" have been harmed by "express quotas for steering clients to ZHL." Opp. 10–11. They do not allege how competition in the market for "referrals" is harmed by "conditioning sale of those leads on steering to ZHL." *Id*. Effectively, they have alleged only an increase in price for leads offered by Zillow and they say nothing about the prices or terms on which other competitors offer referrals. "Setting a high price . . . is not in itself anticompetitive." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 294 (2d Cir. 1979).

As to mortgage lending, Plaintiffs alleged in their prior complaint (but deleted from their ACAC) that competition in the mortgage lending market remains robust and that ZHL is not within the top ten providers. Dkt. 1 ¶32. Plaintiffs do not disavow that allegation, only saying that Zillow's business has grown and that it is "attempting to increase ZHL's market share" for its "fledgling" product. ACAC ¶42; Opp. 1, 11. That is not only "permissible," but procompetitive. *United States v. Syufy Enters.*, 903 F.2d 659, 673 (9th Cir. 1990). Plaintiffs' allegations that Zillow's mortgage product is faulty or that Zillow is "keeping information about competing lenders from consumers," Opp. 11, however implausible, are not the type of *market-wide* "decreased quality" that is recognized as an anticompetitive effect. *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018). Finally, to the extent Plaintiffs rely on tying cases like *PeaceHealth*, Opp. 11, Plaintiffs fail to allege any tie as explained above.

## IV.    **Plaintiffs' Section 2 Abuse of Monopoly Power Claim (Count 3) Still Fails**

Plaintiffs' claim that Zillow has abused monopoly power in real estate search, ACAC ¶¶113–114, remains deficient as Plaintiffs inexplicably jumble allegations relating to multiple markets. Such scattershot pleading is insufficient to state a claim.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-6-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

### A. Plaintiffs' Monopoly Power Allegations Remain Deficient

Plaintiffs' failure to define the relevant markets dooms their attempt to allege dominant market share. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("Without a definition of the relevant market, it is impossible to determine market share.").

Plaintiffs also incorrectly rely on allegations of supracompetitive prices in the alleged referrals market to infer monopoly power in the separate real estate search market. *See* Opp. 12. Allegations relating to a different market are not sufficient to show monopoly power in real estate search. *See CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1067 (9th Cir. 2025) (plaintiffs must "plausibly alleg[e] that the defendant has monopoly power *in the relevant market*." (emphasis added)), *cert. denied*, 146 S. Ct. 1836 (2026).

Finally, Plaintiffs' reliance on user traffic metrics, ACAC ¶25, and conclusory allegations that Zillow "amassed its power … by buying up competitors" (in unspecified markets), *id*. ¶26, fail because neither shows plausible structural barriers to entry in real estate search. Indeed, "eliminating competitors will not enable the survivors to reap a monopoly profit" if "there are no significant barriers to entry." *Syufy Enters.*, 903 F.2d at 664. Plaintiffs allege *no* barriers to entry, and therefore still fail to plead monopoly power.

### B. Plaintiffs Still Fail to Allege Anticompetitive Conduct

The Opposition does not identify any anticompetitive conduct in the real estate search market that Plaintiffs allege Zillow has monopolized, ACAC ¶113. Rather, Plaintiffs refer to conduct in the separate mortgage lending market by rehashing their Section 1 claim (Count 2). *See* Opp. 13; ACAC ¶114 (alleging unspecified "coercion" to "steer clients to ZHL"). To the extent Plaintiffs assert Zillow's allegedly anticompetitive conduct results in a tie between the sale of leads and ZHL pre-approvals, *see* Opp. 13; ACAC ¶115, that theory fails both for the reasons Zillow previously enumerated, Mot. 12–13, and because Plaintiffs make no effort to

explain how a purported tie between referrals and mortgage lending could affect the market for real estate search.[3]

Plaintiffs' newfound reliance on the (unpleaded) refusal to deal doctrine is also futile. In general, "there is no duty to aid competitors." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004). *Aspen Skiing* presents the "one, limited exception." *Philips N. Am., LLC v. Summit Imaging Inc.*, 2020 WL 6741966, at *6 (W.D. Wash. Nov. 16, 2020) (Robart, J.) (citation omitted). But the "exception … should be applied only in rare circumstances," and requires allegations that the defendant "unilaterally terminated a voluntary and profitable course of dealing" with a competitor. *Id.* (citation modified). Plaintiffs do not allege that they compete with Zillow in any market, so *Aspen Skiing* does not apply. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 593–94, 608–11 (1985) (affirming judgment where defendant stopped selling ski passes to competing resort); *see also Trinko*, 540 U.S. at 408 (*Aspen Skiing* is the leading case for "liability based on refusal to cooperate with a *rival*" (emphasis added)). If anything, it is Plaintiffs who chose to terminate a profitable course of dealing with Zillow. *See* ACAC ¶¶67,79 (Graham and Alvarez left their respective brokerages to avoid working with Zillow).

## V.    Plaintiffs' State Antitrust Claims Still Fail (Counts 4 and 7)

Plaintiffs cannot invoke indirect purchaser standing to salvage Graham's tying claim.[4] *See* Opp. 15. The ACAC nowhere alleges Graham's brokerage passed "overcharges" for either allegedly tied product (FUB or ZHL) onto Graham, nor that Graham even purchased them, as is required to establish antitrust injury and indirect purchaser standing. *See Gov't Emps. Health*

---

[3] *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020), does not save Plaintiffs' tying theory. There, Comcast tied its cooperative selling arrangements for advertising—for which Comcast held a monopoly—to its advertising services, in order to foreclose competitor Viamedia from the advertising market. *See id.* at 470–71. Here, Plaintiffs and Zillow are not direct competitors in any of Plaintiffs' poorly defined markets, nor is Zillow allegedly foreclosing any competitors in any markets.

[4] No other Plaintiff asserts indirect purchaser standing. *See* Opp. 15.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR                    -8-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

*Ass'n v. Actelion Pharms. Ltd.*, 2024 WL 4122123, at *6 (D. Md. Sept. 6, 2024) (antitrust injury occurs if "the purchaser incurs an overcharge"); *see also Somers v. Apple, Inc.*, 258 F.R.D. 354, 358 (N.D. Cal. 2009) (indirect purchaser must show defendant overcharged direct purchasers and that direct purchasers passed overcharges onto plaintiffs).[5]

## VI. Plaintiffs Still Fail to State a WCPA Unfair or Deceptive Practices Claim (Count 5)

### A. Plaintiffs Do Not Plead any Unfair or Deceptive Practice

Plaintiffs still do not allege any unfair or deceptive acts. Plaintiffs' broad reliance on *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626 (Wash. 2024) is misguided. *Greenberg* expanded the ways a plaintiff can show unfairness but did not eliminate the requirement altogether. *See* 553 P.3d at 640–41. At bottom, Plaintiffs do not explain how informing clients of the opportunity to obtain a free, non-binding ZHL pre-approval letter or sharing non-party client contact information is "unfair" to Plaintiffs. *See* ACAC ¶¶131–132; Mot. 18.[6]

Nor does *Greenberg* save Plaintiffs' insufficient allegations of "deception." *Greenberg* "explicitly did not discuss or analyze 'deceptive' conduct under the CPA, instead focusing on unfairness alone." *Taylor v. Amazon.com, Inc.*, 2025 WL 623738, at *1 (W.D. Wash. Feb. 26, 2025) (citing *Greenberg*, 553 P.3d at 454–55). Thus, Plaintiffs' allegations, which "sound[] in fraud," fail to satisfy Rule 9(b)'s heightened pleading standard. *King v. Amazon.com Servs. LLC,* 2026 WL 628261, at *3 (W.D. Wash. Mar. 6, 2026). Indeed, the ACAC nowhere describes Plaintiffs' communications with Zillow, and thus cannot support the inference that Zillow "failed to disclose" the ZHL and FUB requirements "when they joined Preferred." *Compare* Opp. 16, *with* ACAC ¶¶43–46, 58–61, 69–70, 76–77. In any event, Plaintiffs do not allege that Zillow was precluded from setting program metrics per Preferred's contract terms. *See King*, 2026 WL 628261, at *3 ("a plaintiff asserting fraud-based claims 'must set forth what is false or

---

[5] That the Washington and Maryland statutes might "encompass both goods and services," Opp. 15, has no bearing here because Plaintiffs allege no state law equivalent to a Clayton Act claim.

[6] Plaintiffs also fail to address their lack of Article III standing for claims relating to their clients' information. Mot. 18.

misleading … and why'" (citations omitted)). Plaintiffs' allegations of deception, misrepresentations, or material omissions, ACAC ¶¶129–130,133, therefore remain conclusory and insufficient. *See Zulily*, 761 F. Supp. 3d at 1393–94.

Plaintiffs' RESPA arguments also remain unavailing. Indeed, *Rush v. Blackburn* supports Zillow's position as it states that "acts or practices *violating* applicable statutes constitute[] unfair or deceptive practices." 361 P.3d 217, 225 n.7 (Wash. Ct. App. 2015) (emphasis added). Thus, Plaintiffs must adequately allege a RESPA violation as the predicate act but fail to do so here. *See* Mot. 19–20. Plaintiffs do not dispute that they fail to allege any "settlement service" or "referral," *Id.* 19 & n.2, and Zillow's conduct still falls within §2607(c)(3)'s safe harbor, as it is Zillow's real estate brokerage, not ZHL, that charges fees for leads. *See* ACAC ¶¶36, 134.

**B.    Plaintiffs Do Not Plead Compensable Injury or Causation**

Plaintiffs still fail to identify allegations sufficient to establish injury or causation. Plaintiffs' alleged injuries, Opp. 18, flow from their own decisions to refuse compliance with Preferred's program standards or to voluntarily change brokerages. Thus, none of Plaintiffs' alleged injuries would have occurred but for Plaintiffs' own business decisions, as opposed to any unfair or deceptive practice by Zillow. *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007).

The WCPA claim should be dismissed.

**VII.   Plaintiffs Still Fail to State an Oregon UTPA Claim (Count 9)**

The Opposition does not cure the deficiencies in Alvarez's UTPA claim.

Statute of Limitations. Alvarez's UTPA claim remains time-barred even under the discovery rule because her own allegations show that she "kn[ew] or should have known of the allegedly unlawful conduct" over a year before she filed her claim. *Morris v. Dental Care Today, P.C.*, 473 P.3d 1137, 1139 (Or. Ct. App. 2020). In *Morris*, the court dismissed the UTPA claim as untimely because the plaintiff admitted she "knew" or should have known two years before filing her claim "that the dentures defendants had provided were not, as represented, 'of a certain

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR                          -10-                **WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500

quality.'" *Id*. Here, Alvarez admits that she "began receiving pressure to steer clients to ZHL sometime in 2024" and "noticed changes in FUB after Zillow's [2023] acquisition." ACAC ¶¶28,70,76. As in *Morris*, Alvarez's limitations period began when Alvarez became aware of the alleged steering and changes to FUB, both well before one year prior to her May 4, 2026, filing date.

Failure to State a Claim. Plaintiffs' unlawful practices claim still fails. Section 646.608(1)(o) requires that the customer's receipt of "other value" be contingent upon and occur *after* some transaction. Plaintiffs argue that "the opportunity to earn more or better leads from Zillow in the future" is of "value," Opp. 20, but allege that value is inherent to the original transaction, ACAC ¶69 (Alvarez "paid referral fees to Zillow"), not a future contingency.

Plaintiffs also continue to assert conclusory but inadequate allegations of material misrepresentations or omissions under Sections 646.608(1)(e), (g), (L), and (q). Even if Rule 9(b) is relaxed, Plaintiffs must still "allege reliance upon the communication from which the information was omitted." *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020). The ACAC is completely devoid of any allegations regarding how Zillow first described Preferred to brokerages and agents and therefore fails to plead any material omission.

Plaintiffs' reliance on a RESPA violation still fails for the same reasons as under WCPA. *See supra* Section VI.A.

Finally, Plaintiffs fail to allege any cognizable injury under UTPA.[7] Again, Alvarez does not allege that she personally experienced any reduction in leads, *see* ACAC ¶¶69–79, and any "lost earnings" Alvarez suffered necessarily resulted from her "quit[ting] her job," Opp. 21, not from any allegedly deceptive practice by Zillow.

---

[7] Plaintiffs are wrong that Zillow did not move to dismiss claims under Sections 646.608(1)(e), (g), (q) as Zillow argued that *all* UTPA claims are time barred and that Alvarez failed to show any cognizable injury for all claims. *See* Mot. 21–22. Moreover, Plaintiffs' allegations in support of their Section 646.608(1)(e), (g), (q) theories mirror their WCPA claim. *Compare* ACAC ¶166, *with* ACAC ¶130. They therefore fail for the same reasons. *Supra* Section VI.A.

## VIII.    <u>Plaintiffs' Unjust Enrichment Claims Still Fail (Counts 6, 8, and 10)</u>

Plaintiffs' unjust enrichment claims remain defective. Even if such claims survive where they address conduct outside the terms of an express contract, that is not what Plaintiffs allege in the ACAC. Indeed, nowhere do Plaintiffs allege that the ability to set or adjust performance metrics was *not* covered by the Preferred agreement; the Opposition impermissibly raises this factual allegation for the first time. *See* Opp. 22; *see also Grae-El v. City of Seattle*, 2022 WL 721489, at *5 (W.D. Wash. Mar. 10, 2022) (Robart, J.) ("The court may not consider … new facts raised for the first time in response to a motion to dismiss").

Plaintiffs' unjust enrichment claims also fail on the merits because the ACAC asserts no plausible allegations of underlying unlawful conduct as required under Oregon law. *Compare* Mot. 24, *with* Opp. 22. And Plaintiffs allege that Zillow conferred a benefit on Plaintiffs in the form of valuable leads, *see* ACAC ¶¶29–30, which reflects an equitable exchange of value and thus forecloses their Washington and Maryland unjust enrichment claims. *See* Mot. 24.

## IX.    <u>Dismissal with Prejudice is Warranted</u>

Dismissal without leave to amend remains warranted. Besides futility, courts also consider "prejudice to the opposing party," and "whether the plaintiff has previously amended the complaint" when deciding whether to grant leave to amend. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Here, Plaintiffs have had a full opportunity to cure the deficiencies in their original complaint but failed to do so, thus confirming they cannot articulate a legally sufficient theory. Further amendment would therefore prejudice Zillow and waste both the parties' and the Court's resources. *See Bartholomew v. Washington*, 725 F. Supp. 3d 1225, 1235 (W.D. Wash. 2024) (denying leave to amend where it would "prejudice … Defendants, who would then need to file a third motion to dismiss on the same issues"); *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (courts have inherent authority to manage their dockets "efficient[ly]" and "expedient[ly]").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-12-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**CONCLUSION**

For the reasons stated above and in Zillow's Motion, the Court should dismiss the ACAC with prejudice.

Dated: July 13, 2026

I certify that this memorandum contains 4,185 words, in compliance with the Local Civil Rules.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Nicholas R. Sidney*
Nicholas R. Sidney, WSBA #54982
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:   (206) 883-2500
Email: nsidney@wsgr.com

Beau W. Buffier (*pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, New York 10019-6118
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bbuffier@wsgr.com

Bonnie Lau (*pro hac vice*)
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: blau@wsgr.com

*Attorneys for Zillow Group, Inc., Zillow, Inc., Zillow Home Loans, LLC, Zillow Homes, Inc., and Zillow Listing Services, Inc.*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:26-CV-05049-JLR

-13-

WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA  98104-7036
Tel: (206) 883-2500